# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

SINAI HOLDINGS, LLC,  
a Florida limited liability company,  
and JACOB GITMAN,

      Plaintiffs,

vs.

JPMORGAN CHASE BANK, N.A., a foreign  
profit corporation,

      Defendant.  
_____/

Case No.

## COMPLAINT

Plaintiffs, SINAI HOLDINGS, LLC ("Sinai"), a Florida limited liability company, and JACOB GITMAN, an individual ("Gitman") (collectively, "Plaintiffs"), sue Defendant, JPMORGAN CHASE BANK, N.A. ("Chase" or "Defendant"), a foreign profit corporation, seeking general, special, and punitive damages, as well as a preliminary and permanent injunction.

### INTRODUCTION

1.    According to Chase's own policies, OFAC sanctions:

are the economic arm of foreign policy used to influence countries or individuals violating international laws or human rights, engaging in unlawful activity such as narcotics trafficking, human trafficking or activity that poses a threat to other nations through the development and proliferation of weapons of mass destruction, chemical and biological weapons or acts of terror.

2.    The United States Treasury Department operates the Office of Foreign Assets Control ("OFAC"), to administer and enforce United States Government sanctions against terrorists, human traffickers, drug smugglers, and proliferators of weapons of mass destruction, among other terrible entities and individuals.

3. Having nothing to do with whether *vel non* someone is subject to OFAC sanctions, Chase maintains an entirely separate blacklist of individuals and entities that it does not want to do business with or transfer money to based on its own opaque, internal, biased and dystopian criteria. Chase calls it their Interdiction List.

4. If a Chase customer tries to send money to an individual or entity on its Interdiction List, or to an entity controlled by or associated with someone on its Interdiction List, Chase cancels the transaction and publishes a pre-casted lie to its customers and intermediary banks and other SWIFT-registered financial institutions around the world, falsely declaring that it cannot complete the transaction "due to Sanctions and/or internal JPMC policy," with Chase also making up that the cancellation concerns a non-existent "OFAC investigation" ("OFAC Sanctions Statement").

5. Chase sends these cancellation messages with a subject line including "OFAC investigation – Cancellation of Payment."

6. Based on how Chase intentionally and knowingly structures and comingles its internal departments, every time Chase cancels a transaction to someone on its Interdiction List, Chase's policy is to tell its customers, banks and other financial institutions the OFAC Sanctions Statement – namely, that it cancelled the transaction "due to sanctions" relating to an "OFAC investigation" – even though an Interdiction List-transaction is *never* cancelled because of OFAC sanctions or investigations.

7. Adding salt to these name-killing wounds, Chase also gratuitously publishes the false OFAC Sanctions Statement even though Chase itself defines, knows and understands that OFAC sanctions are only for the worst of the criminal worst.

8. Chase is aware of this systemic issue from other litigation where it was sued for making false and defamatory statements and Chase has still refused to fix its systemic problems

and continues to send false and defamatory statements to customers, banks and other financial institutions about people that it put on its Interdiction List.

9. That brings us to this case. Chase falsely told Gitman's and Sinai's business associates, including its lender, that it could not send them money "due to sanctions" concerning an "OFAC investigation."

10. After hearing Chase's defamation, Gitman's and Sinai's business associates did not want to do business with Gitman or Sinai. Plaintiffs' lender recalled its loans because they did not want to do business with people, such as Gitman or Sinai, about whom Chase is internationally publishing that transactions with them must be cancelled because of OFAC sanctions. This lawsuit for damages and injunctive relief followed.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction under 28 U.S.C. §1332, because Plaintiffs are Florida citizens, Defendant is a foreign citizen, and the amount in controversy exceeds $75,000.00, exclusive of interest, attorney's fees, and costs.

12. Venue is proper in the Southern District Court of Florida because a substantial part of the events or omissions giving rise to the claim occurred in this district.

13. Plaintiff, Sinai, is a Florida limited liability company with its principal place of business in Broward County, Florida, and is a Florida citizen because Sinai's individual members are Florida citizens and the Sinai's limited liability corporation member's members are Florida citizens.

14. Plaintiff, Gitman, is a sui juris individual doing business in Broward County, Florida, and is a citizen of Florida.

15. Defendant, JPMorgan Chase Bank, N.A., is a citizen of Ohio.

## GENERAL ALLEGATIONS

### a. Sinai and Gitman

16. Sinai is a medical services company that owns and operates medical related businesses including clinics, surgical centers, and medical device manufacturers.

