**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
(FT. LAUDERDALE DIVISION)

Case No.: 23-cv-62159-WPD

SINAI HOLDINGS, LLC, a Florida limited
liability company, and JACOB GITMAN,

       Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a
foreign profit corporation,

       Defendant.

_____

**<u>DEFENDANT JPMORGAN CHASE BANK, N.A.'s MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 3

      A.    The Interdiction of the Gitmans ................................................................ 3

      B.    The Prior Lawsuits .................................................................................... 3

      C.    This Lawsuit ............................................................................................. 5

STANDARD OF REVIEW ...................................................................................... 6

ARGUMENT ............................................................................................................ 7

I.      THE COMPLAINT IS PRECLUDED BY THIS COURT'S PRIOR DECISION IN *MONARCH I*. ......................................................................... 7

      A.    Issue Preclusion ....................................................................................... 8

      B.    Claim Preclusion ................................................................................... 11

II.     THE COMPLAINT FAILS TO STATE A DEFAMATION CLAIM. ......................... 13

      A.    The Complaint Fails to Plead Around the Qualified-Privilege Issue That Was Dispositive in *Monarch I*. ................................................... 14

      B.    The Alleged Statements Are Neither About Plaintiffs Nor False. ........ 16

            1.    The Statements Are Not "Of and Concerning" Plaintiffs. ......... 16

            2.    The Statements Are Not False. ................................................. 16

III.    THE REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED. ................. 20

CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*1488, Inc. v. Philsec Inv. Corp.*,
939 F.2d 1281 (5th Cir. 1991) ...............................................................10

*Alabama v. U.S. Army Corps of Eng'rs*,
424 F.3d 1117 (11th Cir. 2005) ..............................................................20

*Bell. Atl. v. Twombly*,
550 U.S. 544 (2007)......................................................................16, 19

*Brown v. One Beacon Ins. Co. Inc.*,
317 F. App'x 915 (11th Cir. 2009) ..........................................................7

*Cape Publ'ns, Inc. v. Reakes*,
840 So. 2d 277 (Fla. 5th DCA 2003) ......................................................18

*Castle Key Ins. Co. v. Wooden Family Tr.*,
321 So. 3d 346 (Fla. 1st DCA 2021) .......................................................18

*Chevaldina v. R.K./FL Mgmt., Inc.*,
133 So. 3d 1086 (Fla. 3d DCA 2014) .....................................................20

*Conte v. Justice*,
996 F.2d 1398 (2d Cir. 1993)...................................................................10

*CSX Transp., Inc. v. General Mills, Inc.*,
846 F.3d 1333 (11th Cir. 2017) ...............................................................8

*Desisto v. City of Delray Beach*,
2014 WL 11444095 (S.D. Fla. Sept. 10, 2014) ......................................12

*Exum v. Nat'l Tire & Battery*,
437 F. Supp. 3d 1141 (S.D. Fla. 2020) ...................................................20

*Fla. Fish and Wildlife Conservation Comm'n v. Wakulla Fishermen's Ass'n, Inc.*,
141 So. 3d 723 (Fla. 1st DCA 2014) .......................................................11

*Fla. Pub. Co. v. Lee*,
80 So. 245 (Fla. 1918)..............................................................................18

*GLA & Assocs., Inc. v. City of Boca Raton*,
855 So. 2d 278 (Fla. 4th DCA 2003) ....................................................8, 9

*Gordon v. Gordon*,
59 So. 2d 40 (Fla. 1952)...........................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

*Gutierrez v. City of Hialeah*,
    729 F. Supp. 1329 (S.D. Fla. 1990) ................................................................16

*Jaffree v. Wallace*,
    837 F.2d 1461 (11th Cir. 1988) ................................................................9, 11

*Jang v. United Techs. Corp.*,
    206 F.3d 1147 (11th Cir. 2000) ..................................................................7

*Jarzynka v. St. Thomas Univ. Sch. of Law*,
    310 F. Supp. 2d 1256 (S.D. Fla. 2004) ....................................................14, 15

*Lord Abbett Mun. Income Fund, Inc. v. Tyson*,
    671 F.3d 1203 (11th Cir. 2012) ..................................................................6

*M.C.G. v. Hillsborough Cnty. Sch. Bd.*,
    927 So. 2d 224 (Fla. 2d DCA 2006) ..........................................................8

*Mac Isaac v. Twitter, Inc.*,
    557 F. Supp. 3d 1251 (S.D. Fla. 2021) ......................................................17

*Marquardt v. State*,
    156 So. 3d 464 (Fla. 2015)..........................................................................8

*McGregor v. Provident Tr. Co. of Phila.*,
    162 So. 323 (Fla. 1935)..........................................................................10, 11

*Monarch Air Grp., LLC v. JPMorgan Chase Bank, N.A.*,
    No. 23-cv-60770, Dkt. 42 (Oct. 6, 2023)........................................... *passim*

*Monarch Air Grp., LLC v. JPMorgan Chase Bank, N.A.*,
    2023 WL 4363816 (S.D. Fla. May 12, 2023) ................................. *passim*

*Newbauer v. Carnival Corp.*,
    26 F.4th 931 (11th Cir. 2022) ..........................................................6, 7, 15

*Noble Prestige Ltd. v. Galle*,
    83 F.4th 1366 (11th Cir. 2023) ....................................................................20

*Nodar v. Galbreath*,
    462 So. 2d 803 (Fla. 1984)..........................................................................14

*Ozyesilpinar v. Reach PLC*,
    365 So. 3d 453 (Fla. 3d DCA 2023) ..........................................................20

*Parekh v. CBS Corp.*,
    820 F. App'x 827 (11th Cir. 2020) ............................................................16

# TABLE OF AUTHORITIES

**Page(s)**

*Pearce v. Sandler*,
219 So. 3d 961 (Fla. 3d DCA 2017) ...............................................................1, 9, 11

*Pincus v. Law Offices of Erskine & Fleisher*,
617 F. Supp. 2d 1265 (S.D. Fla. 2009) .....................................................................11

*Readon v. WPLG, LLC*,
317 So. 3d 1229 (Fla. 3d DCA 2021) .......................................................................18

*Rios v. Fed. Nat'l Mortg. Ass'n*,
2017 WL 7792566 (S.D. Fla. July 27, 2017)..........................................................7, 10

*Schmidt v. Sabow*,
331 So. 3d 781 (Fla. 2d DCA 2021) ....................................................................10, 11

*Signo v. Fla. Farm Bureau Cas. Ins. Co.*,
454 So. 2d 3 (Fla. 4th DCA 1984)............................................................................12

