## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SINAI HOLDINGS, LLC,                                    **CASE NO. 23-62159-CIV-WPD**
a Florida limited liability company,
and JACOB GITMAN,

      Plaintiffs,

vs.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

### <u>PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

STOK KON + BRAVERMAN
One East Broward Boulevard, Suite 915 | Fort Lauderdale, FL 33180 | Tel: (954) 237-1777 | Fax: (954) 237-1737

# TABLE OF CONTENTS

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS......................... i

TABLE OF CONTENTS........................................................................................ ii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................ 1

   Monarch I and II ........................................................................................... 4

MEMORANDUM OF LAW ................................................................................ 5

  I.    LEGAL STANDARD ...................................................................... 5

  **II**.    ***Monarch I* has no preclusive effect on this Case** ......................... 5

    A.    Issue Preclusion ...................................................................... 5

      1.    Identical issues have not been litigated ................................ 5

      2.    Plaintiffs are not in privity with Plaintiffs from Monarch I ................. 6

    B.    There cannot be claim preclusion from disparate parties and claims. ..................... 9

      1.    The identity of the cause of action is different from that in *Monarch I* ............... 9

      2.    There is no identity of parties between this case and *Monarch I* ....................... 10

  **III.**    **Plaintiffs' defamation claims are sufficiently pled** ................................. 10

    A.    Chase did not plead a qualified privilege nor does it apply ................................... 11

    B.    Plaintiffs pled facts showing Chase's express malice............................................ 13

    C.    Plaintiffs sufficiently plead a cause of action for Defamation per se. ................... 14

      1. The OFAC Sanctions Statement is "of and concerning" Plaintiffs ......................... 15

      2. The OFAC Sanctions Statement is false and misleads ............................................ 16

  **IV.**    **Plaintiffs stated an equitable claim for injunctive relief to address the irreparable business harms caused and continuing from Chase's defamatory policy and practice framework** ..................................................................................... 18

CONCLUSION .............................................................................................. 20

REQUEST FOR HEARING.............................................................................. 21

CERTIFICATE OF SERVICE ......................................................................... 21

Plaintiffs, SINAI HOLDINGS, LLC ("Sinai"), and JACOB GITMAN ("Jacob") (collectively, "Plaintiffs"), respond to Defendant's, JPMORGAN CHASE BANK, N.A. ("Defendant" or "Chase") Motion to Dismiss.

## INTRODUCTION

Chase's CEO sagely directs us all to: "Do the right thing. Deal directly with problems. Value everyone equally. Own up to your mistakes and learn from them." Yet Chase's Motion to Dismiss grasps at the wind. Rather than show any contrition after its policy-to-defame framework was exposed in the Complaint, Chase doubled down. Now, Chase declares that no court can anywhere remedy the ever-present and worsening humiliation, anxiety, and business-destroying harms indiscriminately inflicted on Jacob or Sinai, its employees and patients – at law or in equity. Why? Because Chase also defamed another person and business, and, when they sued, Chase did not diligently produce discovery and those non-parties were unable to extract the facts now alleged here in time to respond to Chase's summary judgment briefing. Chase seeks to recreate a Star Chamberesque, Due-Process-by-family standard. The Court should not oblige.

Sinai is a multispecialty healthcare enterprise that employed almost 500 healthcare professionals and was treating tens of thousands of patients in rheumatology, cardiology, gastroenterology, oncology/hematology, intravenous infusion, cardiovascular and orthopedic specialty and ambulatory surgical procedures. Sinai is not under Monarch's corporate umbrella. And Jacob is an independent Citizen with his own Due Process rights to defend his name. He simply is not bound by his son's and another entity's litigation strategies or conclusions. To be sure, contrary to how Monarch litigated, with a confidentiality order protecting its financial and client information from public dissemination, Sinai is taking the opposite approach. Sinai understands that one cannot truly clear their name in secret; it must be done out in the sunlight.

All told, because the Complaint (1) exposes Chase's seriously unjust yet systemic policies and practices – to defame everyone on its compliance Interdiction List with false charges of investigations and sanctions for the worst kinds of crimes against humanity; (2) confirms in detail how everyone knows these OFAC Sanctions Statements are about Sinai and Jacob; and (3) even pleads around an unpled qualified privilege defense because Chase acted improperly and with express malice, Chase's Motion to Dismiss should be denied *in toto*.

## FACTUAL BACKGROUND

Sinai and Jacob sued Chase because it was spreading falsehoods to their new and old business associates, bankers around the world, and principal lenders that it could not complete

transactions to Sinai and Jacob "due to Sanctions" relating to an "OFAC Investigation." Compl. [DE 1] ¶9. This ultimately caused Plaintiffs' lenders to hold them in default in October 2023 and recall their loans, creating severe shortfalls of working capital for ongoing projects, rents and the company's clinic and surgical-center operations. Plaintiffs' other business associates also stopped doing business with them, among other interferences that Chase's defamation *per se* wrecked on Plaintiffs' business relationships and interests. *Id.* ¶10.

Sinai is a medical company with pharmacies, physician groups, surgical facilities, infusion treatment centers, and other freestanding facilities and centers in diverse specialties, including oncology and rheumatology, and was valued at almost $600,000,000. *See Id.* ¶¶16, 20. Sinai depended on its lenders' $200,000,000 plus financing to facilitate its operations and growth. *Id.* ¶¶17-19. Jacob is a self-made entrepreneur and inventor. *Id.* ¶21. Jacob invested substantial time, money, and effort in growing Sinai and establishing its and his reputations. *Id.*

It seems strange that a bank would cancel transactions and say that it could not complete them due to OFAC investigations and sanctions, so why does Chase do it? Short answer: Chase set up its system to do so either because it wanted to harm those on its Interdiction List or because it was wantonly careless when setting up its system.

Long answer: Chase set up an internal department, the SSU as a cutout to communicate with its customers that try to transfer money to a sanctioned entity or country. *Id.* ¶24. After getting tidbits of information, the SSU then almost blindly passes that information in formulaic ways to a once-more removed decision-making department. *Id.* ¶25. If the transaction is blocked or rejected for actual OFAC reasons, the SSU tells Chase's customer the specific sanction causing the transaction to be stopped. *Id.* ¶26.

Separately, however, Chase has an Interdiction List for people (natural and otherwise) that it does not want to do business with, because it is biased against them. *Id.* ¶¶3-4, 27, 55, 58. Whenever one of these thousands of people on the Interdiction List tries to transfer money to or from a Chase customer or correspondent bank, Chase uses a subdepartment within the SSU to communicate. *Id.* ¶¶28-29, 32. Chase then, without a hint of an apology or regret, commands its SSU to falsely say to its customer and other banks that the transaction cannot be completed "due to Sanctions" concerning an "OFAC investigation" even though Chase will really not complete the transactions only because of its "internal policy." *Id.* ¶¶33, 35. The OFAC Sanctions Statements are always false. *Id.* ¶¶35, 42. Chase set up its system to harm those it put on its

Interdiction List. *Id.* ¶36.[1] Whenever Chase sends the OFAC Sanctions Statement, it refers to the specific date, amount, and reference number for the identified transaction. *Id.* ¶37.

