UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:23-cv-62159-WPD

SINAI HOLDINGS, LLC,
and JACOB GITMAN,

    Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.
_____/

## ORDER ON CHASE'S MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase")'s Motion to Dismiss (the "Motion"), filed on December 21, 2023. [DE 19]. The Court has carefully considered the Motion [DE 19], Plaintiffs Sinai Holdings, LLC ("Sinai") and Jacob Gitman (collectively, "Plaintiffs")'s Response [DE 29], Chase's Reply [DE 30], and is otherwise fully advised in the premises.

**I.    BACKGROUND**

On October 29, 2021, Monarch Air Group, LLC ("Monarch") and David Gitman filed an action against Chase. *See Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD ("*Monarch I*").[1] In *Monarch I*, Monarch and David Gitman asserted claims against Chase for defamation and tortious interference arising from alleged defamatory statements made to Monarch's customers and David Gitman's

---

[1] The Court takes judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD.

1

transferees in connection with cancelled wire transactions to Monarch from or through Chase accounts. *See Monarch I*, [DE's 1, 21, 78].

On May 12, 2023, this Court granted summary judgment in favor of Chase and entered a final judgment. *See Monarch I*, [DE's 205, 206]. As to the defamation claims, this Court held that Chase's statements to its account holders regarding why Chase was unable to execute the transactions were qualifiedly privileged, and the plaintiffs failed to offer any evidence Chase acted with express malice, as required to overcome the privilege. *See Monarch I*, [DE 205] at pp. 5–11. This Court also found that the plaintiffs' tortious interference claim was barred by Florida's "single action rule" because it was based on the same underlying facts and communications as the failed defamation claims. *See Monarch I*, [DE 205] at pp. 11–13.

On April 26, 2023, Monarch and David Gitman filed a second lawsuit against Chase ("*Monarch II*"). [2] *See Monarch II*, [DE 1]. On October 6, 2023, the Court dismissed that lawsuit. *See Monarch II*, [DE 17]. In the October 6, 2023 Order, the Court found that the claims in *Monarch II* were "barred by *res judicata* insofar as [those claims] arise[] from the same cancelled wire transactions forming the basis of *Monarch I*," but found that "whether res judicata applies with respect to Plaintiffs claims that Chase has continued to cancel, reject, and/or dishonor wire and ACH transactions" was a closer issue. *See Monarch II*, [DE 17] at pp. 6–7. Nevertheless, because the Court found that the plaintiffs lacked standing for their claims, the Court found dismissal appropriate. *See Monarch II*, [DE 17] at p. 7.

On November 13, 2023, Plaintiffs Sinai and Jacob Gitman (David's father) filed the instant lawsuit against Chase, apparently based on the same allegedly defamatory statement that

---

[2] The Court takes judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 23-cv-60770-WPD.

2

was at issue in *Monarch I*: "We are unable to execute your transaction due to sanctions and/or internal JPMC Policy." *See* [DE 1] at ¶¶ 4, 33.

According to the Complaint: Sinai is a medical services company that owns and operates medical related businesses including clinics, surgical centers, and medical device manufacturers. *Id.* at ¶ 16. Jacob Gitman is Sinai's principal. *Id.* at ¶ 21. Chase is a large national bank that has substantial compliance responsibilities, including the responsibility to ensure that it complies with federal laws and regulations prohibiting it from transferring money to sanctioned individuals, entities, or countries. *Id.* at ¶¶ 22–23.

For years, Chase has rejected, cancelled, and otherwise prevented individuals and businesses from transferring funds via wire and ACH transfer to or from Plaintiffs. *Id.* at ¶ 38. Chase, through written and electronic communications, told these customers, lenders, and banks that it could not execute a transaction with Sinai and/or Gitman "due to sanctions" concerning an "OFAC[3] investigation." *Id.* at ¶ 39. According to Plaintiffs, Chase made the statements knowing that Plaintiffs were not sanctioned or on any OFAC lists. *Id.* at ¶ 44. Plaintiffs allege that Chase's policies require it to falsely state that it cancels transactions "due to sanctions" when the statement is never sent for sanctions cancellations. *Id.* at ¶¶ 6, 36, 57–58. According to Plaintiffs, Chase sets up its system by placing entities and individuals it does not want to do business with, like Plaintiffs, on a blacklist called the Interdiction List. *Id.* at ¶¶ 3–4, 27, 55. Chase allegedly placed Plaintiffs on the Interdiction List because of its bias and animus against them. *Id.* at ¶¶ 36, 55. As a result of the statements, Plaintiffs have suffered reputational and financial damages, including losing access to Sinai's line of credit and the closure of Plaintiffs' bank accounts at other banking institutions. *Id.* at ¶¶ 10, 45–52.

