UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:23-cv-62159-WPD

SINAI HOLDINGS, LLC,
and JACOB GITMAN,

    Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.
_____/

**ORDER ON CHASE'S MOTION TO DISMISS**

THIS CAUSE is before the Court on Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase")'s Motion to Dismiss in Part the Amended Complaint and Incorporated Memorandum of Law (the "Motion"), filed on August 21, 2024. [DE 50]. The Court has carefully considered the Motion [DE 50], Plaintiffs Sinai Holdings, LLC ("Sinai") and Jacob Gitman (collectively, "Plaintiffs")'s Response [DE 53], Chase's Reply [DE 57], and is otherwise fully advised in the premises.

**I.    BACKGROUND**

On October 29, 2021, Monarch Air Group, LLC ("Monarch") and David Gitman filed an action against Chase. *See Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD ("*Monarch I*").[1] In *Monarch I*, Monarch and David Gitman asserted claims against Chase for defamation and tortious interference arising from alleged

---

[1] The Court takes judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD.

1

defamatory statements made to Monarch's customers and David Gitman's transferees in connection with cancelled wire transactions to Monarch from or through Chase accounts. *See Monarch I*, [DE's 1, 21, 78].

On May 12, 2023, this Court granted summary judgment in favor of Chase and entered a final judgment. *See Monarch I*, [DE's 205, 206]. As to the defamation claims, this Court held that Chase's statements to its account holders regarding why Chase was unable to execute the transactions were qualifiedly privileged, and the plaintiffs failed to offer any evidence Chase acted with express malice, as required to overcome the privilege. *See Monarch I*, [DE 205] at pp. 5–11. This Court also found that the plaintiffs' tortious interference claim was barred by Florida's "single action rule" because it was based on the same underlying facts and communications as the failed defamation claims. *See Monarch I*, [DE 205] at pp. 11–13.

On April 26, 2023, Monarch and David Gitman filed a second lawsuit against Chase ("*Monarch II*").[2] *See Monarch II*, [DE 1]. On October 6, 2023, the Court dismissed that lawsuit. *See Monarch II*, [DE 17]. In the October 6, 2023 Order, the Court found that the claims in *Monarch II* were "barred by *res judicata* insofar as [those claims] arise[] from the same cancelled wire transactions forming the basis of *Monarch I*," but found that "whether res judicata applies with respect to Plaintiffs claims that Chase has continued to cancel, reject, and/or dishonor wire and ACH transactions" was a closer issue. *See Monarch II*, [DE 17] at pp. 6–7. Nevertheless, because the Court found that the plaintiffs lacked standing for their claims, the Court found dismissal appropriate. *See Monarch II*, [DE 17] at p. 7.

On November 13, 2023, Plaintiffs Sinai and Jacob Gitman (David's father) filed the instant lawsuit against Chase, apparently based on the same allegedly defamatory statement that was at

---

[2] The Court takes judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 23-cv-60770-WPD.

2

issue in *Monarch I*: "We are unable to execute your transaction due to sanctions and/or internal JPMC Policy." *See* [DE 1] at ¶¶ 4, 33.

On December 21, 2024, Defendant JP Morgan Chase Bank, N.A. ("Chase") filed a Motion to Dismiss the Complaint. [DE 19]. On April 29, 2024, this Court granted the Motion in part, dismissing Counts III (Preliminary Injunction) and IV (Permanent Injunction). [DE 32] The Court found that it is "well settled that injunctive relief is ordinarily not available for claims of defamation." *Id.* However, the Court rejected Defendant's argument that Plaintiff's claims are barred by Claim Preclusion or Issue Preclusion. *Id.* The Court also rejected Defendant's qualified privilege defense at this stage without prejudice to renew at summary judgment or trial. *Id.* The Court further rejected Defendant's argument that Plaintiffs failed to state defamation claims, stating that the Complaint sufficiently alleged that the statements are "of and concerning" Plaintiffs, and that the issue of falsity is best determined at summary judgment or trial. *Id.*

