UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:23-cv-62159-WPD

SINAI HOLDINGS, LLC,
and JACOB GITMAN,

    Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.
_____/

**ORDER ON PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S
AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT**

THIS CAUSE is before the Court on Plaintiffs' Motion to Strike Defendant's Affirmative Defenses to Amended Complaint filed on November 26, 2024. [DE 71]. The Court has carefully considered the Motion [DE 71], Defendant's Response [DE 78], Plaintiffs' Reply [DE 81], and is otherwise fully advised in the premises.

**I.    BACKGROUND**

On October 29, 2021, Monarch Air Group, LLC ("Monarch") and David Gitman filed an action against Chase. *See Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD ("*Monarch I*").[1] In *Monarch I*, Monarch and David Gitman asserted claims against Chase for defamation and tortious interference arising from alleged defamatory statements made to Monarch's customers and David Gitman's transferees in

---

[1] The Court takes judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD.

1

connection with cancelled wire transactions to Monarch from or through Chase accounts. *See Monarch I*, [DEs 1, 21, 78].

On May 12, 2023, this Court granted summary judgment in favor of Chase and entered a final judgment. *See Monarch I*, [DE's 205, 206]. As to the defamation claims, this Court held that Chase's statements to its account holders regarding why Chase was unable to execute the transactions were qualifiedly privileged, and the plaintiffs failed to offer any evidence Chase acted with express malice, as required to overcome the privilege. *See Monarch I*, [DE 205] at pp. 5–11. This Court also found that the plaintiffs' tortious interference claim was barred by Florida's "single action rule" because it was based on the same underlying facts and communications as the failed defamation claims. *See Monarch I*, [DE 205] at pp. 11–13.

On April 26, 2023, Monarch and David Gitman filed a second lawsuit against Chase ("*Monarch II*"). [2] *See Monarch II*, [DE 1]. On October 6, 2023, the Court dismissed that lawsuit. *See Monarch II*, [DE 17]. In the October 6, 2023 Order, the Court found that the claims in *Monarch II* were "barred by *res judicata* insofar as [those claims] arise[] from the same cancelled wire transactions forming the basis of *Monarch I*," but found that "whether res judicata applies with respect to Plaintiffs claims that Chase has continued to cancel, reject, and/or dishonor wire and ACH transactions" was a closer issue. *See Monarch II*, [DE 17] at pp. 6–7. Nevertheless, because the Court found that the plaintiffs lacked standing for their claims, the Court found dismissal appropriate. *See Monarch II*, [DE 17] at p. 7.

On November 13, 2023, Plaintiffs Sinai and Jacob Gitman (David's father) filed the instant lawsuit against Chase, apparently based on the same allegedly defamatory statement that was at issue in *Monarch I*: "We are unable to execute your transaction due to sanctions and/or internal

---

[2] The Court takes judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 23-cv-60770-WPD.

2

JPMC Policy." *See* [DE 1] at ¶¶ 4, 33. On July 22, 2024, Plaintiff filed an Amended Complaint against Chase. [DE 44]. According to the Amended Complaint: Sinai is a medical services company that owns and operates medical related businesses including clinics, surgical centers, and medical device manufacturers. [DE 44] ¶ 17. Jacob Gitman is Sinai's principal. *Id.* at ¶ 22. Chase is a large national bank that has substantial compliance responsibilities, including the responsibility to ensure that it complies with federal laws and regulations prohibiting it from transferring money to sanctioned individuals, entities, or countries. *Id.* at ¶¶ 26–27. For years, Chase has rejected, cancelled, and otherwise prevented individuals and businesses from transferring funds via wire and ACH transfer to or from Plaintiffs. *Id.* at ¶ 45. Chase, through written and electronic communications, told these customers, lenders, and banks that it could not execute a transaction with Sinai and/or Gitman "due to sanctions" concerning an "OFAC[3] investigation." *Id.* at ¶ 46. According to Plaintiffs, Chase made the statements knowing that Plaintiffs were not sanctioned or on any OFAC lists. *Id.* at ¶¶ 47, 51. Plaintiffs allege that Chase's policies require it to falsely state that it cancels transactions "due to sanctions" when the statement is never sent for sanctions cancellations. *Id.* at ¶¶ 65–66, 72. According to Plaintiffs, Chase sets up its system by placing entities and individuals it does not want to do business with, like Plaintiffs, on a blacklist called the Interdiction List. *Id.* at ¶¶ 4–5, 30. Chase allegedly placed Plaintiffs on the Interdiction List because of its bias and animus against them. *Id.* at ¶¶ 43, 63. As a result of the statements, Plaintiffs have suffered reputational and financial damages, including losing access to Sinai's line of credit and the closure of Plaintiffs' bank accounts at other banking institutions. *Id.* at ¶¶ 10, 52–60.

