**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
FT. LAUDERDALE DIVISION

Case No.: 0:23-cv-62159-WPD

SINAI HOLDINGS, LLC, and
JACOB GITMAN,

    Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND CROSS-MOTION TO COMPEL DEPOSITION OF JAMIE DIMON**

    Plaintiffs, Sinai Holdings, LLC and Jacob Gitman by and through the undersigned counsel, hereby files this response in opposition to Defendant JPMORGAN CHASE BANK, N.A ("Chase" or "Defendant") Motion for Protective Order to Preclude Deposition of James Dimon, and cross-moves to compel the deposition of Jamie Dimon.

**Introduction**

    This Case involves Chase "unreasonably de-banking and globally interdicting the Plaintiffs, among thousands of other people, which then causes Chase to also automatically publish fabricated lies about non-existent OFAC investigations and sanctions around the world." Pl. Am. Compl. Dkt 44, ¶ 1. Based on this conduct, Plaintiff filed a six-count Amended Complaint asserting claims for defamation, tortious interference and for a declaratory judgment. *See generally id.*

    Mr. Dimon, the CEO of Chase, possesses unique knowledge of Chase's policies and actions regarding the banking decision Chase makes for political reasons, including blacklisting, debanking and the always false defamation of all such "blacklisted" customers, as reflected in his *many* public-facing comments to the media, and in the discovery produced to date, including Chase's Global Financial Intelligence Unit ("GFIU") internal reports and interdiction policies.

    More specifically, the GFIU reports from October 2019 and July 2020 indicate that Chase took action against the Plaintiffs for reasons tied to political narratives conjured up by a one-time blog author (who has since fully recanted under oath), and not a reasonable investigation or

1

banking risk assessments in compliance with Chase's own policies. Chase fabricated a tale that Plaintiffs were potentially involved with Trump's and/or Russia's interference with the 2016 US presidential election.

Mr. Dimon has also made several public statements to the media and/or government officials denying political actions taken by Chase, including statements in 2019 and 2025. Such statements conflict with the evidence produced in discovery, necessitating Mr. Dimon's testimony to clarify his awareness and involvement. However, in its Motion for a Protective Order, Defendant objects to producing Mr. Dimon as a witness pursuant to Florida's *Apex Doctrine*. As discussed below, the Apex Doctrine does not bar Mr. Dimon's deposition, and the Court should order that Mr. Dimon be deposed in this Action.

## **Standard of Review**

The Federal Rules of Civil Procedure provide an expansive structure for parties to engage in discovery. The rules of discovery are designed "to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." *AIG Centennial Ins. Co. v. O'Neill*, 09-60551-CIV-ZLOCH, 2010 WL 4116555, *3 (S.D. Fla. Oct. 18, 2010) (citing Advisory Committee Notes to Fed. R. Civ. P. 26). The term "relevant" as used in Federal Rule 26, is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Further, the "overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-CV-23425, 2016 WL 10644064, at *1 (S.D. Fla. Sept. 26, 2016) (quoting *State Nat'l Ins. Co. v. City of Destin*, 2015 WL 11109379, at *1 (N.D. Fla. Sept. 1, 2015))

"The purpose of the apex doctrine is to prevent the potential harassment and abuse of high level corporate executives where he or she has little or no knowledge." *Reilly v. Chipotle Mexican Grill, Inc.,* No. 15-CV-23425, 2016 WL 10644064, at *6 (S.D. Fla. Sept. 26, 2016)(citations omitted). "[A] party seeking to depose a high[-]ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that

2

other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *In re Municipality of Mariana*, No. 24-CV-22918, 2024 WL 4602818, at *2 (S.D. Fla. Oct. 29, 2024)(quotations omitted). However, with regards to second prong, a party does not need to demonstrate "complete exhaustion ... because the apex doctrine stems from the Court's broad discretion to control the timing of discovery." *Palmisano v. Paragon 28, Inc.,* No. 21-60447-CIV, 2021 WL 1686928, at *3 (S.D. Fla. Apr. 23, 2021)(citing 2016 WL 10644064, at *6).

