UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 23-62159-CIV-DIMITROULEAS/HUNT

SINAI HOLDINGS, LLC, a Florida limited
liability company, and JACOB GITMAN,

     Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

     Defendant.
_____/

## ORDER ON PLAINTIFFS' MOTION FOR CLARIFICATION AND/OR RECONSIDERATION AND ON DEFENDANT'S MOTION FOR A PROTECTIVE ORDER TO PRECLUDE A DEPOSITION

THIS CAUSE is before this Court on two motions: Plaintiffs' Motion for Clarification and/or Reconsideration of Order on Plaintiffs' Discovery Motions, ECF No. 157, and Defendant's Motion for a Protective Order to Preclude the Deposition of James Dimon, ECF No. 152. The Honorable William P. Dimitrouleas, United States District Judge, referred these Motions to the undersigned for disposition. ECF No. 38; *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. Upon thorough and careful review of the Motions, Responses, and Replies, and being otherwise fully advised in the premises, this Court hereby **ORDERS and ADJUDGES** Plaintiffs' Motion is DENIED and Defendant's Motion is GRANTED for the reasons outlined below.

    I.  Motion for Clarification and/or Reconsideration

Plaintiffs have moved for clarification or reconsideration of the undersigned's Order Denying Plaintiffs' Discovery Motions, raising three issues: (1) account closure, (2) in

camera review of documents Defendant has identified on its privilege log, and (3) Defendant's purported waiver of the SAR privilege.

"[I]t is well-settled that 'motions for reconsideration are disfavored' and that relief under Rule 59(e) is an extraordinary remedy to be employed sparingly." *Krstic v. Princess Cruise Lines, Ltd. (Corp)*, 706 F. Supp. 2d 1271, 1282 (S.D. Fla. 2010); *see also Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). Furthermore, "it is an improper use of the motion to reconsider to ask the Court to rethink what the Court . . . already thought through—rightly or wrongly." *Id.* (quoting *In re Garcia*, No. 01-945-CIV-GOLD, 2002 WL 32372583, at *1 (S.D. Fla. Nov. 4, 2002)).

To warrant reconsideration, the movant "must demonstrate why the court should reconsider its prior decision and set forth facts and law of a strongly convincing nature to induce the court to reverse its prior decision." *United States v. Diaz*, No. 00-00074-CR-BLOOM, 2025 WL 2239244, at *3 (S.D. Fla. Aug. 5, 2025). "A motion for reconsideration should raise new issues, not merely address issues litigated previously." *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1343 (S.D. Fla. 2007) (citation omitted). Such a motion may not be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of [a previous order]." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

1. Account Closure Documents

On the first issue, Plaintiffs point to a recent deposition given by the lead GFIU ("Global Financial Investigation Unit") investigator to suggest that the interdiction process does influence the decision to initiate debanking procedures. ECF No. 157. Plaintiffs

believe that because Defendant's policies do not allow current customers to be interdicted, and because the GFIU investigator said she turned over an interdiction report to the account closure department, the processes are not separate but interconnected. *Id.*  Defendant notes that Plaintiffs' claims of defamation and tortious interference arise from alleged communications between Defendant and non-parties who attempted to send money to Plaintiffs.  Claims made based upon this foundational allegation, Defendant contends, have little to do with the closure of Plaintiffs' bank accounts.  Defendant does not deny that its departments may share information but insists that two different groups make the ultimate determinations of whether to close a customer account and whether to approve interdiction.  ECF No. 164.

The undersigned agrees that the transfer of information from one department to another to facilitate cohesion in the functioning of Defendant's business does not suggest that the same group made the decision in both categories.  The GFIU investigator said she sent a short summary of her investigative findings to a "line of business" department who reviews a relationship with the customer.  The sharing of information itself does not indicate that the decision made by one panel dictates a decision made by another panel.  Defendant cannot be blamed for allowing the right hand to know what the left hand is doing.  The GFIU investigator did not send her entire report directly to the accounts closure department, and she did not exert any influence over that department.  With the decisions made by different departments, the processes are still separate, and no further discovery will be required on this point.

