**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No.: 23-cv-62159-WPD

SINAI HOLDINGS, LLC, a Florida limited
liability company, and JACOB GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a
foreign profit corporation,

      Defendant.

_____

**<u>DEFENDANT JPMORGAN CHASE BANK, N.A.'s MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.    The Interdiction List .......................................................................................... 2

    B.    The Interdiction of the Gitmans ........................................................................ 3

    C.    The Prior Litigation ........................................................................................... 4

    D.    This Lawsuit ...................................................................................................... 5

STANDARD OF REVIEW ................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

I.      PLAINTIFFS' DEFAMATION CLAIMS FAIL ........................................................ 7

    A.    The Cancellation Message Was Not False ......................................................... 8

    B.    The Cancellation Message Was Qualifiedly Privileged. .................................... 10

          1.    Chase Satisfies the Essential Elements for Qualified Privilege. ............. 10

          2.    Chase Did Not Act With Express Malice. ................................................ 12

    C.    At a Minimum, Plaintiffs Cannot Prove Slander. .............................................. 13

II.     PLAINTIFFS' REMAINING CLAIMS ALSO FAIL ................................................. 13

    A.    Plaintiffs Lack a Viable Claim of Tortious Interference. ................................... 14

    B.    Plaintiffs Are Not Entitled to a Declaratory Judgment. ..................................... 16

III.    PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA. ................................ 16

III.    PLAINTIFFS CANNOT PROVE DAMAGES ........................................................... 19

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*1488, Inc. v. Philsec Inv. Corp.*,
939 F.2d 1281 (5th Cir. 1991) ..............................................................18

*Albrecht v. State*,
444 So. 2d 8 (Fla. 1984) ........................................................................16

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*,
391 F. Supp. 2d 1148 (S.D. Fla. 2005) ..................................................15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................7

*Boehm v. Am. Bankers Ins. Grp., Inc.*,
557 So. 2d 91 (Fla. 3d DCA 1990) ........................................................14

*Brigati v. Worcester Polytechnic Inst.*,
2021 WL 9098214 (S.D. Fla. Nov. 2, 2021) ...........................................9

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ..................................................15

*Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*,
831 So. 2d 204 (Fla. 4th DCA 2002) .....................................................14

*Cantero v. Bank of Am., N. A.*,
602 U.S. 205 (2024) ...............................................................................15

*Castle Key Ins. Co. v. Wooden Family Tr.*,
321 So. 3d 346 (Fla. 1st DCA 2021) .......................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...........................................................................7, 13

*Church of Scientology of Cal. v. Cazares*,
638 F.2d 1272 (5th Cir. 1981) ...............................................................10

*Citibank, N.A. v. Data Lease Fin. Corp.*,
904 F.2d 1498 (11th Cir. 1990) .............................................................17

# TABLE OF AUTHORITIES

**Page(s)**

*Cohen v. United States*,
924 F. Supp. 1164 (S.D. Fla. 1996) ........................................................................17

*Compass iTech, LLC v. eVestment All., LLC*,
2016 WL 10519027 (S.D. Fla. June 24, 2016) ...........................................................9

*Demby v. English*,
667 So. 2d 350 (Fla. 1st DCA 1995) .......................................................................11

*Desisto v. City of Delray Beach*,
2014 WL 11444095 (S.D. Fla. Sept. 10, 2014) ........................................................17

*Diaz v. Moore*,
861 F. Supp. 1041 (N.D. Fla. 1994).........................................................................17

*Eaton v. Principal Life Ins. Co.*,
2022 WL 972452 (M.D. Fla. Mar. 31, 2022) ...........................................................16

*Falic v. Legg Mason Wood Walker, Inc.*,
347 F. Supp. 2d 1260 (S.D. Fla. 2004) ....................................................................11

*Fortson v. Colangelo*,
434 F. Supp. 2d 1369 (S.D. Fla. 2006) ....................................................................13

*Hallmark Builders, Inc. v. Gaylord Broad. Co.*,
733 F.2d 1461 (11th Cir. 1984) .........................................................................8, 10

*Jaffree v. Wallace*,
837 F.2d 1461 (11th Cir. 1988) (per curiam)......................................................17, 18

*Jews For Jesus, Inc. v. Rapp*,
997 So. 2d 1098 (Fla. 2008)......................................................................................9

*Klayman v. Jud. Watch, Inc.*,
22 F. Supp. 3d 1240 (S.D. Fla. 2014) ......................................................................14

*Lefrock v. Walgreens Co.*,
77 F. Supp. 3d 1199 (M.D. Fla. 2015)......................................................................11

*Lozada v. Hobby Lobby Stores, Inc.*,
702 F. App'x 904 (11th Cir. 2017) (per curiam) ...................................................7, 12

## TABLE OF AUTHORITIES

**Page(s)**

*Mac Isaac v. Twitter, Inc.*,
  557 F. Supp. 3d 1251 (S.D. Fla. 2021) ...................................................................19

*Mariposa Assocs., Ltd. v. Regions Bank*,
  2015 WL 1478652 (S.D. Fla. Mar. 31, 2015) ...........................................................9

*Masvidal v. DOJ*,
  2010 WL 11606119 (S.D. Fla. Mar. 29, 2010) ........................................................14

*Monarch Air Group, LLC v. JPMorgan Chase Bank, N.A.*,
  No. 21-cv-62429-WPD, 2023 WL 4363816 (S.D. Fla. May 12, 2023)
  (*Monarch I*) ...................................................................................................... *passim*

*Nodar v. Galbreath*,
  462 So. 2d 803 (Fla. 1984) ...............................................................................11, 12

*Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*,
  13 So. 3d 1090 (Fla. 4th DCA 2009) ................................................................16, 19

*Pearce v. Sandler*,
  219 So. 3d 961 (Fla. 3d DCA 2017) .................................................................17, 18

*Regions Bank v. Kaplan*,
  2021 WL 4852268 (11th Cir. Oct. 19, 2021) ...........................................................11

*Schmidt v. Sabow*,
  331 So. 3d 781 (Fla. 2d DCA 2021) .........................................................................17

