UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 0:23-cv-62159-WPD

SINAI HOLDINGS, LLC,
and JACOB GITMAN,

     Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,

     Defendant.

_____/

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFFS' EXPERT PHILIP SHECHTER

Pursuant to Federal Rule of Evidence 702, Defendant JPMorgan Chase Bank, N.A. ("Chase"), by and through its undersigned counsel, hereby moves to exclude the expert opinions of Philip Shechter offered by Plaintiffs as expressed in his report of June 19, 2025. Concurrently, Chase also moves the Court to exclude Shechter's "Updated Report" of September 16, 2025. In support of this Motion, Chase states as follows:

### INTRODUCTION

Plaintiffs Sinai Holdings, LLC ("Sinai") and Jacob Gitman claim they suffered damages because Chase defamed them when explaining that their wire transactions were cancelled due to "sanctions and/or JPMC internal policy." Their lead theory of damages is that this cancellation message caused Sinai's primary investor (the Prudent Group) to request the redemption of $120 million in capital infusions—a request Plaintiffs were unable to fulfill. *See* Chase's Statement of Material Facts in Support of Motion for Summary Judgment ("SUMF"), ECF No. 187, ¶¶ 74–76.

1

While this argument is obviously false,[1] Plaintiffs nevertheless retained an expert witness to quantify these damages.

Plaintiffs have proffered an expert report from Philip Shechter that attempts to quantify the damages Plaintiffs purportedly suffered as a result of Chase's cancellation messages. *See* Exhibit A, Expert Report of Philip Shechter ("Shechter Rep.").[2] To demonstrate these alleged damages, Shechter, an accountant, "calculated the value of 100% of the equity of Sinai at 12/31/2020 (the end of the year in which the alleged defamation began) . . . and as of 12/31/2024." *Id.* ¶ 17. He opines that Sinai's equity value at the end of 2020 was approximately $113 million, and that Sinai's equity value at the end of 2024 was $0. *Id.* ¶¶ 19, 26. However, Shechter's calculations are inadmissible as they fail to meet the requisite standard under the Federal Rules of Evidence, *Daubert*, and its progeny. Under this standard, expert witness testimony must be both reliable and helpful. Shechter's opinions are neither, and should thus be excluded.

Plaintiffs are apparently aware of the serious deficiencies that plague Shechter's report. In a last-ditch effort to redeem the reliability of Shechter's testimony, Plaintiffs served an "updated" Shechter report on Chase on September 16, 2025—well after discovery had closed, after Shechter admitted to issues with his analysis in his deposition, and after the parties submitted their motions for summary judgment. Because it is untimely, the Court should also exclude that "Updated Report" under Federal Rule of Civil Procedure 37(c)(1) as discussed below.

---

[1] *See* Chase's Motion for Summary Judgment, ECF No. 186, at 20. ███████████
███████████████████████████████████████████████████████████
████████████████████████ Chase's SUMF, ¶¶ 77–78. ████████████
███████████████████████████████████████████████████████████
███████████████████ *Id.* ¶¶ 79–80.

[2] Plaintiffs served an "updated" Shechter report on September 16, 2025. All references to Shechter's report are to his original report unless otherwise indicated and except at Section III, *infra*, which concerns this "Updated Report."

**LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582 (1993). Under *Daubert*, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). To fulfill this obligation, district courts must engage in a rigorous inquiry to determine whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The Eleventh Circuit refers to these requirements as "qualification," "reliability," and "helpfulness." *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence. *Rink*, 400 F.3d at 1292.

**ARGUMENT**

Plaintiffs have failed to meet the requisite standard for admission of Shechter's expert opinions. His opinions are not reliable because they are based on Plaintiffs' internally prepared financial documents—that are rife with discrepancies and inconsistencies—and which Shechter did nothing to verify. And his opinions are not helpful, as they entirely fail to provide any connection between his conclusions and the facts of this case. As detailed below, Shechter's opinions should be excluded.