17. As in many other medical businesses, Sinai is dependent on financing to operate and facilitate its growth.

18. Sinai entered a financing arrangement that allowed it to access lines of credit in excess of $200,000,000.00 from its lenders.

19. Sinai depended on its line of credit to maintain its operations and growth.

20. Through Sinai's efforts and its access to its line of credit, Sinai's value grew to over $600,000,000.00.

21. Gitman is a self-made entrepreneur and inventor and is Sinai's principal and has invested substantial time, money, and effort in developing his and Sinai's reputation and in growing Sinai to its current size and pre-defamation value.

### b. Chase's Defamatory Messaging Departments

22. Chase is one of the largest consumer banks in the world with over 5,100 branches in the United States alone.

23. Because Chase is a large national bank, it has substantial compliance responsibilities. One such responsibility is to ensure that it complies with federal laws and regulations prohibiting it from transferring money to sanctioned individuals, entities or countries.

24. In what will be clear from what follows was, at best, a reckless attempt to comply with that regulatory responsibility, Chase set up an internal department called the Sanctions Services Utility ("SSU") to communicate with its customers or other banks and financial institutions who try to transfer money to sanctioned entities or countries.

25. After the SSU communicates with Chase's customers, banks and other financial institutions, the SSU passes on whatever information it collected to a different department to decide whether to allow a transfer to continue or what steps Chase will take.

26. If Chase decides a transfer is not allowed because the recipient – or beneficiary, in banker talk – is subject to OFAC or other sanctions, the SSU tells its customer what particular sanction prevented the transfer.

27. Yet as explained above, for individuals or entities having nothing to do with OFAC sanctions, like the Plaintiffs, Chase has its Interdiction List to prevent transferring money to those people or entities that it arbitrarily decided it does not want to do business with for any reason or no legitimate reason.

28. Chase clumsily combines much of the screening personnel and departments at the SSU when processing and investigating transactions actually subject to OFAC sanctions together with those transactions which are simply being cancelled because they are on Chase's internal Interdiction List.

29. Therefore, along with preventing transfers to those subject to OFAC sanctions, as required by federal law, Chase also prevents all transfers to those on its Interdiction List using the SSU to communicate the supposed reasons for the cancellations.

30. Because Chase intentionally commingles the screening and messaging for cancellations involving OFAC sanctions along with its distinct Interdiction List, the extreme OFAC Sanctions Statement is maliciously published to any customer, bank, or financial institution that does business transferring money with Chase and either of the Plaintiffs.

31. Neither the SSU nor any other department of Chase involved with the screening and cancellations of transactions responds to inquiries from customers, banks or financial

institutions after they read the alarming OFAC Sanctions Statements and after they understand the messages to mean that transactions with Plaintiffs must be cancelled because of OFAC sanctions.

32. Chase has a separate subdepartment in the SSU to communicate to clients, banks or financial institutions involved with transferring money to those on Chase's Interdiction List, even though those on Chase's Interdiction List are not subject to sanctions.

33. Chase, throughout its many versions and amendments to its policies, continues to retain the specific OFAC Sanctions Statement language for the SSU to always communicate falsely when a transaction is cancelled because the recipient is on its Interdiction List: "We are unable to execute your transaction due to sanctions and/or internal JPMC Policy."

34. Chase also includes specific references to non-existent OFAC investigations in the messages' subject line and to irrelevant OFAC reporting sometimes within the body of the OFAC Sanctions Statements.

35. Chase only ever sends the OFAC Sanctions Statement when it cancels a transaction for compliance reasons and never sends that statement when a transaction is cancelled because of sanctions.

36. Upon information and belief, Chase set up and then executed its policies and communications in this way with the intention to harm those on its Interdiction List, especially against Plaintiffs based on Chase's or its employees' bias or animus against them.

37. Chase sends the OFAC Sanctions Statement to the person trying to transfer money to the person on its Interdiction List, and in each message Chase references the specific transaction number and the transaction amount and thus identifies the person on its Interdiction List, including Plaintiffs Sinai and Gitman.

### c. Chase globally and wantonly defames Plaintiffs

38. For many years, Chase has rejected, cancelled, and otherwise prevented individuals and businesses from transferring funds via wire and ACH transfer to or from Plaintiffs.