*State v. McBride*,
848 So. 2d 287 (Fla. 2003)..................................................................................8, 11

*Stockton v. Lansiquot*,
838 F.2d 1545 (11th Cir. 1988) ...........................................................................11, 12

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..................................................................................................8

*Turner v. Wells*,
879 F.3d 1254 (11th Cir. 2018) ...........................................................................16, 18

*Walsh v. Miami Herald Publ'g Co.*,
80 So. 2d 669 (Fla. 1955)........................................................................................18

*Wolfson v. Kirk*,
273 So. 2d 774, 779 (Fla. 4th DCA 1973) ................................................................17

*Zikofsky v. Mktg. 10, Inc.*,
904 So. 2d 520 (Fla. 4th DCA 2005) ....................................................................8, 10

**OTHER AUTHORITIES**

18 U.S.C. § 1957...........................................................................................................3

31 C.F.R. § 515.201 ....................................................................................................19

Fed. R. Civ. P. 12 ..................................................................................................6, 7, 20

Fed. R. Civ. P. 60 ...................................................................................................1, 5, 11

U.S. Dep't of Treasury, OFAC, *Sanctions Programs*....................................................19

# INTRODUCTION

The Gitman Family has filed yet another lawsuit asserting defamation claims against JPMorgan Chase Bank, N.A. ("Chase") based on Chase's statements informing the family's business associates that Chase is "unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." This Court dismissed the first suit at summary judgment, holding that the same standardized statements were "clearly" protected by "qualified privilege." *See Monarch Air Grp., LLC v. JPMorgan Chase Bank, N.A.*, No. 21-62429, 2023 WL 4363816, at *5 (S.D. Fla. May 12, 2023) (*Monarch I*); *see also id.*, Dkt. 277, at 7 (denying Rule 60(b) motion). As the Court explained, the privilege applied in that case because Chase made the statements to its customers or intermediary banks about a matter of common business interest (explaining why the bank could not process their transactions). And Chase did not lose the privilege because it did not act with "express malice," as the statements were based on its "standard operating processes" and were not intended to harm the Gitmans or their businesses. *Id.* This Court also dismissed a second suit at the pleading stage, on res judicata and other grounds. *See Monarch Air Grp., LLC v. JPMorgan Chase Bank, N.A.*, Case No. 23-cv-60770, Dkt. 42, at 14–15 (Oct. 6, 2023) (*Monarch II*).

Undeterred, another member of the Gitman family and one of his business entities have now filed a *third* suit, again asserting defamation claims against Chase based on the very same standardized statements. *See* Compl. ¶¶ 4, 37. The third time is not the charm. This lawsuit fails for the same reason as before (and others), and it should be dismissed.

First, the claims here are precluded because this Court already determined that the statements at issue are protected by qualified privilege. The law recognizes that a final decision on the same issue binds not only the same parties but also "their privies." *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d DCA 2017) (citation omitted). Plaintiffs here are in privity with the *Monarch* plaintiffs due to their close identity of interests: they are immediate family members, their business interests are closely intertwined, and they are represented by the same counsel. Accordingly, they cannot relitigate the same issue that this Court already resolved in *Monarch I*—*i.e.*, whether the same standardized statements issued by Chase are protected by qualified privilege.

Second, even if Plaintiffs' suit were not precluded, their defamation claims would fail on the merits for the same reason as in *Monarch I*. There, this Court held that Chase's statements were qualifiedly privileged because they were made to financial counterparties about a matter of common interest, and they were not predominantly intended to cause harm to the plaintiffs since they were based on standard operating procedures. Here, the facts alleged in the Complaint make clear that the same dispositive points hold true. Plaintiffs' new Complaint is based on the same standardized statements issued by Chase, verbatim. Although the Complaint includes new conclusory statements asserting that Chase acted with express malice, it does not allege any facts that would plausibly support that conclusion in the identical context of the same standardized statements. Accordingly, the facts admitted in the Complaint make clear that Plaintiff can plead no set of facts that would support a claim for defamation under this Court's analysis in *Monarch I*. This case thus can and should be dismissed on the pleadings.

Although *Monarch I* did not reach the issue of falsity, the facts alleged in the Complaint here also make clear that the statements at issue are not false, which is another ground for dismissal. The statements asserted that the transactions were blocked because of sanctions "and/or" internal Chase policy, which is true if *either* sanctions or internal policy was the reason. The Complaint admits that internal policy was the reason, making the statements unambiguously true.

Finally, even if Plaintiffs somehow had a viable defamation suit, their request for injunctive relief must be dismissed. For one thing, injunctive relief is not a freestanding "claim." It is a form of relief that is entirely derivative of Plaintiffs' meritless defamation claims. Moreover, even if Plaintiffs had a viable claim for damages, injunctive relief is unavailable in defamation actions because it operates as a prior restraint on speech, which the First Amendment prohibits. This action is no exception, and no extraordinary circumstances could justify an injunction here.

This Court should not countenance the Gitman family's efforts to relitigate the same issue that they already lost in *Monarch I*. Allowing them to do so would unduly burden both Chase and the Court. This Court should therefore dismiss the case with prejudice and caution the Gitmans against pursuing any more follow-on actions.

## BACKGROUND

### A.    The Interdiction of the Gitmans

Under federal law, Chase is subject to a host of rules and regulations, including those that prohibit financial transactions that would run afoul of sanctions imposed by the Office of Foreign Asset Control (OFAC) or other governmental authorities. *See* Compl. ¶ 23. Chase is also subject to other rules and regulations prohibiting financial transactions for various reasons other than sanctions, including transactions that involve the proceeds of certain criminal activity. *See, e.g.*, 18 U.S.C. § 1957(a) (prohibiting "monetary transaction[s] in criminally derived property" that is "derived from specified unlawful activity"). As part of its compliance function and in order to mitigate risk, Chase maintains an internal "Interdiction List," which contains individuals and entities that Chase determines pose a high risk. *See Monarch I*, 2023 WL 436816, at *1, 3; *see also* Compl. ¶ 3. When an individual or entity is placed on the Interdiction List, Chase will not process any financial transaction involving them. *See* Compl. ¶¶ 4, 6. For example, if a customer holds an account with Chase and attempts to transfer funds to an outside account held by an individual or entity on the Interdiction List, Chase will decline to process that transaction. *See id.* ¶ 4.