After improperly de-banking them, Chase put Sinai and Jacob on its Interdiction List and stopped transactions to or from them. *Id.* ¶38. Whenever it did so, Chase also unleashed humiliating and business-paralyzing gossip to Plaintiffs' business associates, lenders, and banks that it could not execute the transactions with Plaintiffs "due to Sanctions" related to an "OFAC Investigation." *Id.* ¶39. Plaintiffs' business contacts knew that they were not subject to any sanctions because they never had issues sending or receiving money. *Id.* ¶40. They understood that Chase's OFAC investigations and sanctions statements were about Jacob and Sinai. *Id.*

Worse than just a general, shame-ridden destruction of Plaintiffs' business relationships, this OFAC chatter ultimately caused Plaintiffs' lenders to refuse to lend Plaintiffs any more money and to recall their loans. *Id.* ¶¶47, 49. Without access to financing to stabilize receivables cash flow, Plaintiffs could not pay rent at multiple locations or their construction bills. *Id.* ¶49. Plaintiffs are also being sued by other businesses for outstanding bills. *Id.* Sinai's bank accounts at Bank of America, Regents Bank, and TD Bank were closed. *Id.* ¶50. Sinai's value plummeted and Jacob continues to suffer the reputational harm, the embarrassment, and the always-looming anxiety that any business transaction can still inevitably toxify another business relationship since Chase may be the beneficiary, correspondent or originating bank. *Id.* ¶¶51-52.

---

[1] Investigative journalists captured at least some of Chase's improper biases for closing accounts and otherwise de-banking or "de-risking" people and businesses that Chase perceives have unwanted political alliances. *See* https://news.yahoo.com/bank-chasing-away-conservatives-103056725.html (Chase employee candidly admitting that while he "can't get political" because the call was recorded, Chase would not do business "with those types of people.") (last visited 1/28/2024); *see also* https://home.treasury.gov/news/ press-releases/jy1438 (the US Treasury Department, FinCEN, Chase's principal regulator, issuing its policy explaining how "[d]e-risking undermines several key U.S. government policy objectives by driving financial activity out of the regulated financial system, hampering remittances, preventing low- and middle-income segments of the population from efficiently accessing the financial system, and preventing the unencumbered transfer of humanitarian aid and disaster relief."); *see also* https://www.rubio.senate.gov/rubio-raises-concerns-about-chase-bank-politically-motivated-de-banking/ (noting the Senator's "grave concern with politically-motivated de-banking" by Chase); https://www.dailysignal.com/2023/03/29/jpmorgan-chase-must-allow-shareholders-eigh-report-politically-motivated-debanking-sec-rules (reporting that the Securities and Exchange Commission ruled that "JPMorgan Chase & Co. must allow shareholders to vote on a resolution urging the company to investigate politically-motivated discrimination after Chase denied payments or canceled accounts in what critics call a discriminatory trend in banking."); *see also* https://www.foxbusiness.com/politics/state-financial-officers-call-jpmorgan-chase-address-politically-motivated-de-banking (numerous states' financial officers urging "Chase to immediately take steps to identify and address internal drivers of political or anti-religious bias that could undermine its fiduciary obligations and impair the freedom of its customers to access financial services without fear of discrimination.") (last visited 1/28/2024).

Worst still, Chase knows about this systemic defamation and has not taken any steps to correct it before or after it started defaming Plaintiffs in particular. *Id.* ¶¶8, 54. Chase set itself up to only make the OFAC Sanctions Statement when it is false. *Id.* ¶53. Chase's policy requires it to say that it cancelled a transaction "due to Sanctions" involving an "OFAC investigation," when that statement is never used when OFAC investigations or sanctions are at issue. *Id.* ¶57. Chase did so with a bias against, and to brazenly harm, those on its Interdiction List. *Id.* ¶¶55, 58. Chase knows that when it uses "OFAC investigations" and "Sanctions" it is talking about the most extreme criminal scrutiny and punishments. *Id.* ¶59 Chase sends the OFAC Sanctions Statements unsolicited to accountholders and non-accountholders. *Id.* ¶56. Chase can edit its messages to remove the false portions, *but refuses to,* and Chase sends the messages contrary to banking practices and regulations, and without even abiding by its own verification policies. *Id.*

**Monarch I and II**

In November 2021, Monarch Air Group, LLC, and David Gitman sued Chase because Chase was defaming them causing them significant damage. *See Monarch I* [DE 78] Sec. Am. Compl. ¶¶12, 15-20. After they were de-banked, Monarch sued Chase after first asking Chase why it was cancelling its transactions, blaming it on OFAC sanctions, and not getting a satisfactory answer. *Id.* ¶¶13-14.

Jacob was a minority Monarch member when a blog published a wildly false and since-recanted political hitjob about them in 2019. Indeed, Chase's sham reasons for interdicting and defaming Jacob in reliance on that uncorroborated blog post, contrary to its own verification policies, is yet another new issue not adjudged in the summary judgment ruling in *Monarch I.* But Jacob transferred that non-controlling interest to David before Chase defamed Monarch.

During the *Monarch I* litigation, Chase engaged in substantial discovery misconduct leading the Magistrate Judge to sanction Chase twice and to preclude Chase from admitting important, hidden and then late-disclosed documents on the eve of trial. *Monarch I* [DE 175], [DE 203]. The Court then granted summary judgment in Chase's favor because Monarch did not present evidence to adequately dispute Chase's asserted facts. *Id.* [DE 205] 8 ns. 5, 6; *Id.* 10-11.

While *Monarch I* was pending, Monarch filed a second action arguing that Chase's refusal to complete Monarch's customer's transactions breached Chase's contracts with Monarch's customers and the duties imposed by Florida's UCC governing wire payment orders. The Court dismissed that case because some transactions were barred by res judicata and the remainder because Monarch did not have standing to raise the claims.

**MEMORANDUM OF LAW**

**I.      LEGAL STANDARD**

When reviewing a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and takes the complaint's factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997). The Court's review is "limited to the four corners of the complaint," *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). Also, "a district court, before dismissing a complaint with prejudice because of a mere pleading defect, ordinarily must give a plaintiff one opportunity to amend the complaint and to cure the pleading defect." *Hilson v. D'More Help, Inc*., 2015 WL 1737688, at *6 (S.D. Fla. Apr. 15, 2015) (citation omitted). Thus, while Chase's Motion is not at all well taken and should be denied in its entirety, should the Court find the Complaint's allegations lacking in any way, Plaintiffs request leave to amend or to move for leave to amend the Complaint to elaborate and expound on the serious wrongs Chase continues to perpetrate.