---

[3] OFAC refers to the Office of Foreign Assets Control.

Based upon these allegations, Plaintiffs bring four claims against Chase. In Count I, Plaintiffs allege that Chase defamed them by communicating to third parties that it could not complete transactions to Plaintiffs "due to Sanctions" relating to an "OFAC investigation." *Id.* at ¶¶ 63–68. In Count II, Plaintiffs allege that Chase defamed them by implication "by juxtaposing or conveying incomplete information or omitting facts so as to imply a defamatory connection between Plaintiffs and the OFAC sanctions list, and thereby, falsely implying that Plaintiffs were subject to sanctions and related investigations." *Id.* at ¶¶ 69–74. In Counts III and IV, Plaintiffs seek a preliminary and permanent injunction requiring Chase to "cease employing its policy to publish pre-formed falsities about OFAC sanctions whenever it cancels any transactions it is involved with relating to Plaintiffs." *Id.* at ¶¶ 76, 83.

Chase has now filed a motion to dismiss, seeking dismissal of the Complaint based on the following grounds: (1) issue preclusion and claim preclusion; (2) failure to state a claim; and (3) improper claims for injunctive relief. *See* [DE 19]. For the reasons stated below, the motion is granted in part and denied in part.

**II.    LEGAL STANDARD**

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, "[m]ere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

"In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [] also may be taken into account." *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993), *aff'd*, 84 F.3d 438 (11th Cir. 1996).

### III. DISCUSSION

In its motion to dismiss, Chase seeks dismissal of the Complaint on three primary grounds. First, Chase argues that Plaintiffs' claims are precluded because they seek to relitigate the same issues the Court already resolved in *Monarch I*. Second, Chase contends that Plaintiffs' defamation claims should be dismissed because the alleged statements forming the basis of those claims are neither about Plaintiffs nor false, and because Plaintiffs cannot plead around the qualified privilege issue that was dispositive in *Monarch I*. Finally, Chase argues that the claims for injunctive relief must be dismissed as improper. The Court discusses each argument, in turn.

#### A. Whether Plaintiffs' Claims are Barred by Claim Preclusion or Issue Preclusion

First, Chase argues that Plaintiffs' claims are precluded under both issue preclusion and claim preclusion because they seek to relitigate the same issue of qualified privilege that the Court already resolved in *Monarch I*.

5

The doctrine of res judicata precludes re-litigation of issues in a later action that were or could have been raised in a previous action in which a final judgment on the merits has been issued. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, n.6 (1982); *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Allen v. McCurry*, 449 U.S. 90 (1980); *Baptiste v. Commission of Internal Revenue*, 29 F.3d 1533, 1539 (11th Cir. 1994). Res judicata is intended to release parties from the cost and vexation of multiple lawsuits, prevent inconsistent decisions concerning the same claims, and encourage reliance on previously adjudicated claims. *Allen*, 449 U.S. at 93; *Parkland Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). "Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). "While claim preclusion bars 'repetitious suits involving the *same cause of action*,' issue preclusion precludes the re-adjudication of the *same issue,* where the issue was actually litigated and decided in the previous adjudication, even if it arises in the context of a different cause of action[.]" *Id.* at 1263–64 (internal citations omitted).

"For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation omitted); *see also CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1337 (11th Cir. 2017) ("[F]ederal common law adopts the state rule of collateral estoppel to determine the preclusive effect of an earlier judgment of a federal court that exercised diversity jurisdiction."). Thus, because this Court exercised diversity jurisdiction in rendering its judgment in *Monarch I*, Florida law applies.

Under Florida law, issue preclusion, or collateral estoppel, applies where: "(1) the identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part

of the prior determination; (3) there was a full and fair opportunity to litigate the issue; (4) the parties to the prior action were identical to parties of the current proceeding; and (5) the issue was actually litigated." *Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015) (citing *Cook v. State*, 921 So. 2d 631, 634 (Fla. 2d DCA 2005)). Claim preclusion, or res judicata, applies where there is: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made." *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004).