On July 22, 2024, Plaintiff filed an Amended Complaint against Chase. [DE 44]. On August 21, 2024, Defendant filed a Motion to Dismiss the Amended Complaint. [DE 50]. According to the Amended Complaint: Sinai is a medical services company that owns and operates medical related businesses including clinics, surgical centers, and medical device manufacturers. [DE 44] ¶ 17. Jacob Gitman is Sinai's principal. *Id.* at ¶ 22. Chase is a large national bank that has substantial compliance responsibilities, including the responsibility to ensure that it complies with federal laws and regulations prohibiting it from transferring money to sanctioned individuals, entities, or countries. *Id.* at ¶¶ 26–27. For years, Chase has rejected, cancelled, and otherwise prevented individuals and businesses from transferring funds via wire and ACH transfer to or from Plaintiffs. *Id.* at ¶ 45. Chase, through written and electronic communications, told these customers, lenders, and banks that it could not execute a transaction with Sinai and/or Gitman "due to

3

sanctions" concerning an "OFAC[3] investigation." *Id.* at ¶ 46. According to Plaintiffs, Chase made the statements knowing that Plaintiffs were not sanctioned or on any OFAC lists. *Id.* at ¶¶ 47, 51. Plaintiffs allege that Chase's policies require it to falsely state that it cancels transactions "due to sanctions" when the statement is never sent for sanctions cancellations. *Id.* at ¶¶ 65–66, 72. According to Plaintiffs, Chase sets up its system by placing entities and individuals it does not want to do business with, like Plaintiffs, on a blacklist called the Interdiction List. *Id.* at ¶¶ 4–5, 30. Chase allegedly placed Plaintiffs on the Interdiction List because of its bias and animus against them. *Id.* at ¶¶ 43, 63. As a result of the statements, Plaintiffs have suffered reputational and financial damages, including losing access to Sinai's line of credit and the closure of Plaintiffs' bank accounts at other banking institutions. *Id.* at ¶¶ 10, 52–60.

Based upon these allegations, Plaintiffs bring four claims against Chase. In Count I, Plaintiffs allege that Chase libelously defamed them by communicating to third parties that it could not complete transactions to Plaintiffs "due to Sanctions" relating to an "OFAC investigation." *Id.* at ¶¶ 71–76. In Count II, Plaintiffs allege that Chase slanderously defamed them by making false oral statements about Plaintiffs to third parties by falsely stating that Plaintiffs are subject to an "OFAC investigation" along with other false allegations of criminal activity. In Count III, Plaintiffs bring a new claim for Defamation by Implication (Libel), alleging that "Chase published information about Plaintiffs to its customers, business associates, lenders, and banks, as stated in the general allegations by juxtaposing or conveying incomplete information or omitting facts so as to imply a defamatory connection between Plaintiffs and the OFAC sanctions list, and thereby, falsely implying that Plaintiffs were subject to sanctions and related investigations." *Id.* at ¶ 84. In Count IV, Plaintiffs bring a claim for defamation by implication (slander) alleging that Chase made

---

[3] OFAC refers to the Office of Foreign Assets Control.

4

orally false statements falsely implying that Plaintiffs were subject to sanctions and related investigations. *Id.* at ¶ 91–92. In Count V, Plaintiffs bring a claim tortious interference with a business relationship, alleging that Plaintiffs had advantageous business relationships, that Chase knew of those relationships, and that Chase intentionally and unjustifiably interfered with those relationships by cancelling transactions involving Plaintiffs and communicating with those third parties that it cancelled their business transactions with Plaintiffs "due to sanctions" regarding an "OFAC investigation." *Id.* at ¶ 96–100. In Count VI, Plaintiffs bring a claim for Declaratory Judgment under 28 U.S.C. § 2201 seeking a declaration regarding the illegality of Chase's past statements and Chase's claimed right to continue making the OFAC Sanctions Statements.

Defendant filed a motion to dismiss in part, seeking dismissal of several of the counts in the Amended Complaint based on the following grounds: (1) the Amended Complaint fails to state a tortious interference claim; (2) the Amended Complaint fails to state a declaratory judgment claim; and (3) the Amended Complaint fails to state a slander claim.

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, "[m]ere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,

and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). "In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [] also may be taken into account." *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993), *aff'd*, 84 F.3d 438 (11th Cir. 1996).

### III. DISCUSSION

Defendant argues that the Amended Complaint (1) fails to state a tortious interference claim (Count V); (2) fails to state a declaratory judgment claim (Count VI); and (3) fails to state a slander claim (Counts II and IV). The Court addresses each of these arguments, in turn.