Based upon these allegations, Plaintiffs bring four claims against Chase. In Count I, Plaintiffs allege that Chase libelously defamed them by communicating to third parties that it could

---

[3] OFAC refers to the Office of Foreign Assets Control.

not complete transactions to Plaintiffs "due to Sanctions" relating to an "OFAC investigation." *Id.* at ¶¶ 71–76. In Count II, Plaintiffs allege that Chase slanderously defamed them by making false oral statements about Plaintiffs to third parties by falsely stating that Plaintiffs are subject to an "OFAC investigation" along with other false allegations of criminal activity. In Count III, Plaintiffs bring a new claim for Defamation by Implication (Libel), alleging that "Chase published information about Plaintiffs to its customers, business associates, lenders, and banks, as stated in the general allegations by juxtaposing or conveying incomplete information or omitting facts so as to imply a defamatory connection between Plaintiffs and the OFAC sanctions list, and thereby, falsely implying that Plaintiffs were subject to sanctions and related investigations." *Id.* at ¶ 84. In Count IV, Plaintiffs bring a claim for defamation by implication (slander) alleging that Chase made orally false statements falsely implying that Plaintiffs were subject to sanctions and related investigations. *Id.* at ¶ 91–92. In Count V, Plaintiffs bring a claim tortious interference with a business relationship, alleging that Plaintiffs had advantageous business relationships, that Chase knew of those relationships, and that Chase intentionally and unjustifiably interfered with those relationships by cancelling transactions involving Plaintiffs and communicating with those third parties that it cancelled their business transactions with Plaintiffs "due to sanctions" regarding an "OFAC investigation." *Id.* at ¶ 96–100. In Count VI, Plaintiffs bring a claim for Declaratory Judgment under 28 U.S.C. § 2201 seeking a declaration regarding the illegality of Chase's past statements and Chase's claimed right to continue making the OFAC Sanctions Statements.

Defendant filed an Answer to the Complaint on November 12, 2024, [DE 66] in which Defendant asserts nine (9) affirmative defenses: (1) truth or substantial truth; (2) privilege; (3) First Amendment; (4) Plaintiffs are defamation proof; (5) failure to mitigate damages; (6) res judicata or claim preclusion; (7) collateral estoppel or issue preclusion; (8) preemption; (9) statute of

limitation. Plaintiffs now move to strike Defendant's affirmative defenses 1, 2, 3, 4, 6, 7, 8, and 9, arguing that they fail to meet the *Twombly/Iqbal* pleading standard. Based on the following, the Court agrees with Plaintiffs that Affirmative Defenses 3, 4, and 8 must be stricken.

## II.    STANDARD OF REVIEW

Rule 12(f) permits a court to strike an insufficient defense. *See* Fed. R. Civ. P. 12(f). Striking an affirmative defense is a drastic remedy that is disfavored and that will be granted only if it is clear that the defense must fail. *Augustus v. Bd. of Pub. Instruction of Escambia County*, 306 F.2d 862, 868 (5th Cir. 1962). Furthermore, "both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic . . . motions under Rule 12(f) are viewed with disfavor and are infrequently granted." 5C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1380 (3d ed. 2008). "[I]t must be shown that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Id*.