## **Argument**

Defendants' two primary arguments are that (i) Mr. Dimon lacks unique firsthand knowledge of the issues of this lawsuit, *see* Mot. at 3 -5, and that Plaintiffs cannot show an inability to obtain that same information through "less intrusive means," *Id.* at 5. Defendants are incorrect on both the law and facts.

Mr. Dimon, in meetings with politicians on Capitol Hill, on his company's own podcast, at shareholder meetings, and in interviews with broadcast media, has repeatedly discussed allegations of Chase taking bank-related actions against its customers and others for political reasons. This is the primary issue of this Case. Below are a few examples of Jamie Dimon publicly discussing such policies and procedures of Chase:

- "Very directly, we have not and do not debank people because of their political views. We have not and do not. And we debank people 'cause they're DSA, AML, KYC or unable to meet regulation – regulatory-type of requirements for them"; (https://nationalcenter.org/ncppr/2019/05/21/chase-ceo-denies-debanking-conservatives/) (May 21, 2019)
- "We have not debanked anyone because of political or religious relationships, period." (https://finance.yahoo.com/news/jamie-dimon-and-the-crypto-world-agree-debanking-needs-to-be-fixed--but-for-different-reasons-141603944.html (Jan. 25, 2025)
- "We don't debank people because of political or religious affiliations, but there are a lot of things that can be fixed. We should fix them" (https://www.foxbusiness.com/politics/bank-ceos-dimon-moynihan-deny-debanking-accusations-admit-things-can-fixed) (Feb. 13, 2025)

- "We have not debanked anyone because of political or religious relationships period Now when we debank so and they often blame that reason, but that's not a reason" Chase's The *Unshakables Podcast,* Season 2, Episode 1. Jan 21, 2025. https://www.iheart.com/podcast/1119-the-unshakeables-143335977/episode/jamie-dimon-americas-strength-in-small-259882858/#transcription

As these *repeated* public statements show, Mr. Dimon is acutely aware of one of the primary issues of this lawsuit—whether Plaintiffs were unreasonably targeted, and then continually defamed, due to non-business or regulatory reasons. Defendants claim that Mr. Dimon does not possess unique first-hand knowledge about these plaintiffs. Even accepting that claim as true, that is not the relevant standard. Chase is an organization with nationwide policies and procedures. Mr. Dimon has unique first-hand knowledge of the facts underlying the development and enforcement of the *precise* policies and procedures—including blacklisting and defaming customers for political reasons— that caused harm to Plaintiff. He has repeatedly asserted this knowledge.

Specifically, as the CEO of the bank, Mr. Dimon constantly meets with policymakers, crafts Chase's policy on the issue of taking bank-related actions against its customers and others for political reasons, and publicly defends Chase's practices with respect to these matters. Beyond the evidence of Mr. Dimon's public-facing comments outlined above, Mr. Dimon must be actively involved in this issue, because it is a highly divisive political issue that has garnered massive interest from the public, Chase customers and shareholders. Further, this issue has been hotly debated in the Capitol and the White House, and President Trump and his family recently filed a lawsuit against Capital One Bank, alleging similar theories to what Plaintiffs are alleging here. [1] Thus, gaining institutional knowledge and setting policies on these issues needs to be done in highest echelons of Chase's executive management, and cannot be exclusively delegated to lower

---

[1] *See e.g.,* THE DONALD J. TRUMP REVOCABLE TRUST ET AL VS CAPITAL ONE, N.A., Case No. 1:25-cv-21596-RKA. Compl. at 2-3 ("Plaintiffs have reason to believe that Capital One's unilateral decision came about as a result of political and social motivations and Capital One's unsubstantiated, "woke" beliefs that it needed to distance itself from President Trump and his conservative political views. In essence, Capital One "de-banked" Plaintiffs' Accounts because Capital One believed that the political tide at the moment favored doing so. In addition to the considerable financial harm that Plaintiffs and their affiliated entities suffered, Capital One's reckless decision is part of a growing trend by financial institutions in the United States of America to cut off a consumer's access to banking services if their political views contradict with those of the financial institution. Capital One's conduct is but one example of a systemic, subversive industry practice that aims to coerce the public to shift and re-align their political views.")

level employees who know virtually nothing about these matters and did not speak to anyone who does to properly prepare as corporate representatives.