2. *In Camera* Review

On the second issue, Plaintiffs again request the undersigned to conduct an *in camera* review of the documents identified on Defendant's privilege log. "The Court does not conduct an *in camera* review lightly, nor simply because a party requests it." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 627 (S.D. Fla. 2013). Here, Plaintiffs specifically ask for this *in camera* review "to compel production of the GFIU's investigative file." ECF No. 157. This would apply to "any memoranda or documents drafted in response to the suspicious activity at issue in this case, without requiring Chase to produce any SARs or previous drafts of SARs or for Chase to indicate if and when a SAR was produced, and . . . what documents and facts were or were not included in any SARs." *Id.* (internal quotation marks omitted). Plaintiffs argue a review conducted *in camera* would not reveal the existence or non-existence of any SARs ("Suspicious Activity Reports"). But asking for review of "documents drafted in response to the suspicious activity at issue" is exactly the kind of documentation the SAR privilege exists to protect.

"SARs are subject to an 'unqualified discovery and evidentiary privilege that courts have held cannot be waived.'" *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, No. 18-60250-CIV-UNGARO/HUNT, 2018 WL 4208225, at *1–2 (S.D. Fla. July 23, 2018) (quoting *Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-CV-557-T-27EAJ, 2013 WL 12156524, at *4 (M.D. Fla. June 10, 2013)). "This privilege encompasses not only SARs themselves, but documents that could disclose the existence of a SAR or a decision not to file one." *Id.* While this privilege strongly protects documents related to SARs, it "does not shield from discovery reports, memoranda, or underlying transactional documents

4

generated by a bank's internal investigation procedures." *Id.* "[D]ocuments representing drafts of SARs or other work product or privileged communications that relate to the SAR itself . . . are not to be produced because they would disclose whether a SAR has been prepared or filed." *Id.*

Despite Plaintiffs' articulated fears that Defendant is sweeping under the privilege-rug discoverable material not related to SARs, Plaintiffs have not put forward any new information suggesting that this is the case. With the pieces on the chess board in the same place they were when the undersigned first issued a decision on whether to conduct an *in camera* review, there is no basis for reconsideration of that decision, and no *in camera* review will be undertaken now.

3. Sword and Shield Tactics

On the third issue, Plaintiffs ask the Court to reconsider their "sword and shield" argument that Defendant should not be allowed to use documents it withholds or redacts as privileged to support a qualified privilege defense. ECF No. 157.

"Under the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged." *Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. United States*, 946 F. Supp. 2d 1302, 1317 (M.D. Fla. 2013). But in this particular case, while working with this particular kind of information, privilege cannot be waived. "[T]he SAR privilege 'is an unqualified discovery and evidentiary privilege that a financial institution is not permitted to waive.'" *S.E.C. v. Royal Bengal Logistics, Inc.*, No. 23-61179-CIV-LEIBOWITZ/VALLE, 2024 WL 1833083, at *2 (S.D. Fla. Apr. 26, 2024), *reconsideration denied*, 2024 WL 3317427 (S.D. Fla. June 28, 2024), *appeal dismissed*,

5

No. 24-12158, 2024 WL 4249645 (11th Cir. Sept. 20, 2024) (quoting *Fed. Trade Comm'n v. Marcus*, No. 17-60907-CIV-MORENO/STRAUSS, 2020 WL 1482250, at *3 (S.D. Fla. Mar. 27, 2020)).  The undersigned declines to compel Defendant to produce information well known to be protected by unwaivable privilege.

Nothing that has arisen in discovery since the issuance of the undersigned's previous discovery order alters the bases for that decision.  Therefore, Plaintiffs' Motion for Clarification and/or Reconsideration is denied.

II.     Motion for a Protective Order

Defendant moves for the entry of a protective order to preclude the deposition of James Dimon, JPMorgan Chase Bank's Chairman and CEO.  ECF No. 152.  Plaintiffs want to depose Mr. Dimon to explore his "unique knowledge of Chase's political debanking, interdiction and ongoing defamation of its thousands of blacklisted clients." ECF No. 152, Exh. 1, p. 1.  As protection, Defendant invokes the apex doctrine.  ECF No. 152.

"The purpose of the apex doctrine is to prevent the potential harassment and abuse of high level corporate executives where he or she has little or no knowledge." *Reilly v. Chipotle Mexican Grill, Inc.,* No. 15-23425-CIV-COOKE/TORRES, 2016 WL 10644064, at *6 (S.D. Fla. Sept. 26, 2016) (citations omitted).  Furthermore, "[c]ourts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts."  *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.,* 310 F.R.D. 523, 527 (S.D. Fla. 2015) (quoting *Brown v.*

6

*Branch Banking and Trust Co.*, No. 13-81192-CIV-SELTZER, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014)).