*Shaw v. R.J. Reynolds Tobacco Co.*,
  818 F. Supp. 1539 (M.D. Fla. 1993) .........................................................................13

*Smith v. Cuban Am. Nat. Found.*,
  731 So. 2d 702 (Fla. 3d DCA 1999) .........................................................................10

*Stockton v. Lansiquot*,
  838 F.2d 1545 (11th Cir. 1988) (per curiam) ......................................................16, 19

*Thomas v. Tampa Bay Downs, Inc.*,
  761 So. 2d 401 (Fla. 2d DCA 2000) ....................................................................11, 12

*Top Off. Pros Bus. Servs., Inc. v. JPMorgan Chase Bank, N.A.*,
  No. 1:25-cv-02544 (S.D.N.Y. Mar. 27, 2025) ...........................................................6

# TABLE OF AUTHORITIES

**Page(s)**

*Turner v. Wells*,
  879 F.3d 1254 (11th Cir. 2018) ...........................................................................7, 8, 9, 19

*Vargas v. Quest Diagnostics*,
  2021 WL 4642749 (C.D. Cal. Aug. 19, 2021)...............................................................8

*Watson v. K2 Design Grp., Inc.*,
  2016 WL 11783284 (S.D. Fla. Aug. 9, 2016).............................................................21

*Zikofsky v. Mktg. 10, Inc.*,
  904 So. 2d 520 (Fla. 4th DCA 2005) .........................................................................17

**STATUTES**

12 U.S.C. § 24...................................................................................................................15

§ 655.0323, Fla. Stat. .......................................................................................................15

**OTHER AUTHORITIES**

31 C.F.R. § 501.604 ......................................................................................................2, 10

Fed. R. Civ. P. 56..............................................................................................................7

Oxford English Dictionary Online (3d ed. 2008) ...........................................................8

## INTRODUCTION

This defamation suit raises the *same issues* and revolves around the *same statements* as the defamation claim that this Court correctly rejected in *Monarch Air Group, LLC v. JPMorgan Chase Bank, N.A.*, No. 21-cv-62429-WPD, 2023 WL 4363816 (S.D. Fla. May 12, 2023) (*Monarch I*).   Like the plaintiffs in that case, Jacob Gitman and Sinai Holdings, LLC ("Sinai") argue that JPMorgan Chase Bank, N.A. ("Chase") defamed them when explaining the cancellation of their wire transactions.   In particular, Plaintiffs argue that Chase committed defamation by stating that it cancelled their wires due to "sanctions and/or JPMC internal policy."   But this Court rejected that exact argument in *Monarch I*, holding that the same statement falls within Florida's qualified privilege for common-interest communications.   The same conclusion is appropriate here.   Indeed, the Court cautioned Plaintiffs at the outset of this litigation "against relying on legal theories [it] rejected and evidence [it] found insufficient in *Monarch I*."   Order on Mot. to Dismiss at 11 n.4, Dkt. 32 (Apr. 29, 2024).   Even so, despite extensive discovery, Plaintiffs now rely on the same arguments and evidence that this Court addressed in that prior litigation.   Just as in *Monarch I*, Plaintiffs have zero evidence that Chase acted with a primary motive to harm them, as would be needed to overcome qualified privilege.   And the record makes clear that Chase made its cancellation statement pursuant to standard operating processes that facilitate its compliance with federal anti-money laundering laws, rather than any motive to harm.   There is no basis for defamation liability in this context.

Plaintiffs' defamation claims fail for other reasons as well.   For one, the purportedly defamatory statement is true.   Because Chase declined to process Plaintiffs' transactions pursuant to its internal anti-money laundering policies, it is unambiguously true that Chase cancelled those transactions due to "sanctions *and/or* JPMC internal policies."   Plaintiffs' defamation claims are also barred by *res judicata*, given the obvious overlap between this action and *Monarch I*.   And once Plaintiffs' defamation claims are out of the picture, their tagalong claims for tortious interference and a declaratory judgment inevitably fail too.   For those reasons, this Court should grant summary judgment to Chase on every claim in Plaintiffs' complaint, as it did in *Monarch I*.

## BACKGROUND

### A.    The AML Interdiction List

Chase is a national bank that processes millions of transactions each day.  SUMF ¶¶ 1, 8. Consistent with that its size and scale, Chase has adopted complex practices to facilitate its compliance with a wide range of applicable laws and regulations, including federal anti-money laundering (AML) laws.  *Id.* ¶¶ 6, 7, 8.  As relevant here, those practices include developing an AML Interdiction List ("AML Interdiction List") of entities and individuals for which Chase will not process wire transactions due to the risk that would be entailed.  *Id.* ¶ 9.



When Chase declines to process an electronic transaction with an entity on the AML Interdiction List, it sends a standardized explanation to the financial institution on the other side of the transaction: "WE ARE UNABLE TO EXECUTE YOUR TRANSACTION DUE TO SANCTIONS AND/OR INTERNAL JPMC POLICY" (the "Cancellation Message").  *Id.* ¶ 40. Chase sends approximately 1,200 Cancellation Messages each day.  *Id.* ¶¶ 36, 37.  And along with each message, Chase sometimes adds a statement that "NO OFAC REPORTING WILL TAKE PLACE," or that "NO FURTHER ACTION WILL BE TAKEN."  *Id.* ¶ 41.  This is significant because federal law requires financial institutions to alert the Federal Government when they reject a transaction due to sanctions administered by the Office of Foreign Assets Control ("OFAC").  31

C.F.R. § 501.604(a).  Thus, when Chase states that it neither filed an OFAC report nor took further action, it conveys that Chase cancelled a transaction for reasons other than OFAC sanctions.

**B.      The Interdiction of the Gitmans**

This decision cancelled any wire transfer from or through Chase involving Gitman or Sinai.  *Id.* ¶ 35.  Instead, when Chase was presented with such a wire, it properly reported the standard Cancellation Message:  "WE ARE UNABLE TO EXECUTE YOUR TRANSACTION DUE TO SANCTIONS

AND/OR INTERNAL JPMC POLICY." *Id.* ¶¶ 40, 46.  This litigation centers around Chase's use of that Cancellation Message.