### I.   Shechter's Original Opinions Are Not Reliable.

Shechter opines that Sinai was worth approximately $113 million at the end of 2020 and was worth $0 at the end of 2024. Ex. A, Shechter Rep. ¶¶ 19, 26. In support of this assertion, the Shechter Report relies on Sinai's internally prepared financial documents without providing any verification or analysis of the financial information therein. But Sinai's financial documents included conflicting data that are inconsistent with the financial statements Shechter relied on. *See, e.g.*, Exhibit B, Deposition of Philip Shechter, July 23, 2025 ("Shechter Dep."), at 141:12–142:16, 144:10–17, 145:24–149:14. *See also* Exhibit C, Expert Report of Gene Deetz ("Deetz Rep."), at 23–35. Thus, Shechter's opinions violate one of the key principles of Federal Rule of Evidence 702—they are not reliable.

To determine reliability, the Court must assess whether Shechter's "methodology underlying [his] testimony is scientifically valid." *Frazier*, 387 F.3d at 1261–62. "When considering an expert's opinion of damages . . . a district court must keep in mind that while damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference." *R & R Int'l, Inc. v. Manzen, LLC*, 2010 WL 3605234, at *9 (S.D. Fla. Sept. 12, 2010) (Rosenbaum, Mag. J.) (internal quotations and alterations omitted). "'The proof may be indirect and it may include estimates based on assumptions, so long as the assumptions rest on adequate data.'" *Id.* (quoting *Lehrman v. Gulf Oil. Corp.*, 500 F.2d 659, 668 (5th Cir. 1974)). Importantly, however, "a mathematical result is only as reliable as the underlying data set used." *Watson v. K2 Design Grp., Inc.*, 2016 WL 11783284, at *6 (S.D. Fla. Aug. 9, 2016) (Bloom, J.).

Shechter's original opinions "are based entirely on information he obtained from Plaintiff[s]." *Id. See* Ex. A, Shechter Rep. ¶ 7, 18; Ex. B, Shechter Dep., 118:3–7, 119:19–21.

These documents were provided to Shechter upon his request for "financially oriented documents." Ex B, Shechter Dep., 175:22–24. Notably, there are myriad inconsistencies in these financial records that Shechter fails to analyze or even acknowledge in his report. For example, Sinai's revenue decreases significantly from 2021 to 2024 (ultimately to $0), while Sinai's expenses continue to increase relative to revenue—without any explanation as to why Sinai kept spending as its revenue went down. *See* Ex. C, Deetz Rep. ¶ 77. Additionally, the internally prepared financial information relied upon in the Shechter Report shows an increase in debt of over $100 million from 2020 to 2024 that is not associated with any corresponding increase in assets. *See id.* ¶ 78. Neither the internally prepared financials nor Shechter's report address what these significant borrowings were used for. *See id.* ¶ 80. Meanwhile, there is a corresponding decrease in equity, indicating that these borrowed funds were distributed out of Sinai and used for other than Sinai purposes and resulting in a $100 million reduction in Sinai's value. *See id.* ¶ 78. There are also glaring differences between financial statements Sinai provided to a valuation company and Sinai's consolidated financial statements and the financial statements Shechter relies on in his report. *See id.* ¶¶ 84, 95. For example, the set of 2021 financial statements Sinai provided to said valuation company reflect more than $100 million in additional assets and equity than the set of 2021 financial statements upon which Shechter relied. *See id.* ¶ 84.

Further, Shechter "did not review the depositions of [Jacob Gitman, Allen Licht, or Ekaterina Poroshkina] in preparing his report." *Watson*, 2016 WL 11783284, at *6. *See* Ex. B, Shechter Dep. at 13:19–14:7. And when he eventually reviewed the deposition transcripts, Shechter realized there was "a lot of information [he] didn't have," much of which was "financial information" produced in discovery in this case—that is, the very information he would need to assess alleged damages to Plaintiffs. Ex. B, Shechter Dep. at 14:1–3. The set of information on

which Shechter based his report, then, was both unreliable and incomplete, and he did not realize this until after he had already issued his report. *See id.* at 120:3–14, 176:11–12.