39. Chase, through written and electronic communications told these customers, lenders and banks that they could not execute a transaction with Sinai and/or Gitman "due to sanctions" concerning an "OFAC investigation."

40. The people receiving these OFAC Sanctions Statements know they are not subject to sanctions, OFAC or otherwise, because the OFAC sanctions list is publicly available and because they never had issues sending or receiving money from anyone else before their transactions to Plaintiffs were cancelled. Thus, the people receiving the OFAC Sanctions Statement understand that the sender or receiver of the funds – i.e., the Plaintiffs – must be the one Chase says it cannot process transactions to because of OFAC sanctions.

41. These statements are *per se* defamatory because they tend to injure and harm Plaintiffs' business reputations and are accusations that they are committing serious crimes.

42. Not only does Chase always publish the OFAC Sanctions Statements knowing they are absolutely false, but the nature of OFAC crimes against humanity are so extreme that they intrinsically show Chase's express malice, either or both of which subject Chase to punitive damages to deter this brazen and unapologetic misconduct in the future.

43. Upon information and belief, Chase made additional defamatory statements, both orally and in writing, that, without the benefit of discovery, Plaintiffs cannot assert with more particularity. The essence of the statements was that Plaintiffs are on or associated with sanction(s) lists because of criminal activity or are engaging in other suspicious business activities, all of which are absolutely false. Chase is in possession, custody, and control of the documents and records that Plaintiffs need to sufficiently identify additional instances of libel and slander.

44. Chase made the defamatory statements while knowing that Plaintiffs were not sanctioned or on any OFAC lists because Chase's policy and organizational setup has Chase only make the OFAC Sanctions Statement when cancelling transactions to people on its Interdiction List, and Chase specifically classifies those cancellations as compliance cancellations and not OFAC sanctions cancellations.

### d. Plaintiffs' general damages and special damages

45. Chase's defamation about Sinai and Gitman significantly harmed their reputations and caused mental anguish and suffering.

46. Any preexisting barbs at Plaintiffs' reputation by blogs or otherwise were isolated, yet left Plaintiffs with a thinner skull – one which is more vulnerable to damage from Chase's wholly new onslaughts of the OFAC Sanctions Statements that Chase lobbed directly at Plaintiffs' lenders, customers, vendors, banks and financial institutions around the world.

47. After Chase defamed Plaintiffs by telling its customers, banks and SWIFT-registered financial institutions everywhere that it had to cancel transactions because of the OFAC Sanctions Statement, Plaintiffs' lender refused to lend additional money to Plaintiffs under their line of credit because of Chase's defamatory statements.

48. Without access to Sinai's line of credit, Sinai was unable to make payments as they came due and unable to sustain its growth or value.

49. In addition to Plaintiffs' lender also closing out Plaintiffs' line of credit, Plaintiffs' lenders are redeeming $120,000,000.00 from their previous infusions of funds which Plaintiffs could not fulfill, Plaintiffs were unable to pay rent or pay its bills for construction projects, and Plaintiffs are being sued for $12,000,000.00 by pharmaceutical companies for outstanding bills.

50. Sinai and Gitman had their bank accounts at Bank of America, Regions Bank, and TD Bank, among others, closed resulting from Chase's industry-wide defamation.

51. As a direct and proximate result from Chase's defamation, Sinai's value has been reduced exponentially.

52. Gitman has suffered damage directly to his reputation and with the loss of value of his investment in Sinai caused by Chase's defamation.

### e. Chase has no privilege as it failed to act in a proper manner, on a proper occasion or in good faith, or Chase abused it by acting with express malice

53. Chase made the defamatory statements without good faith because it set up its organizational structure and adopted specific policies to only make the defamatory statements when they are false.

54. When Chase made the defamatory statements here, it knew that its policies and organizational setup inevitably cause it to defame those on its Interdiction List.

55. Upon information and belief, Chase structured its departments and directed the SSU to defame those on its Interdiction List expressly to cause them harm, including against Plaintiffs because of Chase's bias and animus against them for perceived reasons.

56. Chase also sent the OFAC Sanctions Statements in an improper manner and an improper occasion because Chase sent the messages unsolicited, Chase could have edited the messages to remove its defamatory language, Chase sent them contrary to standard bank practices and regulations, Chase published them without following its verification policies, and Chase made the defamatory statements to more than just accountholders.