As this Court has recounted in its previous decisions and as Plaintiffs and related parties have admitted in public filings, at some point in 2020 Chase determined that processing transactions involving the Gitman family and its related business entities would expose the bank to undue risk. *See, e.g.*, Compl. ¶¶ 4, 23–24, 37–38. Accordingly, Chase decided to close the accounts held by the Gitman family, and placed the Gitmans and their related entities on the Interdiction List in the summer of 2020. *See Monarch II*, Dkt. 42, at 3–4; *see also, e.g.*, Compl. ¶¶ 4, 23–24, 37–38.

### B.    The Prior Lawsuits

In 2021, shortly after the Gitmans were placed on the Interdiction List, David Gitman sued Chase for defamation and related claims. *See Monarch I*, 2023 WL 4363816, at *2. A co-plaintiff in that suit was Monarch Air Group, LLC, a corporate entity of which David Gitman is now the majority shareholder. Monarch Air was previously owned by David's father, Jacob, who continues

to be a shareholder of the company. *See, e.g.*, Ex. 1, Compl., *Monarch Air Grp., LLC et al. v. Simpson*, 218-2022-CV-00120, ¶ 9 (N.H. Super. Ct. Feb. 22, 2022) (Jacob invoking status as "minority shareholder of Monarch"); Ex. 2, Compl., *Gitman v. Simpson et al.*, CV2019-009187, ¶ 14 (Ariz. Super. Ct. Oct. 23, 2019) (Jacob invoking "affiliat[ion] with Monarch"); *infra* 10.

As here, the plaintiffs in *Monarch I* did not and could not allege that Chase acted unlawfully in placing them on the Interdiction List. Instead, they focused on the standard statements that Chase issued to its customers whenever it declined to process a financial transaction with an Interdicted entity or party. The statement read: "**We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy**." *Monarch I*, 2023 WL 4363816, at *2 (emphasis added). In their complaint, Gitman and Monarch Air alleged they were on the Interdiction List, and that their business associates received the same statement "in accordance with [Chase's] procedures" whenever they attempted a transaction Chase refused. *See id.* at *3.

This Court granted summary judgment for Chase, holding that Chase's standardized statements were "clearly" protected by the common-law "qualified privilege." *Id.* at *5. Under Florida law, the privilege applies to communications about, among other things, "business matters where both parties have a corresponding interest in the matter." *Id.* at *4 (quoting *John Hancock Mut. Life Ins. Co. v. Zalay*, 581 So. 2d 178, 179 (Fla. 2d DCA 1991)). And when Chase issues a statement to a Chase customer explaining why it is refusing to process a financial transaction, both Chase and the customer plainly have a business interest in the subject. *Id.*[1] Accordingly, the qualified privilege applied, and Chase could not be held liable for defamation unless it made the statements "with express malice." *Id.* at *5.

"A defendant acts with express malice in making defamatory statements when his 'primary motive in making the statements [is] the intent to injure the reputation of the plaintiff.'" *Id.* (quoting *Lozada v. Hobby Lobby Stores, Inc.*, 702 F. App'x 904, 911 (11th Cir. 2017)). But Chase did not act with any such "primary motive" because it issued the statements based on its "standard

---

[1] The same applies where the statement is made to another bank that is attempting to execute a wire transaction through Chase. *See* Compl. ¶ 39.

operating processes" in an attempt to explain "the reasons why Chase was unable to execute the transactions." *Id.* Accordingly, the Court "enter[ed] summary judgment in favor of Chase" on all of "Plaintiffs' defamation claims." *Id.*; *see also id.*, Dkt. 277 (denying Rule 60(b) motion).

Even while that ruling was pending, David Gitman and Monarch filed a *second* lawsuit in *Monarch II*. Although that lawsuit brought separate claims, it "ar[o]se from the same cancelled wire transactions forming the basis of *Monarch I*." *Monarch II*, Dkt. 42, at 3. This Court granted Chase's motion to dismiss. First, the Court held that the action was "barred by *res judicata* insofar as it arises from the same cancelled wire transactions forming the basis of *Monarch I*." *Id.* at 6. And while it did "not address" "whether *res judicata* applie[d]" with respect to *new* transactions post-dating the prior judgment, the Court dismissed those claims "for lack of standing." *Id.* at 7.

C.      **This Lawsuit**

Undeterred by the losses in the "other litigation," Compl. ¶ 8, Plaintiffs Jacob Gitman (David's father) and Sinai Holdings (another Gitman entity) filed this lawsuit asserting the exact same defamation claims against Chase that this Court rejected in *Monarch I*.

According to the Complaint's familiar refrain, Chase's "policy" is to issue the same standard statement "every time" "a transaction is cancelled because the recipient is on its Interdiction List." The statement is the same one at issue in *Monarch I*: "**We are unable to execute your transaction due to sanctions and/or internal JPMC Policy**." Compl. ¶¶ 6, 33 (emphasis added). As in *Monarch I*, Plaintiffs here allege that they are on the "Interdiction List," and thus "every time" another "business associate[]" attempts to send a transaction to or through Chase, they receive that statement. *See, e.g.*, *id.* ¶¶ 8–10.

In Plaintiffs' view, issuing the statement when blocking a transaction amounts to "false and extreme defamatory language about OFAC sanctions." *E.g.*, *id.* ¶ 59. Plaintiffs further claim that Chase's notices have caused "Sinai's value" and Gitman's "reputation" to be harmed. *E.g.*, *id.* ¶¶ 51–52. And they also say that "[a]ny preexisting barbs at Plaintiffs' reputation by blogs or otherwise" "left Plaintiffs with a thinner skull." *Id.* ¶ 46.

Based on these allegations, the Complaint asserts four claims against the Defendants. In the first and second counts, Plaintiffs allege that Chase "defamed" them. In the first count, Plaintiffs only partially quote the allegedly defamatory statement. *Compare id.* ¶ 64 ("due to Sanctions"), *with id.* ¶ 33 ("due to sanctions and/or internal JPMC policy"). And in the second count, Plaintiffs allege that the notices "*imply* a defamatory connection between Plaintiffs and the OFAC sanctions list, and thereby, falsely *implying* that Plaintiffs were subject to sanctions and related investigations." *Id.* ¶ 70 (emphasis added).

In the third and fourth counts, based on the same allegations, Plaintiffs seek a "preliminary" and "permanent" "injunction" requiring Chase to "cease employing its policy to publish pre-formed falsities about OFAC sanctions whenever it cancels any transactions it is involved with relating to Plaintiffs." *E.g.*, *id.* ¶¶ 76, 83.