**II.      *Monarch I* has no preclusive effect on this Case**

A federal-court judgment's preclusive effect is determined under federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citations omitted). For diversity judgments, federal common law incorporates the rendering state's preclusions rules, here, Florida. *Id*. n.4. Federal common law preclusion rules are limited by due process. *Id*. at 891. Plaintiffs' claims are not precluded by prior decisions, as the parties and issues are new and unique.

**A.  Issue Preclusion**

Issue preclusion applies when the same parties are litigating different causes of action than in earlier litigation. *Mass v. State*, 927 So. 2d 157, 160 (Fla. 3d DCA 2006); *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952)). In such cases, matters actually decided and premised on the "precise facts" determined in the earlier judgment should generally not be re-adjudged. *Id.*

**1.  Identical issues have not been litigated**

For an issue to be barred under issue preclusion, the same points and questions must have been decided in the first case. *Cook v. State*, 921 So. 2d 631, 634 (Fla. 2d DCA 2005) (quoting *Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995)). But in this case, for example, as an additional reason why Chase is not protected by the qualified privilege, Jacob and Sinai raise Chase's defamation that continued after the Monarch litigation. This, for the first time, shows that Chase continues to needlessly defame everyone on its interdiction list even after knowing the consequences of its callous policies at multiple levels of its organization. The Monarch Plaintiffs could not have raised this issue in *Monarch I* or actually litigated it because, as alleged,

Chase further learned about the malignant deficiencies in its system because of "other litigation," construed in the light most favorable to Plaintiffs, the Monarch litigation. [DE 1] ¶8.

Yet Chase still claims that the same issues litigated in *Monarch I* are being litigated here and that the "Complaint does not allege that the statements or Chase's underlying policy were any different here than they were in *Monarch I*." Not so. Here, Plaintiffs alleged that "*Defendant is aware* of this systemic issue [needlessly defaming those on its interdiction list] from other litigation where it was sued for making false and defamatory and Defendant *has still refused to fix its systemic problems* and continues to send false and defamatory statements…." [DE 1] ¶¶8, 54. That issue was not and could not have been litigated in *Monarch I*, nor does it rely on the "precise facts" that *Monarch I* relied on. Chase thus has not shown that the issues are the same.

### 2.  Plaintiffs are not in privity with Plaintiffs from Monarch I

Privity is "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Pearce v. Sandler*, 219 So. 3d 961, 966 (Fla. 3d DCA 2017) (quotations omitted). Generally, a nonparty to a lawsuit has not had a "full and fair opportunity to litigate" claims raised in the suit. *Taylor*, 553 U.S. at 892. Precluding nonparties from raising a claim or issue "runs up against the deep-rooted historic tradition that everyone should have their own day in court." *Id.* at 892-93 (quotations omitted). "An underlying principle is that it is a violation of due process for a judgment in a prior suit to be binding on a litigant who was not a party or a privy and there has never had an opportunity to be heard." *United States v. Esformes*, 16-20549-CR, 2018 WL 5919517, at *11 (S.D. Fla. Nov. 13, 2018) (quotation omitted). One is thus not bound by a judgment in a litigation in which he is not a party. *Id.* at 893 (quotation omitted).

The Supreme Court identified six exceptions where preclusion satisfies Due Process. *Taylor*, 553 U.S. at 893. First, when a person agrees to be bound by the outcome of litigation between two other parties, he is so bound. *Id.* For example, where different plaintiffs against the same defendant agree that a test case will conclusively determine the defendant's liability. *Id.* Second, a preexisting substantive legal relationship like bailee-bailor, assignee-assignor, and proceeding-succeeding property owners, justify preclusion. *Id.* at 894. Third, preclusion is proper when someone with the same interest as a nonparty represents that interest, such as properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries. *Id.* Fourth, a nonparty assuming control over litigation has the opportunity to present evidence and argument and is bound by the first judgment. *Id.* at 895. Fifth, a party's agent or proxy is bound

by the judgment when suing in a representative capacity. *Id.* Lastly, statutory schemes, such as bankruptcy and probate proceedings, and quo warranto actions that allow a suit to "be brought on behalf of the public at large" justify preclusion. *Id.*

In *Taylor*, the Supreme Court rejected "virtual representation" as another preclusion category. *Id.* at 896-901. The Court reasoned that an amorphous balancing test eliminates the Court's aim to delineate limited circumstances where preclusion applies. *Id.* at 898. In class actions, a party's representation is adequate if 1) both parties' interests are aligned, 2) the first party understands that it is acting as a representative or the court protected the nonparty's interests, and 3) the nonparty had notice of the suit. *Id.* at 900. Allowing "virtual representation" would allow due-process-free common law class actions. *Id.* at 901. Lastly, "virtual representation" questions are "wide-ranging, time consuming, and expensive" to determine. *Id.*

Under Florida's strict mutuality of parties requirement, "unless both parties are bound by the prior judgment, neither may use it in a subsequent action." *Stogniew*, 656 So. 2d at 919. If both are not bound, neither is. *Pearce*, 219 So. 3d at 965.

Here, Chase forcefully asserts that Jacob and Sinai are "clearly in privity with the plaintiffs from *Monarch I*," without law or facts supporting that conclusory declaration. Chase selectively quotes from filings in other cases and fabricates a connection between Monarch and Sinai. Because Chase's claimed connections do not factually exist and anyways do not satisfy what the law requires, Sinai and Jacob are not in privity with David or Monarch.

David is not a shareholder in Sinai. Jacob was not a controlling shareholder in Monarch when Chase defamed him or when he was a co-plaintiff with Monarch in other defamation claims. Yet Chase baselessly asserts that "each also has an ownership interest in Monarch and/or Sinai." Mot. [DE 19] 16. Chase has no foundation for its claim that David has an ownership interest in Sinai and falsely asserts that "Jacob…remains a significant shareholder in [Monarch] after transferring the family business to his son." And Chase hides from the Court that Jacob described himself as a minority shareholder of Monarch "at all relevant times."[2] *See* [DE 19-1] ¶9, [DE 19-3] ¶9. The "relevant time" was when the defamatory blog at issue was published, 2019. And Chase's "tactical maneuvering" assertion is foreclosed by the Supreme Court restricting that argument to agent-principal relationships. *Taylor*, 553 U.S. at 906 ("A mere whiff

---

[2] Defendant points to pleadings in other cases, claiming that the Court can take judicial notice. But the Court can only take judicial notice that these documents were filed and of the other proceedings, not of the facts alleged within them. *Grayson v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1204, 1225 (11th Cir. 2017) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998)).

of 'tactical maneuvering' will not suffice; instead, principles of agency law are suggestive. They indicate that preclusion is appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication."). Chase has not shown, and cannot show, that Jacob or Sinai exercised any control over the *Monarch I* litigation.