Florida courts "have not strictly adhered to the identity of parties requirement in all cases when invoking the doctrines of res judicata and collateral estoppel." *West v. Kawasaki Motors Mfg. Corp., U.S.A.*, 595 So. 2d 92, 94 (Fla. 3d DCA 1992); *see also Stockton v. Lansiquot*, 838 F.2d 1545, 1546 (11th Cir. 1988) (noting that "it is not necessary there be an exact identity of parties"). The term "'parties' has been broadly interpreted to include more than just record parties," and may include those in privity with the original parties. *West*, 595 So. 2d at 94.  To be in privity with a party to an earlier lawsuit, "one must have an interest in the action such that she will be bound by the final judgment as if she were a party." *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d DCA 2017); *see also Stogniew v. McQueen*, 656 So.2d 917, 920 (Fla. 1995) (applying the same test in the context of collateral estoppel).

Here, Chase argues that the "identity of parties" element is satisfied because, though Plaintiffs are not identical to the plaintiffs in *Monarch I*, they are in privity with each other. In support, Chase contends that Jacob, Sinai's principal, is the father of David Gitman, a plaintiff in *Monarch I*. Chase also relies on allegations from public court filings in which Jacob Gitman describes himself as "a minority shareholder of" and "affiliated with" Monarch, the other plaintiff in *Monarch I*. [DE 19-1] at ¶ 9; [DE 19-2] at ¶ 14; [DE 19-3] at ¶ 9. Chase further adds

7

that public corporate records show Jacob Gitman was a managing member of Monarch from 2008 to 2013. When combined with the fact that Jacob Gitman and Monarch are currently co-plaintiffs in at least two other pending actions and have shared the same counsel, including the counsel in this action, Chase concludes that it has established privity.

The Court finds Chase's arguments unpersuasive. Claim preclusion and issue preclusion "are affirmative defenses that typically should be raised pursuant to Federal Rule of Civil Procedure 8(c) rather than in a motion to dismiss under Rule 12(b)(6)." *United States Golf Learning Inst., LLC v. Club Managers Ass'n of Am.*, No. 8:11-CV-2184-T-33EAJ, 2012 WL 768201, at *3 (M.D. Fla. Mar. 9, 2012) (internal citations omitted). However, claim preclusion and issue preclusion "may be raised on a motion to dismiss when the elements are apparent on the face of the pleadings and public documents of which the court may take judicial notice." *Id.* The Complaint here makes no reference to the plaintiffs in *Monarch I* or their relationship to Plaintiffs in this action. Moreover, while the Court may take judicial notice of the public records Chase attaches to its motion to dismiss, these records provide insufficient facts and evidence for the Court to determine whether Plaintiffs in this action are in privity with the plaintiffs in *Monarch I*. *See, e.g., Candelario v. La Libertad Mkt. Cafeteria Inc.*, No. 21-23141-CIV, 2022 WL 2341163, at *3 (S.D. Fla. Mar. 14, 2022) (declining to dismiss claims on grounds of *res judicata* because"[a] determination of privity should be made on a more complete factual record."); *CSX Transp.*, 846 F.3d at 1340 (noting that privity is a "factual question"); *Tim Minn, Inc. v. Tim Hortons USA Inc.*, No. 20-23481-CIV, 2021 WL 4482733, at *7 (S.D. Fla. Aug. 2, 2021), *report and recommendation adopted,* No. 20-CV-23481, 2021 WL 4480281 (S.D. Fla. Sept. 30, 2021) (determining privity requires an inquiry which "is hardly the factual analysis that motions to dismiss are designed to do"). Because the existence of privity is not apparent from the

face of the Complaint and should be made on a more complete factual record, the Court declines to dismiss this action based on claim preclusion or issue preclusion. *See E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) ("If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata or collateral estoppel applies."). Accordingly, Chase's claim preclusion and issue preclusion arguments fail, at least at this stage in the proceedings.

### B. Whether Plaintiffs Fail to State their Defamation Claims

Next, Chase argues that, even if not precluded, the Complaint fails to state defamation claims (Counts I and II) because the alleged statements are qualifiedly privileged under the analysis in *Monarch I* and because the statements are neither about Plaintiffs nor false.

### i. Qualified Privilege Defense

First, Chase contends that the Complaint makes clear that the qualified privilege analysis in *Monarch I* applies here. Under Florida law, "[a] communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable." *See Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984). "The essential elements of qualified privilege are: (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1264 (S.D. Fla. 2004) (citing *Thomas v. Tampa Bay Downs*, Inc., 761 So.2d 401, 404 (Fla. 2d DCA 2000)). Because qualified privilege is a defense to Plaintiffs' claims, it would be appropriate to dismiss only if the

9

defense appears on the face of the complaint. *Okpala v. Drew*, 248 F. App'x 72, 73 (11th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