**A. Whether the Amended Complaint fails to state a Tortious Interference Claim**

Chase argues that Plaintiff's tortious interference claim should be dismissed because that claim is barred by the "single action rule," which prohibits "multiple actions when they arise from the same publication upon which a failed defamation claim is based." *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.,* 831 So. 2d 204, 208 (Fla. 4th DCA 2002). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 13 (Fla. 1st DCA 2006) (internal quotation marks and citation omitted). In *Monarch I* this Court agreed with Defendant on summary judgment that the single action rule barred the tortious interference claim where the Court found that the defamation claim failed because Chase's statements were qualifiedly privileged. *See Monarch Air*

*Grp., LLC v. JPMorgan Chase Bank, N.A.*, No. 21-62429-CIV, 2023 WL 4363816, at *6 (S.D. Fla. May 12, 2023), (citing *Callaway*, 831 So. 2d at 208 ("[I]f the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply.") (citations omitted).

Not so here. The single action rule bars additional claims based on the same allegedly defamatory statements that have *already failed*. In this case, unlike in *Monarch I*, the Court has made no determination as to whether Plaintiffs defamation claims fail. While the Court has already declined to dismiss Plaintiffs' defamation claims, the Court has made no determination as to the the defamation claims on the merits. *See* [DE 32]. Therefore, the single action rule does not bar Plaintiffs' tortious interference claims.

Defendant argues in the alternative that Plaintiffs' tortious interference claim nonetheless fails because Plaintiffs have not alleged the elements of the claim with sufficient specificity. To state a claim for tortious interference, a plaintiff must allege (1) "the existence of a business relationship"; (2) "knowledge of the relationship on the part of the defendant"; (3) "an intentional and unjustified interference with the relationship by the defendant"; and (4) "damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

Defendant argues that Plaintiffs have not identified any specific examples of "customers, suppliers, lenders, banks, and other business associates" with whom Plaintiffs have allegedly had advantageous business relationship. To meet the first prong of an intentional interference claim—alleging the existence of a business relationship—the plaintiff "must prove a business relationship with identifiable customers." *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.,* 687 So.2d 821 (Fla.1996). "[N]o cause of action exists for tortious interference with a business's relationship to

the community at large." *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 815 (Fla.1994). Defendant argues that Plaintiffs have not met their burden of alleging identifiable relationships.

The Court disagrees. First, Plaintiffs have identified at least three examples of business relationships that were impacted by Chase's actions. Plaintiffs have alleged that Bank of America, Regions Bank, and TD Bank have all closed Plaintiffs bank accounts because of Chase's alleged defamation. *See* [DE 44] ¶ 58. Moreover, Plaintiffs' complaint is unlike the generalized claims made in *Hill*, in which plaintiff's tortious interference claim failed because plaintiff alleged only that it "'sells, and has sold, TOLAK to consumers in this State and throughout the United States' and that Anthem has interfered with these consumers' abilities to purchase Tolak" *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1301 (M.D. Fla. 2017). Here, Plaintiffs allege that Defendant interfered with specific business relationships that attempted to transact with Plaintiffs through Chase, only to be told that Plaintiffs account was frozen due to sanctions. Unlike in *Hill*, in which plaintiff alleged only a relationship with the "consuming public at large," Plaintiffs allegations here pertain to a quantifiable number of transactions that were not completed, allegedly because of Defendant's actions. *Id.* Accordingly, for the purpose of the motion to dismiss, Plaintiffs sufficiently state the first prong.

Defendant next argues that Plaintiffs have not alleged any facts to show an intentional interference with those relationships. Under the third prong, Defendant argues that "there is no such thing as a cause of action for interference with a contractual or advantageous business relationship which is only consequentially effected," *Fla. Power & Light Co. v. Fleitas*, 488 So. 2d 148, 151 (Fla. 3d DCA 1986). Accordingly, Defendant argues that "Plaintiffs allege vague harms, but provide no facts to support any inference of intent."