Nonetheless, affirmative defenses are subject to the same pleading scrutiny imposed by Rule 8(a) and *Twombly/Iqbal*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Losada v. Norwegian (Bahamas) Ltd.*, No. 13–cv–22256–JLK, 2013 WL 6622911, * 2 (S.D. Fla. Dec. 16, 2013) ("After reviewing the case law on the issue and the purpose of an affirmative defense, this Court finds that affirmative defenses should be subject to the same general pleading standards of complaints.").[4] Rule 8(a)(2) requires

---

[4] The Eleventh Circuit has not yet decided this issue, and some district courts have held that affirmative defenses are subject to a different standard. *See, e.g.*, *Ramnarine v. CP RE Holdco 2009-1, LLC*, No. 12-61716-CIV, 2013 WL 1788503, at *2 (S.D. Fla. Apr. 26, 2013). This Court will continue to rule consistently with its precedent that the *Twombly/Iqbal* standard applies. *See Aidone v. Nationwide Auto Guard, L.L.C.*, 295 F.R.D. 658, 660 (S.D. Fla. 2013).

"a short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to give the opposing party fair notice of the claim and its grounds. *See Twombly*, 550 U.S. at 555-56, n.3. The pleading must articulate enough facts to raise a plausible right to relief on the assumption that all of the non-conclusory, factual allegations in the complaint are true. *Id*. at 555; *Iqbal*, 129 S. Ct. at 1949. Formulaic recitations filled with labels and conclusions without factual allegations are insufficient. *Twombly*, 550 U.S. at 555.

### III.   DISCUSSION

*1. Affirmative Defense #1: Truth*

Defendant pleads in its Answer that, "Plaintiffs cannot prevail on their claims because some or all of the statements allegedly made by Chase were true or substantially true." In turn, Plaintiffs argue that "Chase's first affirmative defense failed to state a legally sufficient defense altogether, because it did not plead how it had good motive when it made the false statements about OFAC investigations and related sanctions, a required element for a truth defense."

Under Florida Law, there is some debate about whether "good motive" is required to assert the complete defense of "truth" to a claim of defamation. The Eleventh Circuit, in an unpublished opinion, declined to address the "potential [Florida State] constitutional conflict" and explained in a footnote:

> The parties argue over whether truth is an absolute defense to defamation under Florida law. Florida's Constitution provides, "In all criminal prosecutions and civil actions for defamation the truth may be given in evidence. If the matter charged as defamatory is true *and* was published with good motives, the party shall be acquitted or exonerated." Fla. Const. art. 1 § 4 (emphasis added). Florida courts, as we have previously noted, have interpreted this provision to mean that truth is not an absolute defense in a defamation action; "good motives" are also required. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989) ("In Florida, truth is not always an absolute defense to defamation. In order to avoid liability, a 'good motive' must also be shown." (quoting *Lewis v. Evans*, 406 So.2d 489, 492 n.2 (Fla. 2d DCA 1981)); *see also id.* ("Armstrong does not assert that the evidence was insufficient for the jury to conclude he acted with ill will."). Schiano responds

> pointing to an unpublished federal district court case in which the court opined that "[s]ubstantial truth is a complete defense to defamation, regardless of the motives of the defamer. It is a common tenet of First Amendment law that true statements are inactionable." *Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173, 2014 WL 5474061, at *11 (S.D. Fla. July 10, 2014). In light of *Finch*, the *Carroll* court incorrectly remarked that the "good motive" requirement "is not recognized" by the federal courts. Nevertheless, we need not resolve this potential constitutional conflict.

*Friedman v. Schiano,* 777 F. App'x 324, 335 (11th Cir. 2019). Here, too, we need not resolve the potential constitutional issue. Whether or not "good motive" is a requirement, Defendant has alleged a good motive by asserting that its statements "rest[ed] on Chase's judgments about how best to manage and assess the risk of sanctions." At the pleading stage, the Court finds that managing and assessing the risk of sanctions is itself sufficient to support a claim of good motive as a defense to defamation. The Court therefore declines to strike Affirmative Defense #1.