Thus, Plaintiff has surely demonstrated that Mr. Dimon possesses "unique, non-repetitive, firsthand knowledge of the facts at issue." *Municipality of Mariana*, 2024 WL 4602818, at *2.

Chase witnesses, from various departments, are all well-prepared to toe the company line, and provide prepackaged and often evasive responses. Thus, despite Plaintiff's diligent efforts in propounding voluminous paper discovery and taking depositions, Plaintiffs have not been able to ascertain highly relevant and discoverable information about Chase's politically-driven policies and actions, and whether that applied to Plaintiffs. But Mr. Dimon seems to know all about this, apparently due to Mr. Dimon's unique position and knowledge with respect to the subject matter.

Thus, in the case at bench, Plaintiffs have fully exhausted all alternative means of obtaining the information, before seeking to depose Mr. Dimon. However, under caselaw in this Circuit, "complete exhaustion [is] not required because the apex doctrine stems from the Court's broad discretion to control the timing of discovery." *Palmisano,* 2021 WL 1686928, at *3. (citing *Reilly,* 2016 WL 10644064, at *6 (finding second prong satisfied despite plaintiff having taken just four individual depositions and no 30(b)(6) deposition). Thus, even if the Court finds that Plaintiffs did not turn over every possible stone (although they have), the Court should still order the deposition of Mr. Dimon.

## Conclusion

Mr. Dimon is not a figurehead CEO. He is the public face and policy architect of Chase's controversial banking decisions—decisions at the core of this case. His own public statements directly contradict Chase's litigation position, and discovery to date confirms that lower-level witnesses lack the knowledge or authority to answer fundamental questions about the political motivations behind Plaintiffs' blacklisting. Plaintiffs have diligently pursued alternative means of discovery, to no avail. The Apex Doctrine does not shield a high-ranking executive from testifying where, as here, he possesses unique, non-repetitive knowledge critical to the claims and defenses at issue. For these reasons, the Court should compel Mr. Dimon's deposition without further delay.

## CERTIFICATION OF LOCAL RULE 7.1(a)(3) CONFERRAL

Plaintiffs' counsel certifies that they conferred in a good faith effort to resolve by agreement the issues raised in this Cross-Motion with Defendant's counsel, who opposes the relief sought at this current time.

By: /s/ *David I. Rosenblatt*

Dated: June 27, 2025

Respectfully submitted,

By: /s/ *David I. Rosenblatt*
**STOK KON + BRAVERMAN**
1 East Broward Blvd, Suite 915
Fort Lauderdale, FL 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email: service@stoklaw.com

JOSHUA R. KON, ESQ.
Florida Bar No. 56147
(jkon@stoklaw.com)
YOSEF KUDAN, ESQ.
Florida Bar No. 1010261
(ykudan@stoklaw.com)
DAVID I. ROSENBLATT, ESQ.
Florida Bar No. 1008131
(drosenblatt@stoklaw.com)

*Counsel to Plaintiffs Sinai Holdings, LLC and Jacob Gitman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via Email on this June 27, 2025, on all parties and counsel of record: JONES DAY 600 Brickell Ave., Suite 3300, Miami, FL, 33131, Eliot Pedrosa, Esq., epedrosa@jonesday.com; Taylor Cavaliere, Esq., tcavaliere@jonesday.com; and Amanda Dollinger Esq., adollinger@jonesday.com.

By: /s/ *David I. Rosenblatt*