"[A] party seeking to depose a high ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Hickey v. N. Broward Hosp. Dist.*, No. 14-60542-CIV-BLOOM/VALLE, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014).   "The party seeking to compel the deposition of a high-ranking executive has the burden of showing that the deposition is necessary." *Kaether v. Armor Corr. Health Services, Inc.*, No. 16-62950-CIV-ZLOCH/HUNT, 2017 WL 11536874, at *1 (S.D. Fla. Nov. 14, 2017) (quoting *id.*).

In addition to maintaining Mr. Dimon lacks firsthand knowledge of the issues involved in this lawsuit, Defendant contends Plaintiffs cannot show an inability to obtain the same information through less intrusive means.  ECF No. 152.  Defendant clarifies that the underlying issues of this case only involve defamation and tortious interference—claims not stemming from the closure of Plaintiffs' accounts but from notifications non-parties received.

1. First-Hand Knowledge

Defendant acknowledges that Mr. Dimon has made public statements regarding the debanking of certain individuals and how those decisions are made free of political considerations.  ECF No. 152.  But Mr. Dimon does not make those decisions himself, and likely exerts no direct influence on those decisions.  If Plaintiffs wish to obtain information about Defendant's allegedly politically-driven *policies*, then others employed

7

by Defendant would have knowledge of the contents of those policies and how they are implemented on a much more specific level.  "Generally, because the CEO of a large corporation is familiar with the big picture of the operations of a company—and is not familiar with the day to day operations of a business—most courts have fashioned a test that requires the party seeking the deposition of a CEO to show that the executive has 'unique or superior knowledge of discoverable information.'"  *Harvey v. Home Depot U.S.A., Inc.*, No. 10-23532-CIV-UNGARO/TORRES, 2011 WL 13220995, at *2 (S.D. Fla. Apr. 25, 2011).  While Plaintiffs may have shown Mr. Dimon has some knowledge of how decisions made by Defendant are kept free of political bias, Plaintiffs have failed to show he has unique or superior knowledge.

    2.  Exhaustion of Less Intrusive Means

Plaintiffs point to *Palmisano v. Paragon 28, Inc.*, to suggest that "complete exhaustion" of the exploration of less intrusive means of discovery "[is] not required because the apex doctrine stems from the Court's broad discretion to control the timing of discovery." No. 21-60447-CIV-DIMITROULEAS/SNOW, 2021 WL 1686928, at *3 (S.D. Fla. Apr. 23, 2021).  But in that case, the party seeking the deposition had "made sufficient efforts to obtain the information, and those efforts were unsuccessful," and had produced statements made by the executive officer which "contradicted testimony given by other . . . witnesses." *Id.*

Here, Plaintiffs have not shown that they have made any substantial but unsuccessful effort with other discovery tools to secure the same information from another source.  ECF No. 155.  In its Reply, Defendant reports that Plaintiffs, having taken the depositions of at least seven witnesses, including two corporate representatives, have

not indicated the testimony received was inaccurate or that Plaintiffs had remaining questions that these deponents could not answer or that only Mr. Dimon would be able to answer.  ECF No. 163.  Within this testimony Plaintiffs may have found sufficient knowledge of these policies, or, if Plaintiffs have not heard the answers they wish to hear, it may indicate those answers do not exist.

And while Plaintiffs reference broad statements made by Mr. Dimon regarding political bias, Plaintiffs include these statements in their Response only as a suggestion that Mr. Dimon has knowledge on these subjects, not as proof that his knowledge is superior to that held by any other employee of Defendant.  ECF No. 155.  Even with Plaintiffs' assertion that they have diligently attempted to obtain information regarding Defendant's politically-driven policies, they do not include any specifics as to what those efforts consisted of, in what way they were denied this information, or in what way these efforts failed to be fruitful.  But without a suggestion that the deponents have not been knowledgeable on the subject of allegedly politically-driven policies, in addition to specific reasons why Mr. Dimon might have the knowledge when no one else employed by Defendant does, Mr. Dimon remains protected by the apex doctrine.

Based on the information provided by Plaintiffs, there is no reason to believe that Mr. Dimon has unique or superior knowledge on these issues and no reason to believe that Plaintiffs have sufficiently exhausted or even explored a significant number of possible, less-intrusive means by which to secure information on Defendant's alleged politically-driven policies.  Therefore, Defendant's motion for a protective order to preclude the deposition is granted.

**CONCLUSION**

Based on the foregoing, Plaintiffs' Motion for Reconsideration, ECF No. 157, is DENIED; Defendant's Motion for a Protective Order, ECF No. 152, is GRANTED.

**DONE AND SUBMITTED** at Fort Lauderdale, Florida this 15th day of August 2025.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Honorable William P. Dimitrouleas
All Counsel of Record