In total, Chase sent the Cancellation Message in connection with 34 different transactions involving Plaintiffs.  *Id.* ¶ 47. Of those transactions, 29 were initiated by the Plaintiffs, and Chase sent the Cancellation Message to the Plaintiffs' bank.  *Id.* ¶ 48. The remaining five transactions were initiated by third parties that tried to wire funds to the Plaintiffs.  *Id.* ¶ 49. For four of those, Chase sent the Cancellation Message to the third party's bank. *Id.* ¶ 50. And because the last transaction involved a Chase customer trying to wire funds to the Plaintiffs, Chase sent the Cancellation Message to that customer directly.  *Id.* ¶ 51. With each Cancellation Message, Chase indicated that no OFAC sanctions were in play by stating either that "NO OFAC REPORTING WILL TAKE PLACE," or "NO FURTHER ACTION WILL BE TAKEN." *Id.* ¶ 52; *supra* at 2.[1]

### C.    The Prior Litigation

In 2021, Monarch and David Gitman—the son of Plaintiff Jacob Gitman—sued Chase for defamation and several related claims.  *See Monarch I*, 2023 WL 4363816, at *2.  Those plaintiffs did not and could not claim that their placement on the AML Interdiction List was unlawful in any way.  Instead, they alleged that Chase defamed them by issuing its standard Cancellation Message — i.e. *the exact same message* at issue in this matter: "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." *Id.*  According to Plaintiffs, this message conveyed that they were subject to "OFAC sanctions." *Id.*

---

[1] There were only three transactions for which Chase referenced "OFAC" in any other capacity.  In one instance, Chase notified a financial institution that it was holding wired funds pending an "OFAC/COMPLIANCE CHECK." *Id.* ¶ 53.  Chase later sent that institution its standard Cancellation Message, adding "NO OFAC REPORTING WILL TAKE PLACE." *Id.* ¶ 54.  In the other two transactions, Chase alerted private parties directly that their transactions with Sinai were under "compliance review." *Id.* ¶ 55.  The subject lines for those messages included the phrase, "SSU OFAC Investigation." *Id.*  One of those parties ultimately received Chase's standard Cancellation Message, as well as the statement that "no further action will be taken." *Id.* ¶ 56.  And the other party terminated its transaction before Chase completed its compliance review, and therefore did not receive a Cancellation Message. *Id.* ¶ 57.

This Court granted summary judgment for Chase, holding that Chase's standardized statements were "clearly" protected by the common-law "qualified privilege." *Id.* at *5.  Under Florida law, the privilege applies to communications about, among other things, "business matters where both parties have a corresponding interest in the matter." *Id.* at *4 (citation omitted).  And when Chase issues a statement to a Chase customer or counterparty explaining why it is refusing to process a financial transaction, both Chase and the customer or counterparty plainly have a business interest in the subject. *Id.*  Accordingly, the qualified privilege applied, and Chase could not be held liable for defamation unless it made the statements "with express malice." *Id.* at *5.

 This Court then held that the *Monarch I* plaintiffs failed to show express malice. *See id.* at *6.  The Court held that express malice requires a "primary motive … to injure the reputation of the plaintiff.'" *Id.* (citation omitted).  But here, Chase issued the Cancellation Message based on its "standard operating processes" to explain "the reasons why [it] was unable to execute the transactions." *Id.*  This Court thus "enter[ed] summary judgment in favor of Chase" on all the plaintiffs' "defamation claims," then rejected their duplicative tortious interference claims under the "single action rule." *Id.*; *see also id.*, Dkt. 277 (denying a later Rule 60(b) motion).

Shortly thereafter, David Gitman and Monarch filed a second lawsuit, *Monarch II*, that "ar[o]se from the same cancelled wire transactions." 2023 WL 11904279, at *1 (S.D. Fla. Oct. 6, 2023).  This Court held that the action was "barred by *res judicata* insofar as it arises from the same cancelled wire transactions forming the basis of *Monarch I*." *Id.* at *3.  And without addressing "whether *res judicata* applie[d]" with respect to the transactions that postdated the prior judgment, the Court dismissed those post-judgment claims "for lack of standing." *Id.* at *8.

### D.    This Lawsuit

Undeterred by the outcomes of the *Monarch* cases, Plaintiffs Jacob Gitman (David's father) and Sinai filed this third action on November 13, 2023. *See* Compl., Dkt. 1.  This action likewise turns on Chase's Cancellation Message: "We are unable to execute your transaction due to sanctions and/or internal JPMC Policy." *Id.* ¶ 33.  And like *Monarch I*, this action alleges that the cancellation message is defamatory and tortiously interferes with business relationships, on the

theory that it falsely ties Plaintiffs to "OFAC sanctions." *Id.* ¶ 59.  Although this Court denied a motion to dismiss those claims, it did so on the ground that the claims should be resolved "on a more complete factual record," such as exists at "summary judgment."  Order on Mot. to Dismiss at 8–9, 11, Dkt. 32 (Apr. 29. 2024); *see also id.* at 11 ("Though Chase may ultimately prevail on the qualified privilege  … , the Court finds dismissal at this stage premature.").

Plaintiffs' Amended Complaint asserts six claims against Chase.  Count 1 alleges that Chase defamed Plaintiffs through the Cancellation Message.  Am. Compl. ¶¶ 71–76, Dkt. 44. Count 2 alleges that Chase slandered Plaintiffs.  *Id.* ¶¶ 77–83.  Counts 3 and 4 allege defamation by implication.  *Id.* ¶¶ 84–95.  Count 5 alleges tortious interference with Plaintiffs' business relationships.  *Id.* ¶¶ 96–101.  And Count 6 seeks a declaratory judgment under the same theories of defamation and tortious interference.  *Id.* ¶¶ 102–06.  Fact discovery began in August 2024.