When confronted with the inconsistencies in the documents he was provided, Shechter admitted that it "calls into question whether they're reliable." *Id.* at 148:11–12. He "relies on management's books and records unless [he's] told the management is not reliable," and that he "didn't realize this was an issue until [he] saw the depositions, saw the questions, [and] read Mr. Deetz's response." *Id.* at 120:16–121:14. In other words, Shechter "conceded that he did nothing to ensure the reliability or accuracy of the information he used." *Watson*, 2016 WL 11783284, at *6.

Shechter's "'unquestioning reliance' on this information, done without engaging in an independent analysis of the numbers, figures, or other data contained therein, 'renders his opinions unreliable.'" *Id.* (quoting *First Premium Servs., Inc. v. Best W. Int'l, Inc.*, 2004 WL 7203535, at *3 (S.D. Fla. Jan. 8, 2024)); *see also JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, 1998 WL 175888, at *7 (E.D. Pa. 1998) (finding insufficient factual basis for expert's opinion when expert relied on tax returns he believed to be trustworthy because they were prepared by an independent accountant and when expert "did not attempt to verify the information in the tax return"); *JRL Enters., Inc. v. Procorp Associates, Inc.*, 2003 WL 21284020, at *8 (E.D. La. 2003) (finding expert opinion unreliable where expert performed "no independent analysis of the numbers given him" by the plaintiff); *Otis v. Doctor's Associates, Inc.*, 1998 WL 673595, at *4 (N.D. Ill. 1998) (excluding expert opinion where no independent analysis of the reliability or factual accuracy of the figures used was conducted). Plaintiffs cannot possibly prove that Shechter's methodology is "reliable," as Shechter "himself appears to doubt . . . the adequacy of the data set he relies upon." *Watson*, 2016 WL 11783284, at *8; Ex. B, Shechter Dep. at 121:3–14.

In fact, Shechter issued another report well after discovery closed. In this "Updated Report," Shechter explains that "[u]pon reading the Deetz Report, I became aware of additional financial statements, which I had not previously considered in my report dated June 19, 2025. In addition, on August 5, 2025, I attended Mr. Deetz's deposition via Zoom." Exhibit D, "Updated Report" of Philip Shechter ("Updated Shechter Rep."), ¶ 4. His updated report, Shechter says, is "[b]ased upon [his] review of the additional information that Mr. Deetz considered, and [Mr. Deetz's] testimony on August 5, 2025." *Id.* ¶ 5. The report alters Shechter's original valuation of Sinai as of December 2020 downward by approximately $4 million and adjusts his previously calculated equity value of Sinai by the same. *Id.* ¶¶ 26, 29. It also changes what Shechter qualified as acceptable comparison values that could be used to valuate Sinai through a market-based comparison approach. Previously, Shechter opined that "similar valuations" existed in the range of $83 million and $106 million, but his "Updated Report" says those figures are now $55 million and $196 million. *Id.* ¶ 38. The report further introduces two new valuation figures for Sinai as of December 2021, including one calculated using the discount cash flow model (which Shechter did not use in his original report) based on Mr. Deetz's rebuttal opinion that Shechter should have considered such a calculation. *Id.* ¶ 23.

By issuing the "Updated Report," with its contradictions to the original report, Shechter all but admits that the "underlying method he used to obtain the data supporting his [original] analysis" is unreliable. *Watson*, 2016 WL 11783284, at *6. As such, he also admits that his original report should be "exclude[d] … in its entirety."

## II.    Shechter's Original Opinions Are Not Helpful.

While Shechter opines that the value of Sinai decreased by approximately $113 million between the end of 2020 and the end of 2024, he does not attribute the purported change in value

to any cause. In fact, he specifically notes that his "opinions do not address causation." Ex. A,

Shechter Rep. ¶ 18. Confusingly, Shechter also states that his report's intended purpose is "to

demonstrate the damage caused by JPMC." *Id.* ¶ 17. These caveats and lack of clarity surrounding

causation render Shechter's opinions unhelpful and provide another ground for their exclusion.