57. Further, that Chase's policies requires it to falsely state that it cancels transactions "due to sanctions," when that statement is never sent for sanctions cancellations, also negates any claim that Chase made the statements in the proper manner or proper occasion.

58. Chase knows that it is falsely saying it is cancelling transactions "due to sanctions" involving a made up "OFAC investigation," and refuses to change its policies or amend its messages to reflect the truth because it wants to harm those on its Interdiction List.

59. Chase's express malice is also apparent from the defamatory statements themselves as Chase knows from its OFAC "sanctions" definition. Chase understands that OFAC sanctions are reserved for the worst criminals, including those proliferating chemical, biological, and other weapons of mass destruction, along with human and drug traffickers. An entity or individual that is involved with a transaction blocked by actual OFAC sanctions can themselves be subject to investigation and arrest. Yet Chase continues to knowingly communicate this false and extreme defamatory language about OFAC sanctions to a global, unsolicited audience.

60. Chase's rejections of wire and ACH transfers to or from Plaintiffs; Chase's publication of false information internally and to third parties, which information is injurious to Plaintiffs' trade and profession; and Chase's failure to advise Plaintiffs of the issues that are preventing individuals and businesses from receiving or sending monies have significantly interfered with Plaintiffs' ability to transact business, have injured Plaintiffs' reputation and goodwill, and have directly and proximately caused Plaintiffs to suffer substantial damages.

61. Plaintiffs have retained the undersigned attorneys to prosecute this lawsuit on their behalf and are required to pay said attorneys a reasonable fee for their services.

62. All conditions precedent to the institution and maintenance of this Action have been performed, excused or have otherwise occurred.

## Count I
### DEFAMATION (LIBEL)

63. Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 62 as if fully set forth herein.

64. Chase has made false statements about Plaintiffs to third parties, as outlined above, including, without limitation, saying that it could not complete transactions to Plaintiffs "due to Sanctions" relating to an "OFAC investigation."

65. Chase knew the defamatory statements were false when it made them because Chase confirmed that Plaintiffs were not subject to sanctions or on any OFAC sanctions list before or after making those false and defamatory statements to Plaintiffs' customers, business associates, lenders, and banks and because Chase intentionally set up its communications department for Interdiction List cancellations to communicate that the transactions are cancelled "due to sanctions" when that is never the case. No OFAC investigation is occurring either.

66. Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of its lawful business, and have caused substantial harm to Plaintiffs' relationships with its customers, business associates, lender, and banks. The false statements also tend to injure Plaintiffs in their trade and profession and accuse Plaintiffs of the worst crimes.

67. As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

68. Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, for these reasons, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A. for (a) special and general damages, (b) punitive damages, (c) court costs, (d) pre- and post-judgment interest, and (e) any other relief that this Court deems just and proper.

### Count II
### DEFAMATION BY IMPLICATION

69. Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 62 as if fully set forth herein.

70. Chase published information about Plaintiffs to its customers, business associates, lenders, and banks, as stated in the general allegations by juxtaposing or conveying incomplete information or omitting facts so as to imply a defamatory connection between Plaintiffs and the OFAC sanctions list, and thereby, falsely implying that Plaintiffs were subject to sanctions and related investigations.

71. Chase made the false statements with malice and actual knowledge about their falsity because Chase confirmed that Plaintiffs' wires and transactions were not denied because of any OFAC or other sanctions concerns and because Chase knew that every time it makes the statement it is false. No OFAC investigation is occurring either.

72. Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of its lawful business, and have caused substantial harm to Plaintiffs' relationships with its customers, business associates, lender, and banks. The false statements also tend to injure Plaintiffs in their trade and profession and accuse Plaintiffs of the worst crimes.

73. As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

74. Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, for these reasons, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A. for (a) special and general damages, (b) punitive

damages, (c) court costs, (d) pre- and post-judgment interest, and (e) any any other relief that this Court deems just and proper.

### Count III
### PRELIMINARY INJUNCTION

75. Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 62 as if fully set forth herein.

76. This is a claim for preliminary injunction against Chase to cease employing its policy to publish pre-formed falsities about OFAC sanctions whenever it cancels any transactions it is involved with relating to Plaintiffs.

77. Plaintiffs have a substantial likelihood of success on the merits because Chase knowingly, needlessly and maliciously published these indisputably false statements to customers, banks and other financial institutions about OFAC sanctions each and every time they canceled a transaction involving the Plaintiffs.