When it was filed, this case was initially assigned to Judge James Cohn. But on December 7, the Court deemed the case related to the previous *Monarch* litigation and transferred the case to Judge Dimitrouleas. *See* Order of Transfer, Dkt. 13.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim . . . that is plausible on its face.'" *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"When evaluating a motion to dismiss, the first step is to 'eliminate any allegations in the complaint that are merely legal conclusions.'" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022). "The second step is to assume the veracity of well-pleaded factual allegations and 'then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 934–35. In its evaluation, the court cannot assume the truth of "'labels and conclusions'" or "'formulaic recitation[s],'" nor can it accept "inferences" that are "[un]supported" by the "facts" set out in the complaint. *Id.* at 936 (quoting *Iqbal*, 556 U.S. at 678).

In addition, Plaintiffs must allege facts that are more than "'merely consistent with' a defendant's liability." *Id.* at 934 (quoting *Iqbal*, 556 U.S. at 678). The claim must be "facially plausible," and the facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable." *Id.* (cleaned up). "[D]etermining whether a complaint states a plausible claim" is "context-specific," "requir[ing] the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Preclusion, qualified privilege, and other affirmative defenses can be raised in a motion to dismiss if the complaint's "own allegations indicate the existence of" the defense. *Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009) (citation omitted); *see, e.g.*, *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1148 (11th Cir. 2000). A defense can also be established by facts in "public records" or the like. *Rios v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 7792566, at *5 n.6 (S.D. Fla. July 27, 2017) (Dimitrouleas, J.) (citing *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010)); *see also* Fed. R. Civ. P. 12(d) (noting also that a court may convert a motion to dismiss to a pre-answer motion for summary judgment).

## ARGUMENT

### I.  THE COMPLAINT IS PRECLUDED BY THIS COURT'S PRIOR DECISION IN *MONARCH I*.

At the outset, the Complaint is barred because Plaintiffs are precluded from relitigating the same issue of qualified privilege that this Court already resolved in *Monarch I*. In that case, this Court determined that Chase's standard statements regarding interdicted financial transactions were protected by qualified privilege. Although the Plaintiffs here are technically different, they are in privity with the plaintiffs from *Monarch I* because Jacob and David Gitman are immediate family members, their business interests are closely aligned, and they are represented by the same legal counsel pursuing the same legal strategy. Likewise, although the Plaintiffs here had different transactions blocked, they are complaining about the same verbatim statements from Chase, applied to the same Interdiction List, under the same conditions that were dispositive of the privilege issue in *Monarch I*. This case thus presents the exact same privilege issue.

Since this case involves the same issue and the same series of related transactions as *Monarch I*, both issue preclusion and claim preclusion apply here.

### A.      Issue Preclusion

Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under Florida law," issue preclusion applies when (1) "the identical issue has been [fully] litigated" (2) "between the same parties or their privies" and (3) "results in a final decision." *State v. McBride*, 848 So. 2d 287, 290–91 (Fla. 2003) (citations omitted); *see Marquardt v. State*, 156 So. 3d 464, 482 (Fla. 2015) (similar).[2] All of these elements are met here.

**1.** For purposes of preclusion, two suits may involve an identical issue even if "the events in suit took place at different times." *M.C.G. v. Hillsborough Cnty. Sch. Bd.*, 927 So. 2d 224, 227 (Fla. 2d DCA 2006); *see also, e.g.*, *Zikofsky v. Mktg. 10, Inc.*, 904 So. 2d 520, 525 (Fla. 4th DCA 2005) (issue preclusion applied despite different underlying transactions).

For example, in *GLA & Associates v. City of Boca Raton*, 855 So. 2d 278, 282 (Fla. 4th DCA 2003), the court held that issue preclusion applied to two different suits challenging a city ordinance that blocked two different property developments. In the first suit, a company "sought to build a swimming pool," and in the second suit, the company's "successor in interest" sought to carry out an excavation. *Id.* Although the facts were different, the second suit was precluded because it turned on the same basic "challenge[] to the ordinance" that blocked both developments. *Id.* Accordingly, since both suits presented the same issue of the ordinance's validity, the second company was barred from relitigating that issue in the second suit. *Id.*

Here, this suit likewise involves the "identical issue" of qualified privilege that this Court already resolved in *Monarch I*, 2023 WL 4363816, at *4–7. In the present case, the Complaint

---

[2] "[F]ederal common law adopts the state rule of collateral estoppel to determine the preclusive effect of a judgment of a federal court that exercised diversity jurisdiction." *CSX Transp., Inc. v. General Mills, Inc.*, 846 F.3d 1333, 1335 (11th Cir. 2017).

itself alleges that "Chase's policy" is to issue the same "statement" "every time Chase cancels a transaction to someone on its Interdiction List." Compl. ¶ 4. The statements alleged here are exactly the same as the ones in *Monarch I*, 2023 WL 4363816, at *2. And in *Monarch I*, this Court also determined that Chase issues the same statement whenever it "cancels a wire transaction" involving an individual or entity on its Interdiction List, "in accordance with its procedures" and "standard operating processes." *Id.* at *4; *see id.*, Dkt. 277, at 1–2, 6–7, 10 (affirming same).

Although Plaintiffs here point to different underlying transactions, this case presents the same issue of whether qualified privilege applies to the same standardized statements issued under the same circumstances that Chase issued when blocking the transactions in *Monarch I*. The Complaint does not allege that the statements or Chase's underlying policy in issuing the statements were any different here than they were in *Monarch I*. As a result, the question of whether the qualified privilege protects the statements presents the "identical" issue that this Court already resolved in the prior case. *GLA*, 855 So. 2d at 282.

**2.** In addition to presenting the same issue, Plaintiffs here are also clearly in privity with the plaintiffs from *Monarch I*. The sole individual Plaintiff here, Jacob Gitman, is the father of David Gitman, who was the sole individual plaintiff in *Monarch I*. Jacob is also the former majority owner of Monarch Air, and remains a significant shareholder in the company after transferring the family business to his son. In addition, aside from being immediate family members and joint shareholders in Monarch, Jacob and David are also represented by the same counsel pressing the same legal strategy and making the same basic arguments as they did in *Monarch I*. Moreover, Jacob Gitman and Monarch Air have prosecuted other defamation actions in other jurisdictions as co-parties, represented by one set of counsel. All of this is more than enough to establish privity.