The cases Chase relies on are distinguishable. First, Chase relies on *Jaffree v. Wallace*, 837 F.2d 1461 (11th Cir. 1988), to say that family relationships are an important factor for determining preclusion. Mot. [DE 19] 14. In *Jaffree*, unlike here, the plaintiffs in the second action were also plaintiffs in the first action, although they abandoned their claims. *Jaffree*, 837 F.2d at 1463. And both suits were brought by Jaffree as his children's representative, and the plaintiff's statements showed they were aligned and in privity. *Id.* at 1467, 1468 n.17. And the Eleventh Circuit's conclusion rested on the virtual representation theory the Supreme Court later rejected in *Taylor*. *Id.* at 1467. Even if a family relationship is relevant, it is relevant only when the second family member would benefit from each case. *Baloco v. Drummond Co.*, 767 F.3d 1229, 1251 n.31 (citing *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir.1985)) (preclusion applies when each party is suing for its own damages but not when each party is suing for the same damages); *Youngblood v. Taylor*, 89 So. 2d 503, 506 (Fla. 1956) (res judicata does not bar a father's independent cause of action). In *Youngblood*, the court did not preclude a father from suing for his own damages, after an unfavorable judgment for his son's damages from the same accident. 89 So. 2d at 506. The father's and son's damages were different even if they resulted from the *same* tort. *Id.* But here, Chase's statements defaming Jacob and Sinai are distinct from those defaming Monarch and David.

Next, Chase argues that "overlapping corporate interests are also important factors." Mot. [DE 19] 15 (citing *Zikofsky v. Marketing 10, Inc.*, 904 So. 2d 520, 525 (Fla. 4th DCA 2005); *McGregor v. Provident Tr. Co. of Phila.*, 162 So. 323, 329-30 (Fla. 1935)). Neither case supports Chase's argument. In *Zikofsky*, the court held that just like a corporation is precluded from relitigating a matter decided against the corporation's control person, a ruling against a corporation binds the corporate control person who participated in and controlled the litigation through the corporation. 904 So. 2d at 525. The *Zikofsky* court then cited *McGregor* as the "leading Florida case addressing whether a *controlling* shareholder of a corporation and a corporation are the 'same' party for the purpose of collateral estoppel." *Id.* at 525-26. The *McGregor* court decided that a corporation's largest shareholder's estate was a party for preclusion purposes. *Id.* at 526. Here, however, David is not Sinai's controlling shareholder nor

is Jacob Monarch's. In fact, David never owned any interest in Sinai and Jacob owned no interest in Monarch during the times relevant to this case.

Lastly, Chase relies on dicta and irrelevant case law to argue that using the same attorneys supports privity. Mot. [DE 19] 15 (citing *Schmidt v. Sabow*, 331 So. 3d 781, 786 (Fla. 2d DCA 2021); *1488, Inc. v. Philsec Inv. Copr.*, 939 F.2d 1281, 1290 (5th Cir. 1991); *Conte v. Justice*, 996 F.2d 1398, 1402-03 (2d Cir. 1993)). The court's reference to "same counsel" in *Schmidt* is dicta because it was unnecessary to the court's determination that privity existed with both parties being the same from the earlier litigation. *Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020) ("Any statement of law in a judicial opinion that is not a holding is dictum."); *State ex rel. Biscayne Kennel Club v. Bd. of Bus. Reg.*, 276 So. 2d 823, 826 (Fla. 1973) (Any statement beyond what is necessary to decide the narrow issues is dictum and has no force). *1488* is irrelevant because it was decided under Texas preclusion law and because the new parties were partners with and a subsidiary of the original plaintiff. 939 F.2d at 1290. Similarly, *Conte* is a New York case, which is irrelevant to the Court's Florida Preclusion determination.

## B. There cannot be claim preclusion from disparate parties and claims.

In Florida, claim preclusion has two elements. First, there must be a judgment in the initial suit and second, the proponent must establish each of these identities in both actions: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of quality of person for or against whom the claim is made." *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005) (en banc).

### 1. The identity of the cause of action is different from that in *Monarch I*

"Identity of the causes of action is established where the facts which are required to maintain both actions are identical." *Gold v. Bankier*, 840 So. 2d 395, 397 (Fla. 4th DCA 2003) (quotation omitted). Facts are identical when the testimony in the second case is essentially the same as in the first. *Desisto v. City of Delray*, 2014 WL 11444095, at *6 (S.D. Fla. Sept. 10, 2014) (citing *Gordon*, 49 So. 2d at 44). A cause of action accruing after filing the original complaint is not precluded. *Maloney v. Heftler Realty*, 316 So. 2d 594, 596 (Fla. 2d DCA 1975).

Here, the facts needed to prove Plaintiffs' causes of action are distinct from those in *Monarch I*, as new statements are being made about new individuals and companies to new people and businesses. And for the publications and damages that continue to occur and accrue after Monarch even filed its complaint, there cannot possibly be claim preclusion as a matter of law. Some background facts are similar here and in *Monarch I*, since both sets of Plaintiffs,

among thousands of other people, have been caught in Chase's defamatory interdicting web. The defamatory statement's written language and Chase's policies overlap.  But how that written language was received by business associates or restated by Chase orally, how those policies were applied arbitrarily with an animus against Jacob and Sinai, and all the other essential facts and evidence showing Chase's defamation *sub judice*, are entirely different. Sinai could never prove that Chase defamed it to its bankers or lenders from any statement made to Monarch's customers, vendors, or banks. And vice versa. *Youngblood*, 89 So. 2d at 506.

Chase asserts that its defamatory statements are all part of a "series of connected transactions," and thus within the same cause of action. [DE 19] 17. But its support for this proposition is hopelessly flawed. *Signo v. Florida Farm Bureau Cas. Ins.,* 454 So. 2d 3 (Fla. 4th DCA 1984), is a case about splitting causes of action and does not apply to general res judicata principles, especially considering factually disparate situations and businesses, employees, and stakeholders. *Tyson*, 890 So. 2d at 1212. And any OFAC Sanctions Statements defaming Sinai or Jacob after Monarch filed its original complaint (November 1, 2021) cannot possibly be "the same cause of action" raised in Monarch's case, even according to Chase's grasping arguments.

### 2.   There is no identity of parties between this case and *Monarch I*

Issue preclusion and claim preclusion use the same party identity test. *See Massey v. David*, 831 So. 2d 226, 232 (Fla. 1st DCA 2002) (citations omitted). Plaintiffs explained, *supra*, how they are distinct parties from those in *Monarch I*, and res judicata cannot apply.