Here, Chase argues that Plaintiffs fail to plead around the qualified privilege issue that was dispositive in *Monarch I*. But the qualified privilege issue in *Monarch I* was resolved at summary judgment because "the undisputed evidence establishe[d] that the statements made by Chase to [Monarch and David Gitman]'s customers were qualifiedly privilege[d]," and the plaintiffs "entirely faile[d] to provide evidence from which a reasonable juror could infer that Chase acted with express malice," as required to overcome the privilege. *See Monarch I*, [DE 205] at pp. 7–11. By contrast, the action here is at the pleading stage, discovery has yet to commence, and Plaintiffs have pled that "Chase structured its departments and directed the SSU to defame those on its Interdiction List expressly to cause them harm, including against Plaintiffs because of Chase's bias and animus against them for perceived reasons." *See* [DE 1] at ¶ 55; *see also id.* at ¶ 36. Though somewhat vague and conclusory, taking these facts as true and drawing all reasonable inferences in favor of Plaintiffs, the Court cannot say that Plaintiffs have failed to plead express malice. *See, e.g., Lozada v. Hobby Lobby Stores, Inc.*, 702 F. App'x 904, 911 (11th Cir. 2017) ("A defendant acts with express malice in making defamatory statements when his 'primary motive in making the statements [is] the intent to injure the reputation of the plaintiff.'") (internal citation omitted); *Nodar*, 462 So. 2d at 811, n.8 ("[T]he gravamen of express malice is the abuse of a privileged occasion by improper motives on the part of the speaker.").

Finally, the Court notes that while the determination of whether a statement is privileged is a question of law decided by the Court, the Court can only make such a determination if "the circumstances surrounding a [] communication are *undisputed or* [] *so clear under the evidence*

10

*as to be unquestionable.*" *See id.* at 810 (emphasis added). At this juncture, it is unknown whether the evidence before the Court here will be substantially the same as the evidence before the Court in *Monarch I*. Though Chase may ultimately prevail on the qualified privilege defense for the same reasons it prevailed on that defense in *Monarch I*, the Court finds dismissal at this stage premature.[4] The Court therefore denies the motion to dismiss on qualified privilege grounds without prejudice to Chase renewing the issue at summary judgment or trial.

    ii.    "Of and Concerning" Plaintiffs and Falsity

Second, Chase argues that the Complaint fails on two required elements of a defamation claim. Under Florida law, the elements of a cause of action for defamation are: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  Additionally, a cause of action for defamation requires the defamatory statement or implication be "of and concerning" the plaintiff. *See Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997). Chase argues that the defamation claims fail because the alleged statements, which state "[w]e are unable to execute your transaction due to sanctions and/or internal JPMC Policy," are neither about Plaintiffs nor false.

In Florida, there is no strict requirement that an allegedly defamed person be named in a publication for the statement to be actionable. *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973). However, it is well established that "the communication as a whole [must] contain[] sufficient facts or references from which the injured person may be determined by the persons receiving the communication." *Id.* (citing *O'Neal v. Trib. Co.*, 176 So. 2d 535, 548 (Fla. 2d DCA

---

[4] In proceeding with this litigation, however, the Court cautions Plaintiffs against relying on legal theories the Court rejected and evidence the Court found insufficient in *Monarch I*.

11

1965)). The relevant inquiry is whether "the average person upon reading [the] statements could reasonably have concluded that the plaintiff [] was implicated[.]" *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 389 (Fla. 3d DCA 1982), *aff'd*, 458 So. 2d 239 (Fla. 1984).

Here, the Complaint alleges that the statements are about Plaintiffs because "in each message Chase references the specific transaction number and the transaction amount and thus identifies the person its Interdiction List, including Plaintiffs Sinai and Gitman." [DE 1] at ¶ 37. Chase argues that the statements are about the transactions, not Plaintiffs, and the statements do not make clear who or what is responsible for Chase's inability to execute the transactions. However, in determining whether an allegedly defamatory statement is actionable, the Court must examine it "in its totality in the context in which it was uttered or published." *Smith v. Taylor Cnty. Pub. Co.*, 443 So. 2d 1042, 1047 (Fla. 1st DCA 1983). "[T]he [C]ourt must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." *Id.* Therefore, while Defendant is correct that the cited statement explicitly refers to the "transaction," not Plaintiffs, when considering the context alleged in the Complaint—a statement allegedly sent to Chase customers in connection with blocked transactions to or from Plaintiffs—and drawing all reasonable inferences in favor of Plaintiffs, it is reasonable to conclude the statement is about Plaintiffs.

Regarding falsity, a false statement of fact is the *sine qua non* for recovery in a defamation action." *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983)) (internal quotation marks omitted). Falsity exists only if "the publication is substantially and

materially false, not just if it is technically false." *Smith v. Cuban American Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999).