The Court disagrees. At this stage, the Court finds that Plaintiffs have sufficiently alleged that Defendant Chase acted to intentionally interfere with Plaintiffs business relationships when it cancelled Plaintiffs' transaction "due to sanctions." Plaintiffs have alleged more than those allegations that were found insufficient in *First Title America*. In *First Title America*, Plaintiff alleged "only that Truist Bank intentionally froze its accounts" and not that that "Truist Bank intentionally damaged a business relationship." No. 1:20-CV-21787-UU, 2020 WL 13042833, at *3 (S.D. Fla. 2020). But here, Plaintiffs allege that Chase maintains its Interdiction List with those it does not want to do business with, that Chase cancels all money transfers to those on the list, that Chase only ever sends the defamatory statement when sanctions are not at issue, that Chase set up its departments to do so, that Chase is aware that it is causing harm, that Chase published its defamatory statements to Plaintiffs' business associates and financial institutions, and that Chase set up its system to abuse those on its Interdiction List. [DE 44] ¶¶ 4-5, 7, 9-10, 30, 39-40, 43, 63, 99. Based on the allegations and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that these allegations reasonably amount to an inference that Chase acted intentionally to interfere with Plaintiffs business relationships. Accordingly, Defendants motion to dismiss as to **COUNT V** is hereby **DENIED**.

### b. Whether the Amended Complaint Fails to State a Declaratory Judgment Claim

Plaintiffs' Amended Complaint pleads a count for declaratory judgment under 28 U.S.C. § 2201. Plaintiffs seek a declaration of Plaintiff's "rights regarding Chase's past statements and Chase's claimed right to continue making the OFAC Sanctions Statements." [DE 44]. The Declaratory Judgment Act (the "Act") states,

> "In a case of actual controversy within its jurisdiction. . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether further

>  relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C. § 2201. Accordingly, the Act "is an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant," *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Defendant argues that Plaintiff's Declaratory Judgment Act claim should be dismissed because "[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1363344, at *1 (S.D. Fla. 2017) (citations omitted).

The Court disagrees. At this motion to dismiss stage, the Court does not find that Defendant will necessarily be able to secure "full, adequate and complete relief" through relief sought in other counts, such that Plaintiffs' claim for declaratory judgment should be dismissed as duplicative. *Id.* Moreover, this case is unlike that of *Ministerio*, as Chase claims. In *Ministerio*, the parties requested a declaration "with respect to the losses, costs or expenses incurred as a result of the subject loss." *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, No. 16-25313-CIV, 2017 WL 1363344, at *2 (S.D. Fla. 2017). The court accordingly found that "Ministerio is effectively seeking a judgment concerning the amount of damages—relief already fully accessible to Ministerio under its breach of contract claim" *Id.* Not so here. Plaintiffs' declaratory judgment claim does not seek relief that is duplicative of relief already available to it in other claims. Instead, Plaintiffs seek a judgment declaring Chase's past and present statements defamatory. None of the other claims request this type of relief, instead, either requesting monetary relief (as in the defamation claims) or injunctive relief (as in the tortious interference claim). Accordingly, the Declaratory Judgment Act claim is not duplicative of existing claims.

Furthermore, Chase's assertion that "Section 2202 does not provide a basis to support an independent cause of action under the Declaratory Judgment Act" is misplaced. First, Plaintiffs do not assert an independent cause of action under Section 2202[4] but instead, under Section 2201. *See* [DE 44] ¶ 102. Second, the Declaratory Judgment Act Section 2201 does provide the basis for an independent claim. *See e.g.*, *Ameritas*, 411 F.3d at 1330 (providing a list of factors used to determine whether district courts should exercise their discretion over a "declaratory judgment action" under the Declaratory Judgment Act where there is a parallel state action); *New Mkt. Realty 1L LLC v. Great Lakes Ins. SE*, 341 F.R.D. 322, 327 (M.D. Fla. 2022) (finding a Counterclaim for declaratory relief was an actual controversy appropriate for judicial resolution under the Declaratory Judgment Act).

Defendant further argues for dismissal of the declaratory judgment claim because this Court, in its April 29, 2024, Order, stated: "[i]f Plaintiffs attempt to seek injunctive relief in any future amended complaint, Plaintiffs should not plead that relief as a separate cause of action." *See* [DE 32]. Defendant argues that that the declaratory judgment claim effectively seeks injunctive relief because it asks for a declaration to "deal with the future." However, as Defendant agrees, a Declaratory Judgment claim under the Declaratory Judgment Act is not itself a request injunctive relief. It is a *predicate* for injunctive relief. *See Powell v. McCormack*, 395 U.S. 486, 499 (1969) (citations omitted) ("A declaratory judgment can [] be used as a predicate to further relief, including an injunction."). It is true that "there are an abundance of cases establishing that injunctive relief 'is a remedy, not a separate cause of action." *Rubinstein v. Keshet Inter Vivos*

---

[4] "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

*Trust,* No, 17-61019, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018) (citations omitted). But as stated above, a Declaratory Judgment Act claim is different and may be pled as a separate claim.