2. *Affirmative Defense #2: Privilege*

Defendant next alleges that Plaintiffs cannot prevail on their defamation claim because any verbal or written statements by Chase were made pursuant to a privilege. Plaintiffs argue that Chase's privilege defense fails to meet the *Twombly/Iqbal* standard because it is a mere recitation of the elements of claiming qualified privilege.

"The essential elements of the qualified privilege are: (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner." *Falic v. Legg Mason Wood Walker, Inc*., 347 F. Supp. 2d 1260, 1264 (S.D. Fla. 2004).

While true that Defendant makes a conclusory recitation of the elements, *see* [DE 66] at 116, Defendant also alleges facts that "[e]ach of the alleged statements was made to a person seeking to effect a transaction through Chase," "[t]he statements were made by Chase in response

7

to those requests to transact," and that "[t]he alleged statements were also limited in scope to the transactions Chase was unable to execute and the reasons Chase was unable to execute the transactions." These allegations suffice at the pleading stage to state a plausible affirmative defense of privilege.

   3. *Affirmative Defense #3: First Amendment*

Chase asserts that "Plaintiffs cannot prevail on their claims because the First Amendment to the United States Constitution protects Chase's right to free speech. Plaintiff argues that this defense is legally deficient. The Court agrees with Plaintiff.

"The First Amendment places constitutional limits on the application of the state law of defamation." *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011). "The First Amendment can provide protection against state law defamation claims on two bases: (1) the *type* of speech involved and (2) the *person* whom the speech concerns and the *culpability* of the speaker." *Bennett v. Hendrix*, 325 Fed.Appx. 727, 741 n.7 (11th Cir. 2009) (unpublished) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). "When the speech is of exclusively private concern and the plaintiff is a private figure, as in *Dun & Bradstreet,* the constitutional requirements do not necessarily force any change in at least some of the features of the common-law landscape." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)).

Moreover, "the Supreme Court explained (in dicta) that these constitutional restrictions on state defamation law are justified only where a defamation action is brought against a 'media defendant,' speaking on an issue of 'public concern,' in order to protect such defendants from the chilling effect that state libel law could have on their first amendment rights." *Straw v. Chase*

*Revel, Inc.*, 813 F.2d 356, 362 (11th Cir. 1987) (citing *Philadelphia Newspapers v. Hepps,* 475 U.S. 767 (1986).

"Whether ... speech addresses a matter of public concern must be determined by [the expression's] content, form, and context ... as revealed by the whole record." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985) (quoting *Connick v. Myers,* 461 U.S. 138, 147–148 (1983). Speech that "was [] solely in the individual interest of the speaker and its specific business audience" is more likely to be considered a matter of private concern. *See Dun & Bradstreet, Inc.*, 472 U.S. at 761. Moreover, where the statement was made available only to a limited number of listeners, "it cannot be said that the [statement] involves any 'strong interest in the free flow of commercial information'" such that it warrants constitutional protection against state defamation statutes. *Id.* (quoting *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)).

The statements at issue here were allegedly made directly and exclusively to a finite number of parties with whom Plaintiffs intended to complete bank transactions. Chase is not a "media defendant" and there are no allegations that Chase publicly broadcasted these statements. Chase allegedly said to parties with whom Plaintiffs attempted to transact, "[w]e are unable to execute your transaction due to sanctions and/or internal JPMC Policy." Chase does not explain why this statement qualifies as one of public concern. Moreover, Chase does not allege that the statement regards a public figure.

Accordingly, the Court finds that Chase cannot mount a constitutional defense to the defamation allegations. Defendant's Third Affirmative Defense is hereby **STRICKEN**.