E.  **Subsequent Developments**

While discovery in this action was ongoing, another Gitman-controlled company, Top Office Pros Business Services, Inc. ("Top Office"), filed a *fourth* related lawsuit.  Compl., *Top Off. Pros Bus. Servs., Inc. v. JPMorgan Chase Bank, N.A.*, No. 1:25-cv-02544 (S.D.N.Y. Mar. 27, 2025) (*Top Office*).  Top Office is registered to the same address as Sinai and Monarch, and Jacob Gitman is its "president."  *Id.* ¶ 6; SUMF ¶ 30.  Top Office's lead claim is that Chase defamed it by stating it could not process the company's wires due to "SANCTIONS AND/OR//INTERNAJPMC [sic] POLICY."  Compl. ¶ 22, *Top Office.*  Given the similarity, Chase moved to transfer *Top Office* from New York to this District.  *See* Dkt. 10, *id.* The magistrate judge indicated he is inclined to grant that motion.  *See* Hearing Tr. at 45:3–4, *id.*, Dkt. 34 (May 8, 2025).[2]

_____

2 ███████████████████████████████████████████████

## STANDARD OF REVIEW

This Court should grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to the "genuine," it must be possible for "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is well settled that summary judgment is appropriate when the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

### I.   PLAINTIFFS' DEFAMATION CLAIMS FAIL.

This Court should grant summary judgment to Chase on Plaintiffs' defamation claims. To be actionable in defamation, a statement must be: (1) published; (2) false; (3) made with knowledge or reckless disregard as to the falsity on a matter concerning a public figure, or at least negligently on a matter concerning a private person; (4) actually damaging; and (5) defamatory. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). Plaintiffs' defamation claims fail, first and foremost, because the Cancellation Message is *true*. Chase did cancel Plaintiffs' wires based on an "Internal JPMC Policy"—*i.e.*, its policy of cancelling transactions involving parties on its AML Interdiction List. SUMF ¶¶ 9, 35. And whether the Cancellation Message is viewed in isolation or its full context, no reasonable recipient could understand it to assert that Plaintiffs have been sanctioned.

The Cancellation Message is also qualifiedly privileged. Chase made that statement in private messages to counterparties in business transactions for the purpose of explaining why their wire transactions were cancelled. There is no colorable argument or any evidence that Chase acted with express malice, which would have required a "primary motive" to injure Plaintiffs. *Lozada v. Hobby Lobby Stores, Inc.*, 702 F. App'x 904, 911 (11th Cir. 2017) (per curiam). And discovery has confirmed that the challenged statements fall squarely within this Court's privilege analysis in *Monarch I*. The decision in *Monarch I* thus controls here.

### A.      The Cancellation Message Was Not False.

A defamation action cannot succeed without a "false statement of fact."  *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984); *see Turner*, 879 F.3d at 1262.  Here, Plaintiffs contend that Chase's statements were false because they wrongly accuse Plaintiffs of being subject to sanctions.  But that is simply not what the statements said.  The Cancellation Message states: "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy."  SUMF ¶ 40.  The Message thereby conveyed that the basis for cancellation was "Sanctions" *or* "Internal Policy" (or both).  And since Chase cancelled the relevant transactions based on its internal AML policies, *see id.* ¶¶ 9, 35, the Message was true.

This conclusion tracks the ordinary meaning of the phrase "and/or."  *See* Oxford English Dictionary Online (3d ed. 2008) (defining "and/or" to denote "that the items joined by it can be taken either together or as alternatives").  When a speaker says, "X and/or Y is true," the speaker expresses uncertainty about whether X is true, whether Y is true, or whether both are true.  But despite that uncertainty, the speaker's *overall statement* is true—and unambiguously so—in three circumstances: if X is true *or* if Y is true *or* if both are true.  For example, if a person says, "I went to the office on Saturday and/or Sunday," that statement is true if the person went to the office on Saturday *or* Sunday *or* both.  Likewise, when Chase says that a transaction was cancelled based on sanctions "and/or" its internal policies, that statement is true if the statement was cancelled for sanctions *or* internal policies *or* both.

The fact that the phrase "and/or" recognizes some uncertainty does not mean that the phrase itself is ambiguous.  Indeed, courts have recognized that the phrase "and/or" bears a specific meaning—namely, that "X and/or Y means X or Y or both."  *Castle Key Ins. Co. v. Wooden Family Tr.*, 321 So. 3d 346, 354 n.5 (Fla. 1st DCA 2021) (citation omitted); *see also Vargas v. Quest Diagnostics*, 2021 WL 4642749, at *2 (C.D. Cal. Aug. 19, 2021) (similar).  Courts have also held that the meaning of the phrase is "unambiguous."  *Mariposa Assocs., Ltd. v. Regions Bank*, 2015 WL 1478652, at *8 (S.D. Fla. Mar. 31, 2015); *see also, e.g.*, *Brigati v. Worcester Polytechnic Inst.*, 2021 WL 9098214, at *5 (S.D. Fla. Nov. 2, 2021) (holding that a contract's phrase "350 Master

and/or Golf memberships" was "clear and unambiguous").  Similarly here, this Court should hold that Chase's Cancellation message was unambiguous.  And because Chase undisputedly cancelled the relevant transactions due to an "Internal JPMC Policy," the Court should hold that the Cancellation Message was unambiguously *true*.

Plaintiffs cannot avoid this conclusion by arguing that they were defamed by implication.  Under Florida law, defamation by implication occurs "when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication." *Jews for Jesus*, 997 So. 2d at 1106.  This case "does not fit squarely into either of [those] categories." *Compass iTech, LLC v. eVestment All., LLC*, 2016 WL 10519027, at *19 (S.D. Fla. June 24, 2016) (citation omitted).  By saying that Plaintiffs' transactions were cancelled due to sanctions "and/or" its internal policies, Chase did not juxtapose several "literally true statements … to create a false impression." *Id.*  It instead made one true statement.  And no "reasonable person" could read that statement to assert that Plaintiffs were sanctioned. *Turner*, 879 F.3d at 1270.  Indeed, since the Cancellation Message states that Chase cancelled Plaintiffs' transactions due to sanctions *or* its internal policies *or* both, it would be unreasonable to infer that Plaintiffs were sanctioned.