For expert testimony to satisfy the helpfulness requirement, it must assist the trier of fact

and "concern[ ] matters that are beyond the understanding of the average lay person." *Edwards v.*

*Shanley*, 580 Fed. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d 1262). "[A] trial

court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not

adequately explained." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d

1092, 1111 (11th Cir. 2005) (internal quotations omitted). To be appropriate, a "fit" must exist

between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299

(11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591).

Shechter was retained "to demonstrate the damage caused by JPMC debanking[3] and

interdicting Plaintiffs from sending and receiving funds in the normal course of its business and

issuing defamatory statements to Sinai and Gitman's resources worldwide." Ex. A, Shechter Rep.

¶ 17. However, his report presents no analysis that the purported change in value was due to any

alleged conduct by Chase, whether due to allegedly defamatory cancellation messages or

otherwise. Shechter's "factual basis" for Sinai's purported damages is "inadequately explained"—

both because his calculations are based on unreliable financial records (*see* supra) and because he

fails to provide any link between the facts of the case and his conclusions. *See Shanley*, 580 Fed.

App'x at 823 (quoting *Cook*, 402 F.3d at 1111). In fact, Shechter testified that he "normally

---

[3] Shechter includes this reference to "debanking" despite the fact that Plaintiffs bring no claims relating to "debanking" or account closure. Account closure is not relevant to this case. *See* Discovery Orders, ECF Nos. 150, 176 (appeal pending).

do[es]n't testify in defamation claims, because as a CPA it's difficult to quantify a damage of a defamation." Ex. B, Shechter Dep. at 52:12–15. As Shechter readily recognizes, his accounting expertise does not properly "fit" the facts of this defamation case. *See McDowell*, 392 F.3d at 129. But that does not stop Shechter from using Plaintiffs' allegations as a backdrop for his opinions— noting that Sinai's value "exceeded $113 million at, or around, the inception of the allegedly wrongful debanking and interdiction of Sinai by JPMC" and that the value of Sinai "dropped to zero by 12/31/2024 after the company lost business relationships, had its accounts at various financial institutions closed, and lost its source of financing, allegedly *because of JPMC's actions*." Ex. A, Shechter Rep. ¶¶ 29–30 (emphasis added). These "imprecise opinion[s]" would not assist the jury; rather, they "easily could serve to confuse the jury." *See Frazier*, 387 F.3d at 1266.

Furthermore, not only is Shechter unable to attribute his calculated damages to Chase's actions, but he is unable to attribute the damages to *any* cause. He testified that his "valuation doesn't apply in allocation causation issue, so there's no way to apply it to a specific causation." Ex. B, Shechter Dep. at 199:16–18; *see also id.* at 55:2–24, 199:9–200:19. Nor does he apportion his calculated damages. He does not attempt to identify whether any of the reduction in revenue and therefore value of Sinai is related to any other factor or cause. *See id.* at 199:20-200:19. Thus, the trier of fact is completely unable to use Shechter's opinions to glean the source of these damages, whether it be the actions of Sinai's lenders, *see id.* at 197:3–199:18, the actions of Chase, another source such as COVID-19, or a combination of multiple sources. Because Shechter's original opinions do not address causation or mitigating factors, they do not "assist[] the trier of fact" "to understand the evidence or to determine a fact in issue," namely, whether Chase's cancellation messages in any way contributed to Sinai's purported reduction in value. *See Rink*,

9

400 F.3d at 1292. Plaintiffs have failed to carry their burden to establish that Shechter's testimony would assist the jury, and his original opinions should be excluded.

## III.    Shechter's "Updated Report" Should Also Be Excluded.

The Court should also exclude Shechter's "Updated Report" as untimely under Federal Rule of Civil Procedure 37(c)(1) and as inadmissible under Federal Rule of Evidence 702.