78. Based on the facts above, Chase made these defamatory statements regarding OFAC sanctions about the Plaintiffs in an improper manner, on an improper occasion and without any good faith.  Chase also published these OFAC sanctions lies about the Plaintiffs with an intent to hurt the Plaintiffs and others on their Interdiction List and with extreme language that establishes Chase's express malice.

79. Based on the conduct described herein that has continued even after Chase was made aware of its always-lying policies and practices on multiple levels of its organization, Chase will continue to defame and irreparably harm the Plaintiffs' names and totally destroy their businesses. Thus, absent the entry of an injunction, Plaintiffs have no adequate remedy at law that will prevent the irreparable harm alleged herein.

80. The entry of an injunction will serve the public interest by protecting individuals and businesses from Chase's false international publishing apparatus that gratuitously links its cancellations of transactions to made up OFAC sanctions for, at best, corporate efficiency reasons since Chase commingled its internal compliance screening with its OFAC sanctions department.

81. An injunction would not cause undue harm to Chase as the actions detailed within this Complaint demonstrate that Chase always publishes rubber-stamped false information as a systemic matter in order to hurt people on their Interdiction List, something Chase has no right or legitimate interest in doing.

WHEREFORE, Plaintiffs requests that this Court enter an Order temporarily enjoining Defendant, JP MORGAN CHASE BANK, N.A., from continuing to publish false statements about OFAC sanctions any time it cancels transactions involving people on its Interdiction List who are never actually subject to OFAC sanctions, together with any such other and further relief that the Court deems just and proper.

### Count IV
### PERMANENT INJUNCTION

82. Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 62 as if fully set forth herein.

83. This is a claim for permanent injunction against Chase to cease employing its policy to publish pre-formed falsities about OFAC sanctions whenever it cancels any transactions it is involved with relating to Plaintiffs.

84. Plaintiffs have a substantial likelihood of success on the merits because Chase knowingly, needlessly and maliciously published these indisputably false statements to customers, banks and other financial institutions about OFAC sanctions each and every time they canceled a transaction involving the Plaintiffs.

85. Based on the facts above, Chase made these defamatory statements regarding OFAC sanctions about the Plaintiffs in an improper manner, on an improper occasion and without any good faith. Chase also published these OFAC sanctions lies about the Plaintiffs with an intent to hurt the Plaintiffs and others on their Interdiction List and with extreme language that establishes Chase's express malice.

86. Based on the conduct described herein that has continued even after Chase was made aware of its always-lying policies and practices on multiple levels of its organization, Chase will continue to defame and irreparably harm the Plaintiffs' names and totally destroy their businesses. Thus, absent the entry of an injunction, Plaintiffs have no adequate remedy at law that will prevent the irreparable harm alleged herein.

87. The entry of an injunction will serve the public interest by protecting individuals and businesses from Chase's false international publishing apparatus that gratuitously links its cancellations of transactions to made up OFAC sanctions for, at best, corporate efficiency reasons since Chase commingled its internal compliance screening with its OFAC sanctions department.

88. An injunction would not cause undue harm to Chase as the actions detailed within this Complaint demonstrate that Chase always publishes rubber-stamped false information as a systemic matter in order to hurt people on their Interdiction List, something Chase has no right or legitimate interest in doing.

WHEREFORE, Plaintiffs requests that this Court enter an Order permanently enjoining Defendant, JP MORGAN CHASE BANK, N.A., from continuing to publish false statements about OFAC sanctions any time it cancels transactions involving people on its Interdiction List who are never actually subject to OFAC sanctions, together with any such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: November 13, 2023.

                Respectfully submitted,

                **STOK KON+ BRAVERMAN**

                *Attorneys for Plaintiffs*
                One East Broward Boulevard
                Suite 915
                Fort Lauderdale, Florida 33301
                Tel.: (954) 237-1777
                Fax: (954) 237-1737
                Email: jkon@stoklaw.com
                Secondary: service@stoklaw.com

                BY: /s/ *Joshua R. Kon, Esq.*
                JOSHUA R. KON, ESQ.
                Florida Bar No. 56147
                (jkon@stoklaw.com)
                YOSEF KUDAN, ESQ.
                Florida Bar No. 1010261
                (ykudan@stoklaw.com)