Privity exists where the party to the original suit is "so closely aligned to [the plaintiff's] interests as to be his virtual representative." *Pearce*, 219 So. 3d at 965–66 (citation omitted). Courts have recognized that a "familial relationship," while not dispositive, is "an important factor when assessing the preclusive effects of a prior adjudication," especially with respect to immediate family members. *See Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) (wife and children

precluded from litigating claims their husband and father and his other children previously had litigated). Moreover, overlapping corporate interests are also important factors. *See, e.g.*, *Zikofsky*, 904 So. 2d at 525; *McGregor v. Provident Tr. Co. of Phila.*, 162 So. 323, 329–30 (Fla. 1935) (finding privity due to overlap between a "company's officers," "agents," "largest stockholders," and an "estate"). Finally, the use of the same attorneys further supports privity because it shows a close alignment of interests and strategy among the parties. *See Schmidt v. Sabow*, 331 So. 3d 781, 786 (Fla. 2d DCA 2021) (citing "the same counsel"); *see also 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1290 (5th Cir. 1991); *Conte v. Justice*, 996 F.2d 1398, 1402–03 (2d Cir. 1993).

Here, privity is apparent from the face of the Complaint and other public records—of which this Court can take judicial notice, *see Rios*, 2017 WL 7792566, at *5 n.6 (taking judicial notice of prior filings in finding res judicata applies).

- Plaintiff Jacob Gitman (who is "Sinai's principal," Compl. ¶ 21) is the father of David Gitman, the primary plaintiff in *Monarch I* and *Monarch II*.

- Plaintiff Jacob Gitman describes himself in public court filings as "a minority shareholder of" and "affiliated with" Monarch Air, the other plaintiff in *Monarch I* and *Monarch II*. *See* Ex. 1, Compl., *Monarch Air Grp., LLC*, 218-2022-CV-00120, ¶ 9 (N.H. Super. Ct.); Ex. 2, Compl., *Gitman*, CV2019-009187, ¶ 14 (Ariz. Super. Ct.); Ex. 3-1, Compl., *Monarch Air Grp., LLC v. Stern*, 2020-021551-CA-01, ¶ 9 (Fla. 11th Cir. Ct. Oct. 6, 2020).

- Plaintiff Jacob Gitman was also a managing member of Monarch Air, from 2008 to 2013, *see* Ex. 4, Amendment to Articles of Organization of Monarch Air Group, LLC (Sept. 9, 2008); Ex. 5, Amendment to Articles of Organization of Monarch Air Group, LLC (Oct. 31, 2013), each available publicly from the Florida Department of State, Division of Corporations, http://www.sunbiz.org.

- Plaintiff Jacob Gitman and Monarch Air, are currently co-plaintiffs in a pending defamation action in the Superior Court of the State of New Hampshire, where they are jointly represented by one law firm, *see* Ex. 1.

- Plaintiff Jacob Gitman and Monarch Air are also currently the only co-plaintiffs in another defamation action pending in the Eleventh Circuit Court for Miami-Dade County, where they are again jointly represented by the same counsel—this time, the same counsel representing Plaintiffs in this very case and that represented Monarch Air in *Monarch I* and *Monarch II*, *see* Ex. 3-2, Order Granting Stipulation for Substitution of Counsel (Fla. 11th Cir. Ct. Nov. 30, 2021). That case also alleges defamation. *See id.*, Compl. ¶¶ 1–3 (Oct. 6, 2020) (alleging defamation claims against blog editor because he has "caused the Plaintiffs irreparable reputational and economic harm"); *see also Monarch II*, Dkt. 42, at 3–4; Compl. ¶ 46.

- The same counsel represented David Gitman and Monarch in *Monarch I*, 2023 WL 4363816 (listing "Stok Folk + Kon" for Plaintiffs").

These interlocking Gitman familial and corporate relationships more than suffice to establish privity. Not only is Jacob the "father" of David, *Jaffree*, 837 F.2d at 1467–68, but each also has an ownership interest in Monarch and/or Sinai. *See, e.g.*, *McGregor*, 162 So. at 329–30. Jacob is actively litigating defamation claims with Monarch (and without David)—and has invoked his status as a Monarch shareholder—in another defamation action. *See* Ex. 3-1, Compl. ¶¶ 1–3, 9. And the "same counsel" have represented all of them across multiple proceedings. *Schmidt*, 331 So. 3d at 786. Indeed, these "closely aligned" relationships evidence "tactical maneuvering" of the sort that the privity doctrine was designed to prevent. *Jaffree*, 837 F.2d at 1467. In short, this lawsuit is clearly an attempt to take a second (or third) bite at the apple by relitigating the same issue that the Gitman family lost in *Monarch I*, this time just with a different immediate family member standing in to press the same interests.

**3.** There is no question that the "identical issue" in *Monarch I* was "fully litigated" and "result[ed] in a final decision." *McBride*, 848 So. 2d at 291. This Court entered judgment on the merits in *Monarch I* on May 12, 2023. Dkt. 206. And that judgment remains in place. *See* Dkt. 277 (denying Rule 60(b) motion); *Pincus v. Law Offices of Erskine & Fleisher*, 617 F. Supp. 2d 1265, 1269 (S.D. Fla. 2009) (noting that a "pending appeal" "does not limit [any] preclusive effect").

In sum, issue preclusion bars Plaintiffs' attempt to relitigate whether the same standardized statements issued by Chase are qualifiedly privileged and thus immune from defamation liability.

**B.    Claim Preclusion**

For similar reasons, claim preclusion also bars Plaintiffs' claims. *See Pearce*, 219 So. 3d at 966 (finding that "res judicata similarly barr[ed]" a suit). "Under Florida law, the doctrine of *res judicata*," or claim preclusion, "applies when four 'identities' exist: (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of the parties [or their privies], and (4) identity of the quality of the person[s] for or against whom the claim is made." *Stockton v. Lansiquot*, 838 F.2d 1545, 1546 (11th Cir. 1988); *see, e.g.*, *Fla. Fish and Wildlife Conservation Comm'n v.*

*Wakulla Fishermen's Ass'n, Inc.*, 141 So. 3d 723 (Fla. 1st DCA 2014). Each of these elements is satisfied, as well, based on this Court's recent judgment in *Monarch I. Supra* 7; *see also Monarch II*, Dkt. 42, at 3–4 (dismissing other claims on res judicata grounds).

The "identity of the thing sued for" (relief for defamation, *supra* 8–9) and the "identity of [the] parties or their privies" (the Gitman privies, *supra* 9–11) are each satisfied. *See Stockton*, 838 F.2d at 1546. So, too, are the other elements.