### III.   Plaintiffs' defamation claims are sufficiently pled

Next, Chase again invokes earlier cases involving separate parties to conceal themselves from responsibility. First, Chase mistakenly believes that Plaintiffs must plead around an unpled privilege defense to survive its Motion to Dismiss, without any notice of Chase's position except that it vaguely pled that defense in another matter. Even so, Plaintiffs' Complaint not only infers express malice, but explicitly pleads facts showing Chase's express malice. *See* [DE 1] ¶¶30, 36, 41-42, 59, 65, 68. Second, Chase continues to ignore Plaintiffs' detailed Complaint and argues that the OFAC Sanctions Statement is not "of and concerning" Plaintiffs. Yet Plaintiffs specifically alleged that the third parties receiving the OFAC Sanctions Statement understand that the sender or receiver of the funds—i.e., the Plaintiffs—is the one Chase says it cannot process transactions to because of the OFAC investigations and sanctions and that Chase includes substantial and specific information showing that the statement is about Plaintiffs. *Id.* ¶¶37, 40. Third, Chase brazenly claims that the OFAC Sanctions Statement is true, even though

Chase knows that Plaintiffs are not subject to OFAC sanctions or investigations, by playing word games with the "and/or" of the statement. This too fails, as even Chase must admit that two out of three meanings are completely false. And the OFAC investigation subject line is never true.

### A.  Chase did not plead a qualified privilege nor does it apply

Chase failed to plead—much less establish—that a qualified privilege applies here. *Glynn v. City of Kissimmee*, 383 So. 2d 774, 776 (Fla. 5th DCA 1980) ("Qualified privilege is a defense and the burden of proving it rests with the defendant."); *See also D. P. v. Sch. Bd. of Palm Beach Cnty.*, 658 F. Supp. 3d 1187, 1204 (S.D. Fla. 2023) ("An affirmative defense must be established by a defendant, not negated by a plaintiff"). Instead, Chase chooses to gloss over this fact by pointing to *Monarch I* and cherry-picking select language from the Complaint, while ignoring everything in the Complaint that destroys its position. Even if a qualified privilege could apply, Jacob and Sinai sufficiently pled facts highlighting Chase's express malice.

When determining whether a qualified privilege applies, fairness and accuracy are basic requirements. *O'Neal v. Tribune Co*., 176 So. 2d 535, 547 (Fla. 2d DCA 1965). "The essential elements of a qualified privilege are (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speakers has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion, and (5) publication in a proper manner." *Nowik v. Mazda Motors of Am. (East)*, 523 So. 2d 769 (Fla. 1st DCA 1988). A statement is privileged only if limited in scope to the speaker and listener's mutual interest. *O'Neal*, 176 So.2d at 542.

Here, Chase publishes the false OFAC Sanctions Statement or similar sanctions statements in bad faith, with the "intention to harm those on the Interdiction List, especially against Plaintiffs." [DE 1] ¶¶42, 36. While Chase may claim it has a duty to disclose that Plaintiffs are on Chase's Interdiction List, that does not give Chase free range to publish the "OFAC Sanctions Statement" "to any customer, bank, or financial institution that does business transferring money with Chase and either of the Plaintiffs." *Id.* ¶30. Chase cannot publish the false OFAC Sanctions Statement, when Chase actively knows that Plaintiffs are not subject to OFAC investigation or sanctions and hide behind a qualified privilege.

Innocent falsity, standing alone, is not enough to undermine a qualified privilege defense. But Chase went much further and knowingly pre-set the OFAC Sanctions Statements to always include fabricated information, for no reason, whenever and in every manner of contact, beyond the scope of any shared interest. This causes Chase to generate the OFAC Sanctions Statements that needlessly declare payments were and are cancelled for a non-existent OFAC investigation

and related sanctions reserved for human-traffickers and terrorists, when the true reason is always only Chase's whimsical internal compliance.

None of this can establish that Chase acted in a proper manner and occasion to defame, let alone to presume good faith. Rather, as alleged in paragraph 56, which must be taken as true, Chase "sent the OFAC Sanctions Statements in an improper manner and an improper occasion because Chase sent the messages unsolicited, Chase could have edited the messages to remove its defamatory language, Chase sent them contrary to standard bank practices and regulations, Chase published them without following its verification policies, and Chase made the defamatory statements to more than just accountholders."

Therefore, both Chase's practices and policies are neither the proper manner nor occasion for Chase to spread these terrible falsehoods *a priori* on autopilot. The judicially created qualified privilege defense balances the societal interests of protecting one's good name while promoting frank and innocent discussions when the speaker has a duty to act and the listener a mutual interest in hearing. *See Valladares v. Bank of Am. Corp*., 197 So. 3d 1, 7 (Fla. 2016) (discussing the importance of the "judicially created qualified privilege for those who may incorrectly but *innocently* report criminal conduct.") (emphasis added).

So when, for example, a former-employer has a duty to convey all useful information to the prospective new boss, a qualified privilege allows the former-employer to openly discuss the employee even if they mistakenly and *innocently* convey false information in the process. *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984) (explaining how a defamatory statement may be "conditionally privileged" when the "statement was made for the protection of the recipient's interest in receiving information on the performance of its employee").

But that leeway would not allow the former employer to adopt a policy, with intent to harm its former employees, always publishing canned false statements under the guise of a qualified privilege. That especially cannot be if doing so conflicts with standard industry norms, comes unsolicited, and is sent without following the employer's corroboration policies.

Instead, because the statement is pre-casted to always be a lie when sent—and for no proper reason—the question becomes how this can even be imagined as an innocently mistaken statement clothed with a qualified protection to defame. The answer: it cannot. No societal interest is advanced by protecting a company to intentionally employ a false rubber stamp, much less a compelling interest outweighing the deep reputational concerns that are so protected under Florida's defamation law. *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 729 (Fla. 4th DCA

2010) ("Florida's unusually high protection of personal reputation derives from the common consent of humankind and has ancient roots.") Chase thus has no qualified privilege.

### B.  Plaintiffs pled facts showing Chase's express malice

Assuming a qualified privilege was pled or proven, "the qualified privilege vanishes" when "the defamatory statement is made with express malice." *Am. Ideal Mgmt., Inc. v. Dale Vill., Inc.*, 567 So. 2d 497, 499 (Fla. 4th DCA 1990). A statement is made with express malice when made with a bad motive and not "made for a proper purpose in light of the interests sought to be protected by legal recognition of the privilege." *Nodar*, 462 So. 2d at 810. "This malice may be inferred from the language itself, or may be proven by extrinsic circumstances." *Id.*

We focus first on Chase's words, including that Plaintiffs' large business transactions must be cancelled "due to Sanctions" concerning an "OFAC investigation." [DE 1] ¶¶4-5. The Florida Supreme Court found that a parent's words—that an unqualified teacher was harassing and orally abusing their child—were not "so extreme as to demonstrate express malice." *Nodar*, 462 So. 2d at 812. Yet the words Chase uses are, "so extreme," because they lump Plaintiffs together with "terrorists, human traffickers, drug smugglers, and proliferators of weapons of mass destruction." [DE 1] ¶2. It is settled law that OFAC sanctions are used by the Federal government to punish the vilest kind of criminals. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) (concluding that merely suggesting that someone was potentially subject to OFAC Sanctions equated to defamation because the person's reputation was harmed by being labeled "as potential terrorists, drug traffickers, or serious criminals."). Thus, Chase's express malice is:

> [A]pparent from the defamatory statements themselves as Defendant knows from its OFAC "sanctions" definition. Defendant understands that OFAC sanctions are reserved for the worst criminals, including those proliferating chemical, biological, and other weapons of mass destruction, along with human and drug traffickers. An entity or individual that is involved with a transaction blocked by actual OFAC sanctions can themselves be subject to investigation and arrest. Yet Defendant continues to knowingly communicate this false and extreme defamatory language about OFAC sanctions to a global, unsolicited audience.