Here, Chase argues that the statement that the transactions were cancelled "due to sanctions and/or Internal JPMC Policy" is true because Plaintiffs concede in the Complaint that "Chase only ever sends the [statement] when it cancels a transaction for compliance reasons …." *See* [DE 1] at ¶¶ 4, 33, 35. However, the use of the phrase "and/or" makes it ambiguous as to whether the transactions were cancelled due to sanctions, internal policy, or both. *Multitech Corp. v. St. Johns Bluff Inv. Corp.*, 518 So. 2d 427, 431 (Fla. 1st DCA 1988); "*and/or*," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/and%2For (last accessed Dec. 19, 2022) ("used as a function word to indicate that two words or expressions are to be taken together or individually"). "It is a well-established principle of law that where allegedly defamatory statements are open to multiple interpretations," one of which is defamatory, "the issue of whether a statement is defamatory and true is one for the trier of fact and dismissal is not appropriate[.]" *Morrison v. Univ. of Miami*, No. 1:15-CV-23856-UU, 2016 WL 3129490, at *9 (S.D. Fla. Jan. 20, 2016) (citing *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 389 (Fla. 3d DCA 1982)); *see also Johnson v. Clark*, No. 203CV490FTM33SPC, 2005 WL 1632083, at *2 (M.D. Fla. July 6, 2005) ("While the determination of whether an unambiguous statement is defamatory is a question of law, the interpretation of ambiguous phrases is a question of fact . . ..") (citing *Daniels v. Patterson*, 751 So. 2d 68 (Fla. 1st DCA 2000)).

Moreover, even if the Court were to accept Chase's argument that the use of "and/or" renders Chase's statement unambiguously true, construing all facts and all reasonable inferences in a light most favorable to Plaintiffs, the Court finds that Chase's statements at best create a false impression about Plaintiffs' cancelled transactions. *See Jews For Jesus*, 997 So. 2d at 1108

("[D]efamation by implication applies in circumstances where literally true statements are conveyed in such a way as to create a false impression ...."). Chase's remaining arguments regarding the meaning and scope of the word "sanctions" are more appropriately addressed at summary judgment or trial. Accordingly, Chase's request to dismiss Plaintiffs' defamation claims is denied.

### C. Whether Plaintiffs' Injunctive Relief Claims are Improper

Finally, Chase argues that Plaintiffs' injunctive relief claims must be dismissed as improper. Though included as separate "counts," Counts III and IV seek only injunctive relief arising from the defamation claims in Counts I and II.

Under Florida law, it is well-settled that injunctive relief is ordinarily not available for claims of defamation. *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1270 (S.D. Fla. 2013); *Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So.3d 1086, 1090 (Fla. 3d DCA 2014) ("Injunctive relief is not available to prohibit the making of defamatory or libelous statements."). A limited exception exists where "the defamatory statements are made in the furtherance of the commission of another intentional tort." *Curvey v. Avante Grp., Inc.*, 327 So. 3d 401, 403 (Fla. 5th DCA 2021); *Chevaldina*, 133 So. 3d at 1090. Plaintiffs argue that this limited exception applies here, but only assert claims for defamation. Therefore, unlike the case cited by Plaintiffs, there is no intentional tort claim that could support the issuance of the injunctive relief Plaintiffs seek. *Compare Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So.2d 1371, 1373 (Fla. 4th DCA 1987). Accordingly, Chase's motion to dismiss Counts III and IV is granted.[5] *See, e.g., Curvey*, 327 So. 3d at 404 (finding injunction improper where the plaintiff "only asserted a claim for defamation per se").

---

[5] If Plaintiffs attempt to seek injunctive relief in any future amended complaint, Plaintiffs should not plead that relief as a separate cause of action. *See, e.g., Exum v. Nat'l Tire & Battery*, 437 F. Supp. 3d 1141, 1158 (S.D. Fla. 2020); *Rubinstein v. Keshet Inter Vivos Trust*, No, 17-61019, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018) (noting

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Chase's Motion [DE 19] is **GRANTED IN PART AND DENIED IN PART**.

2. Counts III and IV are **DISMISSED**.

3. Chase shall respond to the claims not dismissed by this Order within fourteen (14) days of the date of this Order.

4. Plaintiffs' Request for Hearing, *see* [DE 29] at p. 21, is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 29th day of April 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
All Counsel of Record

---

that "there are an abundance of cases establishing that injunctive relief 'is a remedy, not a separate cause of action'").