Defendant finally argues that because Plaintiff only seeks injunctive relief, but insufficiently pleads that it is entitled to injunctive relief, the whole claim therefore fails. The Eleventh Circuit has stated that "[E]quitable relief is only available where there is no adequate remedy at law." *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1382 (11th Cir. 2023). Plaintiff states, "Chase has continued to assert that its statements are privileged notwithstanding its knowledge that it is always falsely stating that transactions to Plaintiffs are cancelled because of an 'OFAC investigation' and 'due to sanctions.'" [DE 44] ¶ 106. Plaintiff therefore seeks injunctive relief under its Declaratory Judgment Act claim to prevent Defendant from continuing to make these statements. At this stage, Court disagrees that money damages would necessarily be "adequate" such that dismissal of this claim is warranted.

For the above reasons, Defendant's Motion to Dismiss as to **COUNT VI** is hereby **DENIED**.

**c. Whether the Amended Complaint Fails to State a Claim for Slander**

Defendant argues that Plaintiff's slander claims should be dismissed because the amended complaint does not allege basic elements required to state a claim for slander such as what words were spoken, when they were spoken, who spoke them, and who heard them. As such, Defendant argues that Plaintiff's pleadings fail to put Defendant on notice of what they are being sued for, and hence fail to meet 8(a) and *Twombly* pleading standards. The Court disagrees.

"To establish a cause of action for defamation, a plaintiff must show that (1) the defendant published a false statement about the plaintiff, (2) to a third party, and (3) the falsity of the statement caused injury to the plaintiff." *Razner v. Wellington Reg'l Med. Ctr., Inc.*, 837 So. 2d

437, 442 (Fla. 4th DCA 2002) "When bringing a cause of action for defamation based on oral statements, a plaintiff need not set out the defamatory language verbatim; it is sufficient that the plaintiff set out the substance of the spoken words with sufficient particularity to enable the *court* to determine whether the publication was defamatory." *Id.* (citing *Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*, 413 So. 2d 51, 55 (Fla. 3d DCA 1982) (emphasis added).

Defendant cites to *Fowler v. Taco Viva* for the proposition that a viable claim for slander requires a pleading with greater specificity and must allege the "identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred" 646 F. Supp. 152, 157–58 (S.D. Fla. 1986) (citing *Hawke v. Broward National Bank of Fort Lauderdale*, 220 So.2d 678 (Fla. 4th DCA 1969) ("We [] agree that the plaintiffs have failed to state a cause of action in libel and slander in not alleging the disputed words used; in not stating what crime was alleged to have been committed; in not alleging that the publication or utterances were false and in failing to allege sufficient circumstances to show malice in order to negate the presence of a qualified privilege."). Plaintiff responds that the correct standard for stating a claim for slander under Florida is the *Razner* standard, and not the standard cited by *Fowler*.

Under either standard, however (to the extent that the standards meaningfully differ) the Court finds that Plaintiffs state a claim. Plaintiffs allege the speaker, the listener, the substance of the statement, and the approximate time frame of the statement. *See* [DE 44] ¶¶ 46. ("Chase, through oral, written, and electronic communications, falsely told Plaintiffs' customers, lenders, banks, financial institutions and other business associates that they could not execute a transaction with Sinai and Gitman 'due to Sanctions' concerning a made up "OFAC investigation.'"); *see also* [DE 44] ¶¶ 45 ("For many years, Chase has rejected, cancelled, and otherwise prevented individuals and businesses from transferring funds, including via wire and ACH transfer, to or

13

from Plaintiffs."). Plaintiffs have furthermore sufficiently alleged that the statements were false and that they were made with malice. *See* [DE 44] ¶ 49 ("OFAC crimes against humanity are so extreme that they intrinsically show Chase's express malice."); *see also id.* ¶ 50. ("The essence of the statements was that Plaintiffs are on or associated with sanction(s) investigations and lists because of criminal activity or are engaging in other suspicious business activities, all of which are absolutely false."). Accordingly, Defendant's motion to dismiss as to **COUNT II** and **COUNT IV** is hereby **DENIED**.

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss in Part the Amended Complaint and Incorporated Memorandum of Law [DE 50] is hereby **DENIED.**

2. Defendant shall file its Answer to the Amended Complaint on or before **November 12, 2024**.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida this 29th day of October 2024.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

cc: Counsel of record