4. *Affirmative Defense #4: Plaintiffs are "Defamation Proof"*

Chase alleges in its fourth affirmative defense that Plaintiffs cannot prevail on their defamation claim because Plaintiffs are "defamation-proof." Chase alleges that multiple news outlets had published stories about the Gitmans and Monarch Air Group, LLC ("Monarch") before Chase made the allegedly defamatory statements. Chase contends that "[g]iven the representations in these articles, which remain publicly accessible as of the date of this filing, Chase's alleged statements could not have caused Jacob Gitman or his affiliates, including Sinai Holdings, LLC, any further reputational harm."

Defendant cites no law—and the Court finds none—that support the proposition that a defendant is not liable for defamation if a plaintiff had been previously defamed by other third parties.

To the extent that this affirmative defense is intended to support the First Amendment defense by alleging that Gitman and Sinai are public figures or limited public figures, this defense still fails. Even assuming *arguendo* that a single website post suffices to render the subject a public figure or limited public figure, the cited article only mentions Jacob Gitman and does not mention Sinai. As to Jacob Gitman, as above, Chase is not a "media defendant" and makes no allegation that the statement in question involved a matter of public concern. Accordingly, Defendant's Fourth Affirmative Defense is hereby **STRICKEN**.

5. *Affirmative Defense #5*

Plaintiff makes no objection to Affirmative Defense #5.

6. *Affirmative Defense #6 and #7: Claim Preclusion and Issue Preclusion*

Defendants assert the affirmative defenses of claim preclusion and issue preclusion.

"For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation omitted); *see also CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1337 (11th Cir. 2017) ("[F]ederal common law adopts the state rule of collateral estoppel to determine the preclusive effect of an earlier judgment of a federal court that exercised diversity jurisdiction."). Thus, because this Court exercised diversity jurisdiction in rendering its judgment in *Monarch I*, Florida law applies.

Under Florida law, issue preclusion, or collateral estoppel, applies where: "(1) the identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part of the prior determination; (3) there was a full and fair opportunity to litigate the issue; (4) the parties to the prior action were identical to parties of the current proceeding; and (5) the issue was actually litigated." *Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015) (citing *Cook v. State*, 921 So. 2d 631, 634 (Fla. 2d DCA 2005)). Claim preclusion, or res judicata, applies where there is: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made." *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004).

Florida courts "have not strictly adhered to the identity of parties requirement in all cases when invoking the doctrines of res judicata and collateral estoppel." *West v. Kawasaki Motors Mfg. Corp.*, U.S.A., 595 So. 2d 92, 94 (Fla. 3d DCA 1992); *see also Stockton v. Lansiquot*, 838 F.2d 1545, 1546 (11th Cir. 1988) (noting that "it is not necessary there be an exact identity of parties"). The term "'parties' has been broadly interpreted to include more than just record parties," and may include those in privity with the original parties. *West v. Kawasaki Motors Mfg. Corp., U.S.A.,* 595 So. 2d 92, 94 (Fla. Dist. Ct. App. 1992). To be in privity with a party to an earlier

11

lawsuit, "one must have an interest in the action such that she will be bound by the final judgment as if she were a party." *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d DCA 2017); *see also Stogniew v. McQueen*, 656 So.2d 917, 920 (Fla. 1995) (applying the same test in the context of collateral estoppel).

While claim preclusion and issue preclusion, as pled, are not models of clarity, the Court finds that Defendant has sufficiently pled affirmative defenses of claim and issue preclusion to survive the *Twombly/Iqbal* standard. Defendant alleges that Plaintiffs in this case are in privity with David Gitman and Monarch, as Jacob Gitman is David Gitman's father and is a member of both Monarch and Sinai Holdings LLC. Defendant further alleges that *Monarch I* involved litigation of the identical issues raised in this case. Moreover, taking judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD, the Court can readily infer that this litigation may involve the identical issues as those litigated in *Monarch I*, that determination of these issues that were a critical and necessary part of the prior determination, and that there was a full and fair opportunity to litigate the issue in *Monarch I*. Accordingly, the claim and issue preclusion defenses are sufficiently pled at the this stage.