That inference would be especially unreasonable because the Cancellation Message never mentions Plaintiffs.  Instead, the statement refers to each underlying transaction, telling recipients: "We are unable to execute *your transaction* due to sanctions and/or internal JPMC Policy."  SUMF ¶ 40 (emphasis added).  This statement could thus convey that a transaction failed due to sanctions on a country or an industry, rather than on Plaintiffs themselves. *Id.* ¶¶ 42, 43.  To argue that the Cancellation Message is defamatory, Plaintiffs must therefore make two leaps of logic: *First*, they must assume that the Message attributes the cancellation to sanctions.  And *second*, they must assume that the referenced sanctions were *on them*.  This approach fails because parties may not "build inference upon inference in order to find defamatory meaning." *Church of Scientology of Cal. v. Cazares*, 638 F.2d 1272, 1288 (5th Cir. 1981).

Finally, the "context" of the Cancellation Message confirms that it did not create a defamatory impression. *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999). As discussed, Chase paired each Cancellation Message with a statement that "NO OFAC REPORTING WILL TAKE PLACE," or "NO FURTHER ACTION WILL BE TAKEN." SUMF ¶ 52. Federal law requires banks to report when they reject a transaction due to OFAC sanctions. 31 C.F.R. § 501.604(a). So by telling recipients of the Cancellation Message that it made no such report, Chase conveyed that it did not cancel the transactions due to those sanctions. S*ee supra* at 2. For that reason as well, this Court should thus hold that Plaintiffs cannot prove falsity—"the *sine qua non* for recovery in a defamation action." *Hallmark Builders*, 733 F.2d at 1464. Their defamation claims accordingly fail.

### B. The Cancellation Message Was Qualifiedly Privileged.

The defamation claims fail for the additional reason that the Cancellation Message is qualifiedly privileged. As this Court has explained, "[a] communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable." *See Monarch I*, 2023 WL 4363816, at *3 (quoting *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984)). Those conditions are satisfied here. And although litigants may overcome qualified privilege by showing "express malice," which requires an "intent to injure," *id.* at *5, Plaintiffs cannot make that showing in this case. To the contrary, the undisputed facts make clear that Chase views the Cancellation Message as a truthful and important part of the AML compliance process.

### 1. Chase Satisfies the Essential Elements for Qualified Privilege.

Florida law provides a "qualified privilege against defamation claims for communications made in good faith between persons with a common interest in the subject matter of the communications." *Regions Bank v. Kaplan*, 2021 WL 4852268, at *11 (11th Cir. Oct. 19, 2021). "The essential elements of qualified privilege are: (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or

duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1264 (S.D. Fla. 2004) (citing *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d DCA 2000)).   This privilege applies regardless of whether the purportedly defamatory statement is false.  *See Demby v. English*, 667 So. 2d 350, 353 (Fla. 1st DCA 1995).  And when a defendant satisfies the other elements of the privilege, "good faith is presumed."  *Monarch I*, 2023 WL 4363816 at *4 (citing *Nodar*, 462 So. 2d at 810); *see also Thomas*, 761 So. 2d at 404 ("Once it is determined that [the statement] is qualifiedly privileged, it becomes cloaked with a legal presumption of good faith.").

This Court previously held that an identical cancellation message satisfied those elements, *see Monarch I*, 2023 WL 4363816, at *4–5, and the same conclusion is appropriate here.  As this Court explained, Chase has an interest in communicating to its customers and counterparties "the reason why a transaction cannot be completed."  *Id.* at *4.  Chase's customers and counterparties have a "corresponding interest" in knowing why their transactions failed.  *Id.*; *see also* SUMF ¶¶ 7, 61.   Chase sent its Cancellation Message only on the occasions when it was cancelling a transaction.  *Monarch I*, 2023 WL 4363816, at *4; SUMF ¶¶ 40–41.  And Chase sent the message in a targeted manner—namely, "through private messages" to the parties who were involved in the cancelled transactions.  *Monarch I*, 2023 WL 4363816, at *4; *see* SUMF ¶¶ 37, 48, 50–51, 59–60.

These undisputed facts show that Chase made the Cancellation Message with a proper purpose, on a proper occasion, and in a proper manner.  *See Lefrock v. Walgreens Co.*, 77 F. Supp. 3d 1199, 1202 (M.D. Fla. 2015) (finding those elements satisfied when a statement was "limited in scope" to the subject matter of the parties' corresponding interest, made at the time the interest arose, and was "not disclosed to additional persons").  That is enough to presume Chase's good faith as a matter of law.  *See Nodar*, 462 So. 2d at 810.  And "good faith may [also] be inferred by the fact that the statements were made pursuant to Chase's standard operating processes." *Monarch I*, 2023 WL 4363816, at *4; *see* SUMF ¶¶ 7, 40–41, 44.  The Cancellation Message thus falls within Florida's qualified privilege for common-interest communications.  Accordingly, the burden shifts to Plaintiffs to show that Chase acted with express malice, which they cannot do.

## 2. Chase Did Not Act With Express Malice.

Plaintiffs cannot show that Chase made the Cancellation Message with "express malice," as needed to overcome qualified privilege. Under Florida law, a defendant acts with express malice only "when his primary motive in making [a] statements [is] the intent to injure the reputation of the plaintiff.'" *Lozada*, 702 F. App'x at 911 (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)). The plaintiff "bears the burden of proving" this "intention to injure." *Thomas*, 761 So. 2d at 404 (citation omitted); *Nodar*, 462 So. 2d at 810–11. And as this Court explained in *Monarch I*, a plaintiff cannot meet that burden by showing mere "knowledge of falsity." 2023 WL 4363816, at *5 (collecting cases).

In this case, there is zero evidence that Chase sent the Cancellation Message with any intention to injure Plaintiffs—let alone a "primary motive" to do so. *Lozada*, 702 F. App'x at 911. The undisputed facts instead show that Chase made the statements pursuant to its standard operating processes, which exist to facilitate its compliance with the federal AML laws. *See supra* 2–3; SUMF ¶¶ 7, 40–41, 44. In particular, Chase uses the Cancellation Message to explain the cancellation of all transactions that are impeded by its AML Interdiction List. SUMF ¶ 42. ██████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████ Chase uses standard messages, like this one, to promote uniformity and efficiency, expedite data entry, and facilitate structured reporting—objectives that are essential to its compliance with the wide range of applicable laws and regulations. *Id.* ¶¶ 38–45. And Chase personnel understood the Cancellation Message to accurately describe the reasons for cancelling the transactions at issue here. *Id.* ¶ 58. The record thus shows that Chase sent the Cancellation Message in good faith and with no evidence of express malice.