### A.   The Untimeliness of Shechter's "Updated Report" Warrants Its Exclusion.

The original discovery deadline in this matter was July 11, 2025. ECF No. 38. Plaintiffs asked the Court for a two-month extension on that very date. *See* ECF No. 174. The Court denied that request on July 31, but granted Plaintiffs an extension until August 13 instead, requiring substantive pretrial motions by September 12. *Id.* On September 16, after both parties had submitted motions for summary judgment—and well after discovery had closed—Plaintiffs served an "Updated Report" from Shechter on Chase. More than a mere "update," the report renders new calculations based on methodologies Shechter did not use in his original report and renders a new valuation for Sinai as of December 31, 2021. It is apparent that this "update" is actually an untimely attempt to correct defects in Shechter's analysis that were exposed at his deposition. This tactic to salvage his opinions was an improper second bite at the apple and was untimely, as any expert disclosures, including Shechter's, were due on August 13.

Parties must provide expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). And parties must "supplement or correct [their] disclosure[s] or response[s] in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). Accordingly, "[c]ourts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense." *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13–23074–CIV, 2014 WL 3764126, at *1 (S.D. Fla. July 30, 2014) (Goodman,

Mag. J.). In fact, "[w]hen a party fails to comply with Rule 26, the sanction of exclusion is *automatic and mandatory* unless the sanctioned party can show that its violation was either justified or harmless." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *5 (S.D. Fla. June 2, 2016) (Goodman, Mag. J.) (emphasis added); *U.S. v. Marder*, 318 F.R.D. 186, 190 (S.D. Fla. 2016) (Moore, J.) (Rule 37(c)(1) authorizes courts to exclude an expert's testimony for failure to comply with Rule 26(a) unless the failure is "substantially justified or is harmless."). And here, Plaintiffs cannot show that their untimeliness is "substantially justified" or "harmless." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824 (11th Cir. 2009) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party.")

Indeed, no "substantial justification" exists for Plaintiffs' untimeliness because Shechter had ample time to revise his original report while discovery remained open. Shechter says that upon reading Mr. Deetz's report (dated July 11, 2025), he realized it contained additional information that he had not considered. *See* Ex. D, Updated Shechter Rep. ¶ 5. In fact, Shechter admitted during his deposition that there was reason to question whether his original report's calculations were reliable. *See* Ex. B, Shechter Dep., 148:11–12. And his deposition occurred on July 23—three weeks before the discovery deadline of August 13. Shechter clearly had enough time to revise his original report.

Although an expert may "supplement" a report under Federal Rule of Civil Procedure 26(e), that rule "is not a device to allow a party's expert *to engage in additional work*, or to annul opinions or *offer new ones* to perfect a litigating strategy." *Apple Inc. v. Corellium, LLC*, No. 19-81160-CV, 2021 WL 2940264, at *2 (S.D. Fla. July 13, 2021) (Matthewman, Mag. J.) (emphasis added). Instead, Rule 26(e) exists to allow "for the narrow purpose of correcting inaccuracies or

11

adding information that *was not available* at the time of the initial report." *Id.* (emphasis added); *Caterpillar*, 2016 WL 3102225, at *6 (same). Along with impermissibly providing new opinions and calculations, Shechter's "Updated Report" relies on information that *was* available to him when rendering his original report but that he intentionally disregarded. *Compare* Ex. D, Updated Shechter Rep. ¶ 23 ("I have also valued Sinai using . . . information reflected in the Stonebridge report.") *and* Ex. D, Updated Shechter Rep. ¶ 42 (using "information provided to Stonebridge" to render new calculations for a 2021 valuation) *with* Ex. B, Shechter Dep., 170:20-171:18 ("[C]ounsel told me to ignore the projections and ignore the Stonebridge report and just rely on the audited financials.") *and* Ex. B, Shechter Dep., 175:18-176:4 ("*At the beginning*, we got the Stonebridge documents.") (emphasis added).