"The test of the identity of the causes of action, for the purpose of determining the question of res adjudicata, is the identity of facts essential to the maintenance of the actions." *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952) (cleaned up). The question is ultimately whether the facts are premised on the same "transaction, or series of connected transactions." *Signo v. Fla. Farm Bureau Cas. Ins. Co.*, 454 So. 2d 3, 5 (Fla. 4th DCA 1984) (citing Restatement (Second) of Judgments § 24(1)). "[I]n determining what constitutes one 'transaction,' courts can properly look to the overlap of witnesses and proofs, and if there is substantial overlap the second action should be precluded." *Desisto v. City of Delray Beach*, 2014 WL 11444095, at *6 (S.D. Fla. Sept. 10, 2014); *see Gordon*, 59 So. 2d at 45 (question is "whether the evidence in both cases is in essence the same"). Here, the same standardized statement has been used in a "series of connected transactions" involving the Gitmans and their business associates. *See Signo*, 454 So. 2d at 5; *supra* 3–6, 8–9. There would also be "substantial overlap" in the "witnesses and proofs" between *Monarch I* and this case. *See Desisto*, 2014 WL 11444095, at *6; *supra* 3–6, 8–9. And so there clearly is an "identity of the causes of action" here. *See Gordon*, 59 So. 2d at 44.

The test for the "quality of the persons" is "whether the parties in the [prior] action had the incentive to adequately litigate the claims in the same character or capacity as would the parties to the federal action." *Stockton*, 838 F.2d at 1546–47. Here, too, the prior Gitman plaintiffs had every "incentive" (with the same attorneys) to "adequately litigate the claims in the same character or capacity as would the parties to [this] action." *See id.*; *supra* 9–11. Indeed, Jacob and Monarch are actively litigating defamation claims together in other actions. *See supra* 10. And so this "identity" is also met. *See Gordon*, 59 So. 2d at 44.

In sum, in addition to issue preclusion, claim preclusion independently supports dismissal.

## II.   THE COMPLAINT FAILS TO STATE A DEFAMATION CLAIM.

Even if Plaintiffs' suit were not precluded, their claims would still fail on the merits.

First, for all of the reasons that this Court explained in *Monarch I*, the qualified privilege applies to Chase's statements and defeats defamation liability. Indeed, the facts alleged in the Complaint here make clear that this Court's privilege analysis from *Monarch I* fully applies and is dispositive in the present case. In particular, the Complaint leaves no doubt that Chase's statements to its customers regarding interdicted transactions pertained to business matters that were a subject of common interest. Thus, to defeat the privilege, the Complaint must plead some new facts supporting a plausible inference of "express malice" to proceed. But it fails to do so.

Second, even putting aside the privilege, the Complaint fails two basic elements of a defamation claim—that a statement be "of and concerning" the plaintiff, and that it be false. According to the Complaint, Chase defamed Plaintiffs by falsely stating or implying that they were subject to sanctions. But that is not what the statements at issue said. For one thing, the statements did not identify Plaintiffs as the subject of any sanctions at all, but instead referred only to the "transaction" at issue: The statements told Chase's customers that "We are unable to execute *your transaction* due to sanctions and/or internal JPMC Policy." Compl. ¶ 33 (emphasis added). That is not a statement about anyone (much less Plaintiffs), but rather a statement about Chase's inability to execute a "transaction." And the nature of the sanctions or policy at issue is unspecified.

Moreover, the statement also is not false. A statement that says "X and/or Y" does not assert that either X or Y is true. Instead, the use of the "and/or" formulation makes clear that the speaker is *agnostic* as to whether X or Y is true (or both). Thus, by stating that a transaction could not be processed due to "sanctions and/or internal JPMC Policy," the statement asserted only that at least *one of* those two things was true. Because the Complaint admits that "internal JPMC Policy" prevented the processing of the transaction, the statement was true.

A.      **The Complaint Fails to Plead Around the Qualified-Privilege Issue That Was Dispositive in *Monarch I*.**

The privilege analysis here tracks this Court's analysis in *Monarch I*. Under Florida law, "[a] communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable." *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984). The privilege thus applies to statements regarding "business matters where both parties have a corresponding interest in the matter." *Monarch I*, 2023 WL 4363816, at *3 (quoting *John Hancock Mut. Life Ins.*, 581 So. 2d at 179).

Where the complaint itself shows that the privilege applies, a plaintiff must plausibly "plead express malice to proceed with his claim." *Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004). That is, the plaintiff must plead facts that could support a plausible inference that the speaker bore an "ill will, hostility *and* an evil intention to defame and injure" the plaintiff. *Id.* (quoting *Lewis v. Evans*, 406 So. 2d 489, 492 (Fla. Ct. App. 1981)).

*Jarzynka* provides an illustration. There, the pleadings alleged that a defendant "made [false] statements" to others "as part of an investigation into whether the [p]laintiff presented a security threat." *Id.* at 1267–68. Because the comments were "part of an investigation" regarding the plaintiff, however, "the remarks" were "privileged as a matter of law." *Id.* at 1268. And although the allegations supported that the defendant had acted "recklessly" in making false statements, the plaintiff still failed to state a claim. *Id.* Those allegations did not plausibly show that the defendant's statements were made "due to hostility or ill will" or an "evil intention" directed "towards the [p]laintiff." *Id.* Accordingly, the court dismissed the defamation claims at the pleading stage. *Id.*

Here, the qualified privilege is likewise apparent on the face of the Complaint. As this Court previously observed, Chase has an obvious "interest in communicating . . . the reason why a transaction cannot be completed, a matter in which its account holders have a corresponding interest." *Monarch I*, 2023 WL 4363816, at *4 (analyzing identical statement). The allegations

here show the same: Chase sends the statement at issue only "when a transaction is cancelled." Compl. ¶ 33. And Chase sends the statement only to the "customer, bank, or financial institution" that attempts the "transfer[]" "with Chase and either of the Plaintiffs." *Id.* ¶ 30. Thus, just as in *Monarch I*, Chase and its customers have an obvious shared business interest in the statements.

Because the privilege undeniably applies, Plaintiffs' claims must be dismissed unless they allege facts that would support a plausible inference of express malice. But instead of alleging any such facts, Plaintiffs try to rely on mere conclusory *assertions*. Indeed, while the term "malice" appears ten times in the Complaint, in each instance it amounts to a mere "legal conclusion[]" that is unsupported by any concrete factual allegations. *Newbauer*, 26 F.4th at 936; *see, e.g.*, Compl. ¶¶ 68, 71, 74, 77, 84. Thus, while the Complaint attempts to construct an "inference[]" of malice, it is completely "[un]supported" by the "facts" alleged. *Newbauer*, 26 F.4th at 936 (cleaned up).