[DE 1] ¶59.  As a consequence, the "false and defamatory words" of the OFAC Sanctions Statements are "so extreme as to intrinsically show express malice." *Nodar*, 462 So. 2d at 812; *see also Myers v. Hodges*, 44 So. 357, 365 (Fla. 1907) (holding that a jury may infer express malice from the defamatory statement's language such as including allegations not warranted by the facts or including information beyond what is reasonable). Because Plaintiffs alleged facts establishing Chase's express malice, the Court should reject Chase's arguments ignoring

Plaintiffs' specific allegations of Chase's express malice. [DE 1] ¶¶55, 58-59.

Defendant's reliance on *Jarzynka* is also misplaced. *Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F. Supp. 2d 1256 (S.D. Fla. 2004). There, after the plaintiff threatened to blow up the law school, a university counselor met with the plaintiff, and met with other students about the threats. *Id*. 1259. After meeting with the students, the school physician reported to the school that the plaintiff was the "most volatile and frightening student" that was "decompensating quickly and posed a threat of serious harm." *Id*. The plaintiff argued that the counselor "had reason to know the student's statements were false and recklessly based her own statements upon them." *Id*. at 1263. The Court held that the plaintiff failed to allege facts supporting "an improper motivation" by the university counselor and did not allege that she acted with malice. *Id*. at 1269.

But here, Chase "intentionally commingles" its hidden Interdiction List within its regulated OFAC screening, and issues "the extreme OFAC Sanction Statement," "with the intention to harm those on its Interdiction List, especially against Plaintiffs based on Chase's or its employees bias or animus against them." [DE 1] ¶¶30, 36. Hence, Plaintiffs alleged in detail the "ill will, hostility" and the "evil intention" Chase maliciously acted with to defame Plaintiffs.

In addition, while open to discovery that has not even yet begun, the surrounding circumstances also confirm Chase's express malice. In *Am. Ideal Mgmt., Inc. v. Dale Vill., Inc*., 567 So. 2d at 499–500, the court reversed a summary judgment (much less a ruling on a motion to dismiss) on the defendant's qualified privilege because issues of material fact remained. There, just like Chase's hidden and unsubstantiated reasons for interdicting and defaming Jacob and Sinai, the plaintiff in *Am. Ideal,* 567 So. 2d at 499 also claimed that:

> the reasons given for the termination of the management contract were false and a sham; that the minutes of the board meeting do not reveal any reasons for the firing; [and] that the reasons were manufactured at a later time in order to afford false justification for the termination.

Thus, here, as the Complaint alleges and discovery will confirm, because Chase's supposed proper, fair and good faith reasons for interdicting Jacob and Sinai were false, contrary to standard banking practices, and were a biased sham, Chase acted with express malice. Further, while only "one of the allegations inferred criminal wrongdoing" in *Am. Ideal*, each OFAC Sanctions Statement infers dastardly criminal conduct. *See Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702 (Fla. 3d DCA 1999) ("gist" or "sting" must be decided by jury). Chase's factual assertions about its express malice, at odds with those pled in the Complaint, are empty noise.

### C.  Plaintiffs sufficiently plead a cause of action for Defamation per se.

A defamation plaintiff must allege: "(1) publicity; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

Chase claims that the OFAC Sanctions Statement is not false. Chase's argument appears to admit that Plaintiffs are not subject to any identifiable sanctions, nor, of course, are they being investigated by OFAC. And the "and/or" usage within part of the OFAC Sanctions Statement must be understood while also linking "due to Sanctions" to the fictional subject line: "OFAC Investigation." Taken as a whole, the statement's gist—that the business transfer to Jacob or Sinai was cancelled due to an OFAC investigation and related sanctions, Chase's internal policy, and both—is false. The transactions are never cancelled for anything to do with OFAC, period.

And Chase's OFAC Sanctions Statement is *per se* defamatory. "A libel *per se* is one that is defamatory on its face, including a publication that is susceptible of several meanings, one of which is defamatory; it is actionable without proof of special harm." *Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 582 (5th Cir. 1967). But special harm there is, too. Put aside for the moment the whispering whirlwind of gossip at banks, businesses, and all sorts of community gatherings, or the deep embarrassment of even friends joking about it with Jacob but thinking "why would Chase lie for no reason?" More so, because Chase committed much of its defamation of Plaintiffs also in writing, "the permanency of written defamation" makes the presumed harm more "invariably" suffered. *See* § 5:40. Libel and slander per se, 1 Stein on Personal Injury Damages Treatise § 5:40 (3d ed.).  In sum, Chase defamed Plaintiffs *per se*.

**1. The OFAC Sanctions Statement is "of and concerning" Plaintiffs**

Plaintiffs pled how the OFAC Sanctions Statement is "of and concerning" Plaintiffs. The Complaint alleges what information is included with the OFAC Sanctions Statement allowing the recipients to determine that the statement is about Plaintiffs. [DE 1] ¶¶37, 38, 40.

"The defamed person need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the persons receiving the communications." *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973). The defendant "stated he knew the plaintiff and said 'When I was running Hayden Stone, we invited him [Wolfson] out of the office.'" *Id*. at 776. Even though the statement did not identify the plaintiff by name, the court found that the allegations were sufficient "to indicate that the Plaintiff was intended to be the subject of the defendant's remarks

and was understood to be such by the listeners." *Id.* Here, too, the Complaint sufficiently pled how the OFAC Sanctions Statement is plausibly "of and concerning" Plaintiffs. And discovery will also allow Plaintiffs to further confirm and show that the Statements were about them.