7. *Affirmative Defense #8: Preemption*

Chase next alleges that "Plaintiffs' claims against Chase are expressly or impliedly preempted, in whole or in part, by the Bank Secrecy Act, National Bank Act, and/or other applicable federal laws or regulations." Plaintiff argues that Chase fails to allege any material facts to support its legal conclusion. The Court agrees with Plaintiff.

The preemption doctrine identifies the following three categories of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption. *See Marrache v. Bacardi*

*U.S.A., Inc.*, 17 F.4th 1084, 1094 (11th Cir. 2021). "Express preemption occurs when Congress manifests its intent to displace a state law using the text of a federal statute." *Id.* Moreover, "[s]tate law can be impliedly preempted by federal law in cases of field preemption and conflict preemption." *Id.*

Defendant does not identify which type of pre-emption it pleads. Nor does Defendant meaningfully explain why the National Bank Act or the Bank Secrecy Act either expressly or impliedly conflicts with the application of state tort law here. Instead, Defendant only states,

> Certain obligations place limits on -14- JPMC's ability to explain why transactions are canceled. Imposing state tort liability on a national bank for an allegedly insufficient explanation goes against the "the strong public policy" in favor of maintaining confidentiality of such information, see Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. 75,576, 75,579 (Dec. 3, 2010), and would frustrate the purposes and objectives of federal anti-money-laundering and bank secrecy laws.

The burden of pleading pre-emption is on the party claiming preemption. *See e.g.*, *Marrache*, 17 F.4th at 1094 ("First, Defendants have failed to show how compliance with the Food Additives Amendment and its implementing regulations—federal law—and section 562.455—state law—would be a physical impossibility.") Defendant has not provided any facts that would support a finding of express preemption, and "[i]mpossibility pre-emption is a demanding defense." *Wyeth v. Levine*, 555 U.S. 555 573 (2009).

Defendant's argument fails to demonstrate to the Court that express or implied preemption exists as to the application of state tort law to Defendant in this case. Defendant points to no express clauses in any of the referenced statutes or regulations that directly suggest pre-emption. Nor does Defendant argue that compliance with both state defamation law and any of the referenced federal law is a "physical impossibility." *Marrache*, 17 F.4th at 1095. The Supreme Court has stated that even in the face of statutes and regulations granting power to national banks, states are not

"deprive[d]. . . of the power to regulate national banks, where. . . doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). Accordingly, Defendant's Eighth Affirmative Defense is hereby **STRICKEN**.

8. *Affirmative Defense #9: Statute of Limitations*

Finally, Chase claims that "Plaintiffs' claims against Chase are barred, in whole or in part, by the applicable statute(s) of limitations." Chase alleges that the applicable statute of limitations is two years, and that Plaintiff fails to allege dates or times of any of the allegedly defamatory statements in the Amended Complaint. Accordingly, Defendant argues that "[t]o the extent such statements were made prior to November 13, 2021, Plaintiffs' claims are barred." Plaintiff's own deficiency in failing to allege the dates of the allegedly defamatory statements prevents Plaintiff from now moving to strike this affirmative defense as lacking in factual support. Accordingly, the Court will not strike this affirmative defense.

**IV.     Whether Chase's Answer to Paragraph 2 of the Complaint Should be Stricken**

Plaintiff argues that in its Answer, Chase references a policy in paragraph 2 that is unrelated to the policy Plaintiffs quoted in their Complaint and should thus be struck. Chase does not respond to this argument. Whether the referenced policy is "unrelated" appears to be a substantive question that is best determined on a more developed record. Accordingly, Court declines to take the "drastic" step of striking this portion of Defendant's Answer.

**V.      CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Strike Affirmative Defenses [DE 71] is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

      a.  Affirmative Defenses 3, 4, and 8 are hereby **STRICKEN**.

      b.  Defendant, if it chooses to amend, shall file a Second Amended Answer and Affirmative Defenses in accordance with this Order within fourteen (14) days of the date of this Order.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, this 30th day of January, 2025.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:

Counsel of Record