This Court's decision in *Monarch I* confirms that conclusion. There, this Court found that there was no express malice because Chase made the relevant statements "pursuant to [its] standard operating processes;" "the statements reflected the reasons why Chase was unable to execute the transactions;" and "the statements did not mention either Plaintiff by name." *Monarch I*, 2023 WL

4363816, at *5.   The same is true here.   *See supra*.   Plaintiffs have introduced no evidence whatsoever that Chase acted with the primary intent to injure them, despite having two bites at the apple in discovery (one in this case, and another in *Monarch I*).   And the only witness to testify on this issue stated the obvious:   Chase did not send the Cancellation Message to harm either Sinai or Gitman.   SUMF ¶ 64.   For all those reasons, this Court should hold that the Cancellation Message is qualifiedly privileged, and thus grant summary judgment to Chase on all of Plaintiffs' defamation claims.   *See Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1543 (M.D. Fla. 1993), *aff'd sub nom.*, 15 F.3d 1097 (11th Cir. 1994) (granting summary judgment on a qualified privilege defense because the plaintiff "failed to provide [the] Court with any evidence of express malice").

### C.      Plaintiffs Cannot Prove Slander.

All of the arguments above equally foreclose Plaintiffs' slander claim, which also fails for an independent reason.   Slander involves "defamatory spoken words, whereas libel pertains to defamatory written statements."   *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 n.11 (S.D. Fla. 2006).   Consistent with that distinction, Plaintiffs have pleaded slander (Counts 2 and 4) separately from libel (Counts 1 and 3).   But despite extensive discovery, Plaintiffs have ***no evidence of any spoken or oral statements*** regarding the reason for their cancelled transactions.   Indeed, in response to an interrogatory that asked for the "oral statements" that Plaintiffs deem defamatory, Plaintiffs "direct[ed] Chase to the declaration of Dennis Klemming."   SUMF ¶ 62.   And that declaration, in turn, does not describe any oral statement that could plausibly be defamatory.   *See id.* ¶ 63.   Thus, Plaintiffs cannot prove an "essential element" of slander, and that failure provides yet another reason for granting summary judgment on Counts 2 and 4.   *Celotex*, 477 U.S. at 323.

## II.      PLAINTIFFS' REMAINING CLAIMS ALSO FAIL.

Plaintiffs' tortious interference and declaratory judgment claims fail for substantially the same reasons as their defamation claims.   This Court should thus grant summary judgment to Chase on those claims, thereby ending the Gitman family's third suit regarding their interdiction.

### A.      Plaintiffs Lack a Viable Claim of Tortious Interference.

Plaintiffs' tortious interference claim is barred by the "single action rule," which prohibits plaintiffs from bringing "multiple actions" that "arise from the same publication." *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). "When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014). The rule exists to "prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Id.* (citation omitted).

The "single action" rule applies here because Plaintiffs' tortious interference claim "is based on the same underlying facts and communications as their failed defamation claims." *Monarch I*, 2023 WL 4363816, at *6. As in *Monarch I*, the "thrust" (*id.*) of Plaintiffs' tortious inference claim is that Chase harmed Plaintiffs by "falsely telling" third parties that it "cancelled their business transactions … due to Sanctions." Am. Compl. ¶ 99. Plaintiffs admit this overlap by pleading that "Florida's single-action rule bars [their] recovery [of damages] for Chase's tortious interference." *Id.* ¶ 101. And that admission—although apparently crafted to support Plaintiffs' request for injunctive relief—is fatal to their claim. Because Plaintiffs' defamation claims fail, the single action rule means that their tortious interference claim fails as well. *See Masvidal v. DOJ*, 2010 WL 11606119, at *13 (S.D. Fla. Mar. 29, 2010) (holding that a tortious interference claim was "subject to dismissal" as "duplicative of [a] failed defamation claim"); *Boehm v. Am. Bankers Ins. Grp., Inc.*, 557 So. 2d 91, 93 (Fla. 3d DCA 1990) (holding that Florida's qualified privilege foreclosed a tortious interference claim).

To the extent that Plaintiffs' tortious interference claim also challenges their placement on the AML Interdiction List, that effort likewise fails. To start, the Florida legislature enacted a statute that concerns when banks may "cancel … services." § 655.0323(2), Fla. Stat. But that statute lacks a private right of action, *id.* § 655.0323(5), and that omission bars Plaintiffs from

challenging their interdiction through a common law claim.  *See Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) ("Plaintiff cannot manipulate the common law to state a private, statutory cause of action where none exists.").  Moreover, federal law preempts any state-law remedy that "prevents or significantly interferes" with a national bank's "powers." *Cantero v. Bank of Am., N. A.*, 602 U.S. 205, 209 (2024) (citation omitted).  Those powers include the ability to decline transactions for the purpose of managing risk, including risk that arises from AML regulations.  *See* 12 U.S.C. § 24 (granting "all such incidental powers as shall be necessary to carry on the business of banking").  And since Chase interdicted Plaintiffs pursuant to its AML polices, *see supra* at 3, any state-law injunction against that interdiction would prevent Chase's use of its risk-management power, triggering preemption.

In any event, Plaintiffs lack a colorable challenge to their interdiction.  To prove tortious interference, Plaintiffs bear the burden of proving an "intent to damage the[ir] business relationship[s]." *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005).  But here, the record makes clear that Chase interdicted Plaintiffs "pursuant to [its] standard operating processes," *Monarch I*, 2023 WL 4363816, at *5; *see also* SUMF ¶¶ 6–18, 19–34, as opposed to "greed" or an effort to "secure a business advantage," *Alphamed*, 391 F. Supp. 2d at 1165.  ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████Given those undisputed facts, Plaintiffs cannot possibly show that their interdiction was "unjusti[ed]" or "unreasonabl[e]."  Am. Compl. ¶ 99.  And that failure, too, dooms their tortious inference claim.  *See Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1093 (Fla. 4th DCA 2009) ("The recovery on the tortious interference count fails because the [] 'interfering' conduct was not unjustified, a required element of the tort.").