Further, any supplementation pursuant to Rule 26(e) must still abide by a court's scheduling order when one is in place. *See* Fed. R. Civ. P. 26(a)(2)(D), 26(e)(1)(A), 26(e)(1)(B); *Vercher v. Omni Hotels Mgmt. Corp.*, No. 3:20-CV-1388-MMH-PDB, 2022 WL 1555518, at *4 (M.D. Fla. May 17, 2022) ("When 'the court has entered a scheduling order, the court's deadlines control,' and whether a disclosure complied with the 'general default deadlines' [of Rule 26] is 'irrelevant.'") (quoting *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017)); *Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, No. 20-82102-CIV, 2022 WL 17947395, at *2 (S.D. Fla. Dec. 21, 2022) (Matthewman, Mag. J.) ("Courts have broad discretion to exclude untimely-disclosed expert reports even ones designated as 'supplemental.'") Thus, Shechter's untimely update is not "substantially justified," even by Rule 26(e).

Nor is Shechter's "Updated Report" "harmless" to Chase. Trial in this matter is soon approaching, opening motions for summary judgment have been filed (including arguments on Plaintiffs' purported damages), and discovery has closed. As such, the case's juncture forecloses

any practical or meaningful ability for Chase to challenge Shechter's substantive changes such that the untimeliness of his "Updated Report" is, in fact, harmful. *Cf. Guevara v. NCL (Bahamas) Ltd.,* 920 F.3d 710, 719 (11th Cir. 2019) (upholding the striking of a supplemental expert report submitted "five weeks after he received the [counter party's] report, over a month after the close of discovery, and three days after the district court's deadline for dispositive and Daubert motions"); *Caterpillar,* 2016 WL 3102225, at *8 (an updated expert declaration was not harmless where it was filed after the close of discovery, a summary judgment filing, and a *Daubert* motion); *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11-20723-CIV, 2012 WL 2319089, at *3 (S.D. Fla. June 15, 2012) (Goodman, Mag. J.) (discussing the undue prejudice that would result to a defendant served with a supplemental expert report past the discovery cutoff).

To reiterate, Shechter's "updates" are not minor. They add entirely new opinions concerning Sinai's valuation and they incorporate calculations and methodologies Shechter did not use in his original report despite having ample opportunity to do so. *See* Ex. D, Updated Shechter Rep. ¶¶ 30-36, 39-44, 48. Had Plaintiffs provided these opinions while discovery was still open, Chase would have had the opportunity to at least ask Shechter about them in a deposition. Although this case remains in a pre-trial posture, that fact does not render the untimeliness of Shechter's "Updated Report" harmless. Re-opening discovery to allow for Chase to rebut Shechter's "updates" would reward Plaintiffs' gamesmanship and disregard for court-ordered deadlines while inviting others to do the same. As Judge Goodman noted, "permitting variations to an expert's disclosure under the guise of supplementation 'would be to invite the proverbial fox into the hen house.'" *Caterpillar,* 2016 WL 3102225, at *9 (quoting *Keenver v. U.S.*, 181 F.R.D. 639, 641 (D. Mont. 1998)). It would invite "the experienced expert [to] simply 'lie in wait' so as to express his opinions only after [the opposing party] discloses hers." *Id.* (modification in original) (cleaned up).

13

Rule 26(e) is simply not a license for Plaintiffs' gamesmanship, and the Court should not sanction Plaintiffs' use of it as such. *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) ("'[A] party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report.'") (quoting *Caterpillar*, 2016 WL 3102225, at \*6). The prejudice to Chase resulting from the untimeliness of Shechter's "Updated Report" is clear. It cannot be "harmless."

Because the untimeliness of Shechter's "Updated Report" is neither "substantially justified" nor "harmless," its "exclusion is automatic and mandatory," pursuant to Federal Rule of Civil Procedure 37(c)(1).  *Caterpillar*, 2016 WL 3102225, at \*5.