Indeed, express malice cannot plausibly be inferred here for the same reason it could not be in *Monarch I*: As this Court observed there, given that the statements at issue were generated by Chase based on its "standard operating process," there was obviously no ill will or intent to harm the plaintiffs in particular. *Monarch I*, 2023 WL 4363816, at *5. At worst, the Complaint alleges that Chase was *indifferent* to any harms that may have been incidentally suffered by the plaintiffs, which does not suffice to show express malice as a matter of law.

The alleged fact that Chase sends the *same* statement—pursuant to its standard "policy," "every time" a transaction is blocked, Compl. ¶¶ 6, 71—underscores that Chase did not plausibly act with an "evil intention" "*towards*" these particular "Plaintiff[s]." *Jarzynka*, 310 F. Supp. 2d at 1268 (emphasis added). Indeed, the Complaint alleges that the statements are issued because "Chase *clumsily* combines much of the screening personnel and departments . . . when processing and investigating transactions" relating to either "OFAC sanctions" or "Chase's internal [policy]." Compl. ¶ 28. That suggests at worst inadvertence, not malice. And the "language" of the statement—"We are unable to execute your transaction due to sanctions and/or internal JPMC Policy"—is not so "extreme" that it "establishes Chase's express malice" on its face. *Id.* ¶¶ 30, 78, 85. Otherwise, this Court's ruling in *Monarch I* would have come out differently.

Finally, the ultimate question of plausibility asks whether "enough fact[s] . . . raise a reasonable expectation that discovery will reveal evidence of [express malice]." *Bell. Atl. v. Twombly*, 550 U.S. 544, 556 (2007). And where plaintiffs or their attorneys have detailed factual information from prior discovery or otherwise, their inability to plead any facts showing express malice makes it especially implausible that any such express malice can be proved. *Cf. Gutierrez v. City of Hialeah*, 729 F. Supp. 1329, 1334 (S.D. Fla. 1990) (noting "the re-filing of a paper that was previously adjudicated deficient, without substantially addressing the factual deficiencies previously adjudicated, violates the duty to conduct a reasonable pre-filing inquiry into fact"). Thus, the fact that previous discovery in *Monarch I* "entirely fail[ed] to provide evidence" of express malice only underscores that this copycat Complaint does not plausibly plead it. *See Monarch I*, 2023 WL 4363816, at *5. If Chase were forced to go through extensive discovery again into the exact same statement—that is sent "every time" a transaction is blocked, Compl. ¶ 6—there is no plausible reason to think the result would be any different. *See Monarch I*, Dkt. 277, at 9–10 (noting that additional "evidence" showing that different recipients received the statement would not have "compelled a different result"). Plaintiffs and their attorneys have no reasonable basis to demand otherwise. *Cf. Gutierrez*, 729 F. Supp. at 1334.

**B.    The Alleged Statements Are Neither About Plaintiffs Nor False.**

To be actionable in defamation, a statement must be: (1) published; (2) false; (3) made with knowledge or reckless disregard as to the falsity on a matter concerning a public figure, or at least negligently on a matter concerning a private person; (4) actually damaging; and (5) defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). Here, Plaintiffs' claims fail on the most basic of these elements. First, the statement at issue is not "of and concerning" Plaintiffs because it does not even mention them. Second, the statement is not "false" and "defamatory" on its face.

**1.    The Statements Are Not "Of and Concerning" Plaintiffs.**

A plaintiff cannot sue over a defamatory statement unless the statement is "of and concerning" the plaintiff. *Parekh v. CBS Corp.*, 820 F. App'x 827, 833–34 (11th Cir. 2020) (citing

*Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. 1st DCA 1997)). Where "a defamed person is *not* named in the defamatory publication," "'the communication as a whole [must] contain[] sufficient facts or references from which the injured person may be determined by the persons receiving the communication.'" *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973)).

In *Mac Isaac*, for example, a computer repair shop owner alleged that Twitter had defamed him when it blocked access to New York Post articles about Hunter Biden's computer and stated that the "materials included in [the] articles" "violat[ed]" Twitter's "Hacked Materials Policy." *Id.* The Post had made clear in the *underlying* Article that it had received those materials from a Delaware repair shop owner, and even "published a photo" showing his "business name." *Id.* at 1259. So the plaintiff alleged that Twitter had "created the belief among members of the community that [he]: (1) committed a crime—hacking; (2) was subject to hatred, ridicule, contempt, or disgrace—threats of harm and negative business reviews; and (3) was injured to his trade or business as a result—closed his business." *Id.* at 1258. But the Court held that he failed to state a defamation claim. *Id.* at 1260. Because Twitter's statements *themselves* did not identify the plaintiff, his business, or any other descriptive information, they were not defamatory. *Id.*

Based on the same logic, the statements alleged here were not "of and concerning" Plaintiffs. Similar to Twitter in *Mac Isaac*, Chase is alleged to have sent notices to affected individuals in connection with blocked transactions. And like Twitter's notices in *Mac Isaac*, the statements here did not specify any particular person at all, much less *Plaintiffs*. 557 F. Supp. 3d at 1260. Instead, the statements simply referred to the transaction itself, telling the recipients: "We are unable to execute *your transaction* due to sanctions and/or internal JPMC Policy." Compl. ¶ 64 (emphasis added). Nor does the statement refer to any of the "extrinsic evidence" (*e.g.*, external definitions and policies, *id.* ¶¶ 1–3) that Plaintiffs improperly attempt to import into its meaning. *See Mac Isaac*, 557 F. Supp. 3d at 1260. The other person attempting to process the transaction would thus have no idea who (or even what) is responsible for the inability "to execute [his] transaction." Compl. ¶ 64. The statements do not say that the counterparty is personally sanctioned;

-17-

they do not even specify whether the sanctions are based on the identities of the people involved, or the subject matter, or something else. The statements thus are not "of and concerning" Plaintiffs.

### 2. The Statements Are Not False.

To be actionable, defamatory statements also must be *false*. *See Cape Publ'ns, Inc. v. Reakes*, 840 So. 2d 277, 280 (Fla. 5th DCA 2003); *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234 (Fla. 3d DCA 2021) (dismissing claim on the pleadings because there was "substantial truth" to the statement); *Fla. Pub. Co. v. Lee*, 80 So. 245, 246 (Fla. 1918) (holding that "substantially accurate statement[s]" are not false); *see also Turner*, 879 F.3d at 1262.