Even if *some* of the OFAC Sanctions Statements do not explicitly name Plaintiffs, the Complaint shows how Chase included information showing that the OFAC Sanctions Statements were about Plaintiffs. "Chase sends the OFAC Sanctions Statement to the person trying to transfer money to the person on its Interdiction List, and in each message Chase references the specific transaction number and the transaction amount and thus identifies the person on its Interdiction List, including Plaintiffs Sinai and [Jacob] Gitman." [DE 1] ¶37. When Chase cancels these transactions it tells "customers, lenders and banks, that they could not execute a transaction with Sinai and/or Jacob 'due to sanctions' concerning an 'OFAC investigation.'" *Id.* ¶39. In sum, "[t]he people receiving these OFAC Sanctions Statements know they are not subject to sanctions, OFAC or otherwise, because the OFAC sanctions list is publicly available and because they never had issues sending or receiving money from anyone else before their transactions to Plaintiffs were cancelled. Thus, the people receiving the OFAC Sanctions Statement understand that the sender or receiver of the funds—i.e., the Plaintiffs—must be the one Chase says it cannot process transactions to because of OFAC sanctions." *Id.* ¶40.

The OFAC Sanctions Statement is distinguishable from the statements in *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251 (S.D. Fla. 2021). In *Mac Isaac*, the statements did not include the plaintiff's name, the plaintiff's business' photo, or, most importantly, other "descriptive information that made Plaintiff's identity readily ascertainable." *Id.* at 1260. Here, the OFAC Sanctions Statement will at times include explicit names, but always includes a specific reference number, the transaction date, and the transaction amount, which in the light most favorable to Plaintiffs, is more than sufficient information for the reader to identify Jacob and Sinai. The Complaint's four corners show the OFAC Sanctions Statement is "of and concerning" Plaintiffs.

### 2. The OFAC Sanctions Statement is false and misleads

As a first matter, Chase does not even try to explain how its reference to an "OFAC Investigation" could be true. That statement alone is defamatory, clearing the dismissal hurdle. Second, Chase claims that "due to Sanctions and/or internal JPMC Policy," is not a false statement because the phrase "and/or" implies that it could be interpreted in three ways, and asks the Court to interpret the statement in a strained way different than the common mind would understand it. Chase ignores that two of three possible meanings are completely false because

Chase did not cancel transactions to Plaintiffs "due to Sanctions" akin to the OFAC subject line.

To be sure, the phrase "and/or," "is one of those inexcusable barbarisms which was sired by indolence and dammed by indifference." *Cochrane v. Florida E. Coast Ry.*, 145 So. 217, 218-19 (Fla. 1932). Using the phrase "and/or" creates an ambiguity in whether the author means the first option, the second option, or both. *Multitech Corp. v. St. Jons Bluff Inv. Corp*, 518 So. 2d 427, 431 (Fla. 1st DCA 1988); "and/or," *Merriam-Webster.com Dictionary* ("used as a function word to indicate that two words or expressions are to be taken together or individually"); *Roc Nation LLC v. HCC Int'l Ins., PLC*, 2021 WL 827957 (S.D.N.Y. Mar. 4, 2021) (internal citations omitted) ("Long since abhorred by the Courts, the use of the term 'and/or' has been referred to as 'the abominable invention' [and] 'as devoid of meaning as it is incapable of classification by the rules of grammar and syntax … when used properly, should mean "x or y or both"). The common mind understands "and/or" as meaning "x or y or both."

Here, the OFAC Sanctions Statements – even without the fantasy OFAC Investigation, which is false and disconnected from the "and/or" discussion – are two-thirds false. At the absolute least, then, by including the word "Sanctions" along with Chase's internal policies as reasons for cancelled wire transactions, Chase implied a defamatory connection between them so that Plaintiffs look to be doing illegal mischief—OFAC investigable and sanctionable mischief, to be sure. If true, this would subject the party doing business with Jacob or Sinai to arrest and forfeiture of the funds. Messaging that will better kill more business relationships is hard to fathom. And whether statements are defamatory by at least implication is a question of law. *Turner*, 879 F.3d at 1269. "The elements of defamation by implication are (1) a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (2) the creation of a defamatory implication by omitting facts." *Klayman v. City Pages*, 650 F. App'x 744, 749 (11th Cir. 2016). "[D]efamation by implication applies in circumstances where literally true statements are conveyed in such a way as to create a false impression." *Id.* at 1108. The defamatory implication is made stronger by Chase omitting that Plaintiffs are not subject to sanctions—even though Chase knows Plaintiffs "were not sanctioned or on any OFAC lists." [DE 1] ¶44.

Last, Chase says "[c]ontrary to the Complaint's allegations," that there are varying levels of sanctions and never shows how a common mind would understand these highly technical extra-Complaint sanctions in connection with the OFAC Sanctions Statements. Nor does Chase address the elephant in the room—whether Plaintiffs are subject to OFAC sanctions, OFAC investigations, or sanctions at all. They are not. This all occurred due to Chase's embedded

biases against Plaintiffs among the many others on its Interdiction List, triggered by Chase employees seeing a since-recanted political blog Chase never corroborated as its own policies demand.  The OFAC Sanctions Statements are plainly defamatory and were used maliciously.

**IV.    Plaintiffs stated an equitable claim for injunctive relief to address the irreparable business harms caused and continuing from Chase's defamatory policy and practice framework.**

As a matter of fair notice and due process, "[i]t is fundamental that a party must first file a complaint or allege a cause of action in a pleading for a temporary injunction before injunctive relief can be granted." *Cadillac Plastic Group v. Barnett Bank of Martin Cnty., N.A.*, 590 So. 2d 1063; *Waterman Broadcasting v. Saro, Inc.,* 555 So. 2d 1273 (Fla. 2d DCA 1989). Although an injunction is an extraordinary remedy particularly in defamation cases, this case lacks First Amendment prior-restraint concerns. Because the OFAC Sanctions Statement is, by design, false every time it is published, there are no concerns a court may have with enjoining speech of a free-flowing and evolving newspaper or similar publisher. *See Pittsburgh Press Co. v. Pittsburgh Comm on Hum. Rels*., 413 U.S. 376, 390, 93 S. Ct. 2553, 2561, 37 L. Ed. 2d 669 (1973) (the US Supreme Court "has never held that all injunctions are impermissible"). For injunctive relief, a plaintiff must allege: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *Levi Strauss. v. Sunrise Int'l Trading*, 51 F.3d 982, 985 (11th Cir. 1995). "An injury is irreparable 'if it cannot be undone through monetary remedies.'" *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010); *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). "[T]he loss of customer and goodwill is an irreparable injury." *Jysk Bed'N Linen v. Dutta-Roy,* 810 F.3d 767, 780 (11th Cir. 2015).

Here, it is undisputed that Plaintiffs are not subject to any OFAC investigations or sanctions. Nor need any injunction be broader than simply precluding Chase from making the OFAC Sanctions Statement to Plaintiffs' banks, business lenders and other business associates. Jacob and Sinai certainly stated a claim for defamation, which continues to collide with and disrupt their business associations, more than enough to support injunctive relief.