For all those reasons, Plaintiffs lack a viable tortious inference claim, and this Court should grant summary judgment on that claim to Chase.

### B.      Plaintiffs Are Not Entitled to a Declaratory Judgment.

That leaves only Plaintiffs' claim under the Declaratory Judgment Act.  Through that claim, Plaintiffs seek a declaration that Chase's statements are "defamatory," that Chase lacks "qualified privilege," and that Chase's conduct "tortiously interferes" with their business.  Am. Compl. ¶ 106.  But each of those theories fails for the reasons set forth above.  Plaintiffs' "derivative" declaratory judgment claim thus fails as a matter of law, and this Court should grant summary judgment on the claim to Chase.  *Eaton v. Principal Life Ins. Co.*, 2022 WL 972452, at *4, *9 (M.D. Fla. Mar. 31, 2022) (granting summary judgment on a "derivative" declaratory judgment claim).

### III.    PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA.

This Court could instead resolve this lawsuit on the ground that it is barred by the *res judicata* effect of *Monarch I*.  "The general principle behind the doctrine of *res judicata* is that a final judgment by a court of competent jurisdiction is absolute and puts to rest every justiciable, as well as every actually litigated, issue."  *Albrecht v. State*, 444 So. 2d 8, 11–12 (Fla. 1984).  Under Florida law, this doctrine "applies when four 'identities' exist: (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of the parties, and (4) identity of the quality of the person for or against whom the claim is made."  *Stockton v. Lansiquot*, 838 F.2d 1545, 1546 (11th Cir. 1988) (per curiam) (citation omitted).  Each of those four elements is satisfied here.

*First*, Plaintiffs sue for the "same recovery" that was sought in *Monarch I*.  *Id.*  In that case, Monarch and David Gitman sought "damages and injunctive relief" in connection with Chase's use of the Cancellation Message.  *See* Second Am. Compl. at 1 & ¶¶ 26–48, *Monarch I*, Dkt. 78 (Dec. 20, 2022).  Plaintiffs seek the same relief in this case.  *See* Am Compl. ¶¶ 71–101.  And although this case includes a claim for declaratory relief that was absent from *Monarch I*, that derivative addition is no obstacle to *res judicata*.  *See Diaz v. Moore*, 861 F. Supp. 1041, 1047 n.18 (N.D. Fla. 1994) ("[A] party's request for additional relief in the second action does not take the first judgment out of the scope of res judicata." (citation omitted)).

*Second*, this case raises the same causes of action as *Monarch I*.  For the purpose of claim preclusion, "two cases are really the same claim or cause of action" if they "arise[] out of the same nucleus of operative fact, or [are] based upon the same factual predicate." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (internal quotation marks omitted).  That condition is satisfied here because *Monarch I*, like this case, arose from (i) Chase's placement of the Gitmans and their affiliated entities on the AML Interdiction List and (ii) Chase's subsequent use of the Cancellation Message.  In addition, when determining whether two cases present the same cause of action, courts properly ask where there is "substantial overlap" in their "witnesses and proofs." *Desisto v. City of Delray Beach*, 2014 WL 11444095, at *6 (S.D. Fla. Sept. 10, 2014). And as shown at length above, there is such overlap here.  *See supra* 7–9, 11–12.

*Third*, the undisputed facts show that Plaintiffs here (Jacob Gitman and Sinai) are in privity with the plaintiffs in *Monarch I* (David Gitman and Monarch).  Privity exists where the party to the original suit is "so closely aligned with [the plaintiff's] interests as to be his virtual representative." *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d DCA 2017).  Applying that standard, courts have recognized that a "familial relationship" favors granting "preclusive effect[] [to] a prior adjudication." *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) (per curiam). Ownership or control of a corporation can also establish privity.  *See Zikofsky v. Mktg. 10, Inc.*, 904 So. 2d 520, 525 (Fla. 4th DCA 2005) ("[A] ruling against a corporation in a final judgment is binding in later litigation upon individuals who fully participated in the earlier lawsuit through their control of the corporation"); *Cohen v. United States*, 924 F. Supp. 1164, 1169 (S.D. Fla. 1996) ("[A plaintiff] exercised control over the companies' affairs and was, therefore, in privity with his companies.").  So can the use of the same attorneys, which tends to show parties' alignment of interests and strategy.  *See Schmidt v. Sabow*, 331 So. 3d 781, 786 (Fla. 2d DCA 2021); *see also 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1290 (5th Cir. 1991).  And as especially relevant here, a court may infer privity from evidence of parties' "tactical maneuvering." *Jaffree*, 837 F.2d at 1467 (citation omitted).

The record makes clear that David Gitman and Monarch were "closely aligned" with Jacob Gitman and Sinai. *Pearce*, 219 So. 3d at 965. Plaintiff Jacob Gitman is both an owner of Sinai and the father of David Gitman. SUMF ¶¶ 4, 5. Jacob Gitman was previously a minority shareholder of Monarch; he was a managing member of that company between 2008 and 2013; and he ultimately transferred that managerial role to his son David. *Id.* ¶¶ 68–69, 72. At present, Jacob Gitman and Monarch are co-plaintiffs in two defamation suits: one in a Florida state court and another in a New Hampshire state court. *Id.* ¶¶ 71, 73. In both of those suits, Jacob Gitman and Monarch are jointly represented by the same law firm (Stok Kon + Braverman). *Id.* ¶¶ 71, 73. And the same law firm represents the plaintiffs in *Monarch I*, both Plaintiffs in this litigation, and the plaintiff in the related New York litigation (*i.e.*, Top Office). *Id.* ¶¶ 71, 73; *see supra* at 6 (describing the New York litigation).