B.   Shechter's "Updated Report" Is Also Excludable Under Rule 702.

The "Updated Report" is also excludable under Federal Rule of Evidence 702.  Although Chase has not had the opportunity to depose Shechter about the "Updated Report" because of its untimeliness, as discovery is closed, on its face, the report must be excluded for the same reasons as Shechter's original report.

First, the "Updated Report" again appears to be "based entirely on information he obtained from Plaintiff[s]." *Watson*, 2016 WL 11783284, at \*6; *see* Ex. D, Updated Shechter Rep. ¶¶ 21, 22 ("My initial report was based on Counsel's request . . . . We were provided additional financial statements . . . . and counsel has requested I calculate the value of 100% of Sinai at 12/31/2021."); Ex. B, Shechter Dep. at 118:3–7, 119:19–21. Shechter's repeated blind reliance on Plaintiffs' counsel renders the methodology behind his "Updated Report" unreliable and flawed, as discussed *supra*, at 4-6.

Second, Shechter's "Updated Report" remains unhelpful to the trier of fact. To recall, expert testimony must "concern[ ] matters that are beyond the understanding of the average lay person." *Edwards*, 580 Fed. App'x at 823. The "Updated Report" again says Shechter was retained

"to demonstrate *the damage caused* by JPMC debanking and interdicting Plaintiffs from sending and receiving funds in the normal course of its business and issuing defamatory statements to Sinai and Gitman's resources worldwide." Ex. D, Updated Shechter Rep. ¶ 21 (emphasis added). Yet, Shechter again says that his "opinions do not address causation." *Id.* ¶ 24. True, the "Updated Report" provides certain valuations of Sinai at certain points in time, but it completely omits any expert analysis on what caused, or even contributed to, a change in those valuations. Indeed, Shechter makes no attempt to identify whether any of the reduction in Sinai's revenue (and therefore business value) is related to any factor or cause other than Chase's interdiction.

Because Shechter's "Updated Report" is the byproduct of his blind reliance on information passed on to him by Plaintiffs' counsel and renders no expert opinion about what caused a decline in Sinai's business value, it cannot help the trier of fact understand the issues of the case. Admitting the "Updated Report" would perniciously muddle the waters, and it should be excluded.

## CONCLUSION

For these reasons, the Court should exclude the opinions of Plaintiffs' expert Philip Shechter as expressed in both reports.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

I HEREBY CERTIFY that that the undersigned counsel has conferred with counsel for Plaintiffs and that Plaintiffs oppose the relief sought herein.

Date: October 6, 2025                            Respectfully submitted,

Anthony J. Dick (*pro hac vice*)                 */s/ Eliot Pedrosa*
JONES DAY                                        Eliot Pedrosa, Esq.
51 Louisiana Ave. NW                             Fla. Bar No. 182443
Washington, DC 20001-2113                        Taylor Cavaliere Jones, Esq.
Telephone: 202-879-3939                          Fla. Bar No. 1040247
Facsimile: 202-626-1700                          Ephraim D. Abreu, Esq.
Email: ajdick@jonesday.com                       Fla. Bar No. 1019147
                                                 JONES DAY
Andrew J. Clopton (*pro hac vice*)               600 Brickell Ave, Suite 3300
JONES DAY                                        Miami, FL 33131
150 West Jefferson, Suite 2100                   Telephone: (305) 714-9700
Detroit, MI 48226-4438                           Facsimile: (305) 713-9799
Telephone: 313-733-3939                          Email: epedrosa@jonesday.com
Facsimile: 313-230-7997                          Email: tcavaliere@jonesday.com
Email: aclopton@jonesday.com                     Email: eabreu@jonesday.com

Amanda L. Dollinger (*pro hac vice*)             *Attorneys for Defendant*
JONES DAY                                        *JPMorgan Chase Bank, N.A.*
250 Vesey Street
New York, NY 10281-1047
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: adollinger@jonesday.com

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this October 6, 2025, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

/s/ Eliot Pedrosa
Eliot Pedrosa

*Attorney for Defendant*
*JPMorgan Chase Bank, N.A.*