Here, the Complaint itself makes clear that Chase's alleged statements were not false. The statements asserted: "We are unable to execute your transaction due to sanctions and/or internal JPMC policy." Compl. ¶ 33. By using the "and/or" formulation, the statements made clear that Chase was not asserting that either sanctions or internal policy was necessarily the reason that the transactions were blocked. Rather, as courts have recognized, "and/or" means "X or Y or both." *Castle Key Ins. Co. v. Wooden Family Tr.*, 321 So. 3d 346, 354 n.5 (Fla. 1st DCA 2021). Thus, if a speaker says "X and/or Y," the statement is true if X is true, or if Y is true, or if both are true. Here, the Complaint admits that "internal JPMC policy" was the reason the transactions were denied. *See* Compl. ¶ 35 (alleging that "Chase only ever sends the . . . Statement when it cancels a transaction for compliance reasons"). The statement itself is *true* on its face. *Id.* ¶ 33.

Plaintiffs cannot save their claim by resorting to "defamation by implication." *Turner*, 879 F.3d at 1269. Whether a false and defamatory implication exists is "a question of law for the court to determine," *i.e.*, whether the "gist" of the statement is "*false*." *Id.* "The language . . . should not be interpreted by extremes, but should be 'construed as the common mind would naturally understand it.'" *Walsh v. Miami Herald Publ'g Co.*, 80 So. 2d 669, 671 (Fla. 1955). Here, the "common mind" would not perceive any false implication. The statement makes clear that *either* sanctions "and/or" internal Chase sanctions are the reason for interdiction. Compl. ¶ 33 (emphasis added). The statement is thus unambiguously true if sanctions were the reason the transaction was blocked, *or* if internal JPMC policy was the reason, or if both were the reason. The Complaint

admits internal policy was the reason. There is thus no false implication.

In any event, even if the statement did somehow assert that "sanctions" were necessarily the reason for the interdiction, the statement still would not convey any false and defamatory accusation that Plaintiffs here were subject to targeted sanctions against them individually. On this point, the Complaint's incomplete and misleading description of the role of sanctions under U.S. law becomes important. *See Twombly*, 550 U.S. at 555 (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Contrary to the Complaint's allegations, Chase must comply with both U.S. and global sanctions programs, and those programs are not only targeted "against terrorists, human traffickers, drug smugglers, and proliferators of weapons of mass destruction." Compl. ¶¶ 1–2. The Office of Foreign Assets Control ("OFAC"), for example (*id.* ¶ 2), administers both "selective" or "targeted" sanctions, like the ones described in the Complaint, and "comprehensive sanctions programs," which are based on geography and applied generally to designated countries, such as Cuba. *See, e.g.*, 31 C.F.R. § 515.201(a) (prohibiting, among other things, "transactions [that] involve property in which a foreign country designated under this part, or any national thereof, has at any time on or since the effective date of this section had any interest of any nature whatsoever, direct or indirect"). OFAC explains this in plain language on its own website: "U.S. sanctions programs vary in scope. Some are broad-based and oriented geographically (*i.e.* Cuba, Iran). Others are 'targeted' (*i.e.*, counter-terrorism, counter-narcotics) and focus on specific individuals and entities." *See* U.S. Dep't of Treasury, OFAC, *Sanctions Programs*, https://tinyurl.com/5vkyn99d. Thus, the mere statement that a particular transaction is barred by sanctions—even OFAC sanctions (which the "and/or" statement does not mention)—says nothing about *the parties* to that transaction or even that the sanctions apply to one of the parties per se. That a transaction is blocked by sanctions does not mean that one of the parties to the transaction has been sanctioned for some specific reason, and thus says nothing false or defamatory about any party to the transaction.

For each of these independent reasons—the qualified privilege protects the statements, and the statements were not false—the defamation claims must be dismissed.

III.     **THE REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED.**

Plaintiffs' request for "injunctive" relief must be rejected for two reasons. First, it is entirely derivative of their meritless defamation claim. Indeed, as this Court and many others have recognized, "injunctive relief is a remedy, not a separate cause of action." *Exum v. Nat'l Tire & Battery*, 437 F. Supp. 3d 1141, 1159 (S.D. Fla. 2020); *see Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (similar). Thus, the underlying "cause of action" fails, a corresponding request for "injunctive relief" "must be dismissed." *Exum*, 437 F. Supp. 3d at 1159.

Second, even if a defamation claim could somehow survive here, injunctive relief would be an impermissible remedy on the facts alleged. Under Florida law, "[i]njunctive relief is not available to prohibit the making of defamatory or libelous statements." *Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1090 (Fla. 3d DCA 2014); *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 461 (Fla. 3d DCA 2023). With good reason: an "injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns." *Chevaldina*, 133 So. 3d at 1090. Such a prior restraint would be especially inappropriate here, where this Court in *Monarch I* already determined that the exact same standardized statement made by Chase was not defamatory but was rather protected by the qualified privilege. Moreover, "equitable relief is only available where there is no adequate remedy at law." *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1382 (11th Cir. 2023). And here, the complaint does not even attempt to explain why the availability of money damages does not suffice to provide full relief for the alleged defamation.

At the very least, then, this Court should dismiss Plaintiffs' purported "claims" for injunctive relief. Plaintiffs cannot even seek that relief for their defamation claims. *See Chevaldina*, 133 So. 3d at 1090. And they have not pleaded facts suggesting that relief would be appropriate or that they otherwise lack a remedy at law. *Noble*, 83 F.4th at 1382; *see Monarch I*, Compl., Dkt. 1 (seeking only money damages).

## CONCLUSION

For the foregoing reasons, all of the claims in the Complaint should be dismissed with prejudice in accordance with Federal Rule of Civil Procedure Rule 12(b)(6).

Dated: December 21, 2023

Respectfully submitted,

*/s/ Eliot Pedrosa*

Eliot Pedrosa (Fla. Bar No. 182443)
Taylor Cavaliere (Fla. Bar No. 1040247)
JONES DAY
Brickell World Plaza
600 Brickell Avenue, Suite 3300
Miami, FL, 33131
Telephone: 305-714-9700
Facsimile: 305-714-9799
Email: epedrosa@jonesday.com
Email: tcavaliere@jonesday.com

*Attorneys for Defendant JPMorgan Chase, N.A.*

Anthony J. Dick (*pro hac vice*)
JONES DAY
51 Louisiana Ave. NW
Washington, DC, 20001-2113
Tel.: 202-879-3939
Fax: 202-626-1700
Email: ajdick@jonesday.com

Anthony J. Clopton (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, MI, 48226-4438
Telephone: 313-733-3939
Facsimile: 313-230-7997
Email: aclopton@jonesday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2023, a true and correct copy of the foregoing Motion to Dismiss Complaint and accompanying papers were filed using the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Eliot Pedrosa*
Eliot Pedrosa
*Attorney for Defendant*