Plaintiffs have a substantial likelihood of success on the merits as neither Jacob nor Sinai have ever been investigated or sanctioned by OFAC. Chase impudently disregards this simple truth and "always publish the OFAC Sanctions Statement knowing they are absolutely false." [DE 1] ¶42. Chase's OFAC Sanctions Statement and similar statements to third parties will

continue to cause irreparable harm to Plaintiffs if not enjoined. These statements have harmed
Plaintiffs in their community causing injuries that cannot be quantified by monetary damages
alone, including goodwill injuries. At any time, Chase's policies will automatically trigger the
publishing of the OFAC Sanctions Statement to third parties attempting business transfers to
Plaintiffs, whether Chase is the originating or intermediate SWIFT-registered financial
institution. The threatened injury to Plaintiffs, including extreme mental anguish, humiliation and
anxiety, thus outweighs any purported harm to Chase from changing the statement. Chase's SSU
system allows for easy editing to remove the defamatory language. Lastly, granting an injunction
would not disservice the public interest, as the public have an interest in receiving accurate and
truthful communications from the banking industry. *See, e.g.*, 15 U.S.C. § 1681.

Chase intentionally set itself to defame Plaintiffs on autopilot and continues to do so
while fundamentally disrupting Plaintiffs' business dealings, causing irreparable harm. [DE 17]
at 7-10. As such, Jacob and Sinai pled their right to seek an injunction to stop Chase from
harming and interfering with their business relationships. [DE 1] ¶¶10, 36, 41, 59, 60.
*Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1090 (Fla. 3d DCA 2014); *Mays v. Joe
Taylor Restoration, Inc.*, 344 So. 3d 487, 489 n.3 (Fla. 4th DCA 2022) (affirming holding that
the "limited exception" applied and injunction did not violate First Amendment). Yet Chase,
citing *Chevaldina*, argues that injunctive relief is unavailable to prohibit libelous statements.
Chase ignores the "limited exception" that applies "where the defamatory words are made in the
furtherance of the commission of another intentional tort," such as statements interfering with
business relationships, as is present here. *Id.* Chase will, at any time that it tangentially touches a
transaction with the Plaintiffs, rubber stamp the OFAC Sanctions Statement to yet another
business associate, poisoning yet another business relationship. *Zimmerman v. D.C.A.*, 505 So.
2d 1371, 1376 (Fla. 4th DCA 1987) (delving into and protecting the First Amendment concerns
with an injunction to stop business-disrupting defamation, and affirming that "the activities
enjoined constitute or are incident to conduct which constitutes intentional interference with
potentially advantageous business relationships, and that the rights thus tortuously violated are
entitled to be protected by equitable intervention in the form of a temporary injunction.")

Chase's OFAC Sanctions Statements tortiously interfered with Plaintiffs' business, but
the single action rule stops Plaintiffs from pleading tortious interference at law. Likewise, if
Chase's privilege defense could succeed, Plaintiffs will not have an adequate legal remedy to
redress Chase's harm, either. Thus, the Court's equitable power is unlocked. *Green v. Green*, 16

So. 3d 298, 302 (Fla. 1st DCA 2009) ("Equity delights to do justice and not by halves.")

Lastly, Plaintiffs' injunction motion will seek to restore the *status quo*. If the *status quo* causes one party irreparable harm, a relaxed injunction standard requires the parties to return to the "last uncontested status quo" necessary to prevent the irreparable injury. *See Canal Authority v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). And the equities weigh mightily in favor of injunctive relief. *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1294 (M.D. Fla. 2021). Not only will Chase be free of prejudice when it removes the always false OFAC Sanctions Statement from its internal compliance communications. But Chase will also benefit immeasurably from securing a tourniquet around its hemorrhaging libel-policy framework.

## CONCLUSION

Jacob and Sinai hold independent Due Process rights to vindicate their business and personal reputations against Chase's automatic OFAC onslaught.

The only party in common with *Monarch I* is the defendant, Chase, due to its systemic defamatory structure. And this case raises new issues. Among many other things unique to Chase's defamation of Jacob and Sinai, Chase's campaign of gossip continued even after that other litigation (*Monarch I*) made Chase aware that its bias-enforced policies were causing serious harms, thus further negating any qualified privilege.

Nor are Sinai and Jacob the same parties as Monarch and David. Jacob has his own generation, community and circle of business associates. Sinai did not and cannot control any of Monarch's litigation strategies.  Chase still argues that Monarch and David virtually represented Sinai and Jacob. The Supreme Court, however, rejected "virtual representation" as a basis for preclusion because it does not protect bedrock Due Process concerns at stake.

Jacob and Sinai also pled facts showing that Chase does not have a qualified privilege and anyways had express malice for the OFAC Sanctions Statements. Plaintiffs pleaded specific facts showing how the OFAC Sanctions Statements include information identifying Plaintiffs as the Statement's subject. The Statements are obviously about Plaintiffs. The Statements are also false because Chase never tries to justify how "OFAC Investigation" can be true and because two-thirds of the possible interpretations of "Sanctions" are untrue.

Lastly, Plaintiffs are entitled to seek the equitable protection of an injunction. Injunctions against defamatory statements are proper when directed towards statements that harm a person's business interests, as is the case here, especially because Chase automatically publishes it as false, every time. For all these reasons, the Court should deny Chase's motion to dismiss in total.

**REQUEST FOR HEARING**

Sinai and Jacob respectfully request a hearing to aid in persuasion and help unpack the complicated non-parties' institutional history that Chase cherry-picks at far beyond the four corners of the Complaint.  Plaintiffs estimate 1 hour should be sufficient.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on January 31, 2024, on all parties and counsel of record: Eliot Pedrosa, Esq., epedrosa@jonesday.com, Taylor Cavaliere, Esq., tcavaliere@jonesday.com, Jones Day, 600 Brickell Ave., Suite 3300, Miami, FL, 33131; Anthony J. Dick, Esq., ajdick@jonesday.com, Jones Day, 51 Louisiana Ave., NW Washington, DC, 20001-2113; Anthony J. Clopton, Esq., aclopton@jonesday.com, Jones Day, 150 West Jefferson, Suite 2100 Detroit, MI, 48226-4438.

Dated: January 31, 2024

Respectfully submitted,

STOK KON + BRAVERMAN
*Attorneys for Plaintiffs Sinai and Jacob*
One East Broward Boulevard
Suite 915
Fort Lauderdale, Florida 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email: jkon@stoklaw.com
Secondary: service@stoklaw.com

/s/ *Joshua R. Kon*
JOSHUA R. KON, ESQ.
Florida Bar No. 56147
(jkon@stoklaw.com)
YOSEF KUDAN, ESQ.
Florida Bar No. 1010261
(ykudan@stoklaw.com)
KEVIN S. WOLKENFELD, ESQ.
Florida Bar No. 1029865
(kwolkenfeld@stoklaw.com)