The New York litigation in particular shows "tactical maneuvering" by Jacob Gitman and his affiliated companies. *Jaffree*, 837 F.2d at 1467. As discussed above, Top Office is a Florida corporation that is owned and operated by Jacob Gitman. *Top Office* Compl. ¶ 24. It is also registered to the same address as Sinai and Monarch. SUMF ¶ 3, 29–30. But despite those Florida ties, Top Office opted to file its lawsuit in the Southern District of New York. *See supra* 5. The Complaint in that litigation challenges the same Cancellation Message as both this case and *Monarch I*. *See Top Office* Compl. ¶ 22. The Complaint also seeks declaratory relief that would benefit Jacob Gitman, Sinai, and Monarch. *See id.* ¶ 53 (requesting a declaratory judgment that "neither [Top Office], Jacob Gitman, *nor any company associated with Jacob Gitman* are subject to any sanctions" (emphasis added)). And Top Office even "proposed" to file a "Motion for [a] Preliminary Injunction" that would include "its declaratory judgment claim," Letter Mot. at 1–2, *Top Office*, Dkt. 21 (Apr. 30, 2025).[3] Those litigation decisions reflect a blatant attempt by a

---

[3] Following a pre-motion conference, the Magistrate Judge stated that it "would be more efficient to resolve [Chase's] pending motion to transfer before considering a motion for a preliminary injunction, should [Top Office] decide to file one." Order, No. 1:25-cv-02544, Dkt. 32 (May 8, 2025). In light of that decision, Top Office has not yet moved for a preliminary injunction.

Gitman-controlled entity to end-run both this litigation and *Monarch I*, all to secure prospective relief *for Jacob Gitman* that this Court has declined to give.  That tactical maneuvering confirms that Jacob Gitman is in privity with his affiliated companies, including Monarch.

      **Fourth**, there is no doubt the parties in *Monarch I* vigorously litigated their claims.  The test for the "quality of the persons" is "whether the parties in the [prior] action had the incentive to adequately litigate the claims in the same character or capacity" as the parties here.  *Stockton*, 838 F.2d at 1546–47.  As discussed, the prior Gitman plaintiffs had every incentive to effectively litigate *Monarch I. See supra* at 17–18.  Indeed, the *Monarch I* plaintiffs made the same arguments (through the same counsel) as Plaintiffs make here; they continue to press their position on appeal; and another Gitman-affiliated entity is pressing the same claims in New York.  The final "identity" for claim preclusion is therefore met.  *Stockton*, 838 F.2d at 1546.

      For those reasons, this case satisfies every element for *res judicata* under Florida law.  The doctrine of *res judicata* thus bars every one of Plaintiffs' claims, and summary judgment should accordingly be entered for Chase.

## IV.   PLAINTIFFS CANNOT PROVE DAMAGES.

      Chase is further entitled to summary judgment on the independent ground that Plaintiffs cannot prove damages.  Proof of damages is an essential element of claims for defamation and tortious interference.  *See Turner*, 879 F.3d at 1262 (defamation); *Palm Beach Cnty.*, 13 So. 3d at 1094 (tortious interference).  Indeed, although Plaintiffs may argue that the Cancellation Message was defamation *per se*, the message looks nothing like the prior statements that Florida courts have found to meet that standard.  *See Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021) ("[A] defamatory statement is of a per se "character when, 'considered alone without innuendo,' [it] contain[s] (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (4) to injure a person in his trade or profession." (citation omitted)).  For those reasons, the failure to prove actual damages would be an additional reason for rejecting their claims.

Plaintiffs cannot prove damages for defamation because their alleged injuries stem not from any allegedly false statement but from the decisions of other banks to independently end their banking relationships with them. ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ These undisputed facts foreclose any argument that Chase started a "run" on Plaintiffs' businesses.

Plaintiffs' lead theory of damages also fails on its own terms. Plaintiffs contend that the Cancellation Message caused Sinai's primary investor (the Prudent Group) to request the redemption of $120 million in capital infusions—a request Plaintiffs were unable to fulfill. *Id.* ¶¶ 74–76. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Plaintiffs' argument that the Cancellation Message cost them $120 million in capital infusions is obviously false.

In any event, Plaintiffs' effort to quantify their damages from the interactions with the Prudent Group depends on an expert report that this Court should deem inadmissible. As Chase will show in its forthcoming *Daubert* motion, Philip Shechter conceded that he based his valuation on financial records that he obtained from Sinai, and that those records were likely unreliable. *Id.* ¶ 81. The expert's "unquestioning reliance" on that information—and his failure to conduct "an independent analysis of the numbers, figures, or other data contained therein—"renders his opinions unreliable." *Watson v. K2 Design Grp., Inc.*, 2016 WL 11783284, at *6 (S.D. Fla. Aug. 9, 2016) (citation omitted). The expert's report should thus be "exclude[d] … in its entirety." *Id.*

**CONCLUSION**

For these reasons, this Court should grant summary judgment to Chase.

Dated: September 12, 2025

Respectfully submitted,

*/s/ Eliot Pedrosa*

Eliot Pedrosa, Esq.
Fla. Bar No. 182443
Taylor Cavaliere Jones, Esq.
Fla. Bar No. 1040247
JONES DAY
Brickell World Plaza
600 Brickell Avenue, Suite 3300
Miami, FL, 33131
Telephone: 305-714-9700
Facsimile: 305-714-9799
Email: epedrosa@jonesday.com
Email: tcavaliere@jonesday.com

*Attorneys for Defendant JPMorgan Chase, N.A.*

Anthony J. Dick (*pro hac vice*)
JONES DAY
51 Louisiana Ave. NW
Washington, DC, 20001-2113
Tel.: 202-879-3939
Fax: 202-626-1700
Email: ajdick@jonesday.com

Amanda L. Dollinger (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: (212) 326 3475
Facsimile: (212) 755 7306
adollinger@jonesday.com

Andrew J. Clopton (*pro hac vice*)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, MI, 48226-4438
Telephone: 313-733-3939
Facsimile: 313-230-7997
Email: aclopton@jonesday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2025, a true and correct copy of the foregoing Motion for Summary Judgment was filed using the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Eliot Pedrosa*
Eliot Pedrosa
*Attorney for Defendant*