UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-62159-CIV-DIMITROULEAS

SINAI HOLDINGS, LLC, and JACOB GITMAN,

Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.

## **OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Jacob Gitman and Sinai ("Plaintiffs")' Motion for Partial Summary Judgment [DE 184/192 (sealed)] and Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase")'s Motion for Summary Judgment [DE 186/190 (sealed)].

The Court has reviewed Plaintiffs' Statement of Facts [DE 185/192 (sealed)] ("PSOF"), Defendant's Amended Response [DE 220/230 (sealed)], and Plaintiffs' Reply [DE 221] as well as Defendant's Statement of Material Facts in support it its Motion ("DSOF") [DE 187/191 (sealed)], Plaintiffs' Response in Opposition [DE 207/216 (sealed)], Plaintiffs' Response Statement of Facts ("PRSOF") [DE 208/217 (sealed)], Defendant's Reply in Support of its Motion [DE 224], and Defendant's Reply Statement of Facts [DE 225/229 (sealed)], and the record as a whole. The Court is fully advised in the premises.

Upon careful review of the briefing and the record, the Court grants Defendant's motion and denies Plaintiffs' motion.

1

## I.   FACTUAL BACKGROUND

Chase is a national bank. DSOF ¶ 1; PSOF ¶ 1.[1]  Plaintiff Sinai Holdings LLC ("Sinai") is a holding company that has no independent business operations and derives its cash flow from investment companies in the healthcare industry. DSOF ¶ 2; PRSOF ¶ 2. Plaintiff Jacob Gitman ("Gitman") is a member, manager, and owner of Sinai. DSOF ¶ 4; PRSOF ¶ 4.

In mid-July of 2020, Chase's Global Payments Anti-Money Laundering Operating Committee ("AMLOC") placed Sinai and Gitman on the Anti-Money Laundering Interdiction List entities and individuals for which Chase will not process wire transactions. *See generally* AC [DE 44]; DSOF ¶¶ 9, 33; PRSOF ¶¶ 9, 33. PSOF ¶ 70; DRSOF ¶ 70. As a result of Plaintiffs' placement on the Interdiction List, Chase cancelled at least 34 of Plaintiffs' transactions. DRSOF ¶ 73. Upon cancellation, Chase sent a cancellation message to the financial institution on the other side of the transaction and/or to the counterparties. PSOF ¶ 19; DRSOF ¶ 19. The messages varied slightly, but almost all contained the language, "We are unable to execute your transaction due to sanctions and/or internal JPMC policy" (the "Cancellation Message"). DSOF ¶ 40; PRSOF ¶ 40. Chase sometimes added a statement that "no OFAC[2] reporting will take place," or that "no further action will be taken." DSOF ¶ 41; PRSOF ¶ 41. Some messages also directed the recipient to obtain "details of any direct or indirect affiliation/subsidiary/parent company relationship with Sinai Holdings, LLC." Also, some included the subject line "SSU[3] OFAC Investigation - Request for

---

[1] Parties' statements of material facts, and their responses and replies, include various citations to portions of the record. Any citations herein to the statement of fact and response thereto should be construed as incorporating those citations.
[2] OFAC refers to the Office of Foreign Assets Control.
[3] "SSU" refers to the Sanctions Services Utility, an internal department at Chase. AC ¶ 27.

Details," and some stated that the transaction is "under review for a possible sanction or JPM Risk Policy Issue" PSOF ¶¶ 74–76.[4]

As related to Plaintiffs, Chase sent this message thirty-six times in connection with thirty-four transactions. DSOF ¶¶ 46, 47; PRSOF ¶¶ 46, 47. Twenty-nine of those transactions were initiated by the Plaintiffs, so Chase sent the Cancellation Message to the Plaintiffs' bank. DSOF ¶ 48; PRSOF ¶ 48. The remaining five were initiated by third parties that tried to wire funds to the Plaintiffs. DSOF ¶ 49; PRSOF ¶ 49. For four out of the five remaining transactions, Chase sent the Cancellation Message to the third party's bank. DSOF ¶ 50; PRSOF ¶ 50. Because the last transaction involved a Chase customer trying to wire funds to the Plaintiffs, Chase sent the Cancellation Message to that customer directly. DSOF ¶ 51; PRSOF ¶ 51.

In their Amended Complaint ("AC") [DE 44] Plaintiffs allege that Chase made false statements about Plaintiffs to third parties, including that it could not complete transactions to Plaintiffs "due to Sanctions" relating to a "OFAC investigation," despite knowing that Plaintiffs were not on the OFAC sanctions list. AC ¶¶ 51, 72. Plaintiffs allege Chase's statements significantly harmed Plaintiffs' business relationships. AC ¶ 52. Plaintiffs bring six claims against Chase: Count I – Defamation (Libel); Count II – Defamation (Slander); Count III – Defamation by Implication (Libel); Count IV – Defamation by Implication (Slander); Count V – Tortious Interference with Business Relationships; Count VI – Declaratory Judgment. *See* AC.

Through the instant motions, Chase moves for summary judgment as to all of Plaintiffs' claims. *See* [DE 186/190 (sealed)], and Plaintiffs move for summary judgment on their defamation Counts I–IV. They ask this Court to enter injunctive relief on Counts V and VI and reserve the issue of damages for trial.

---

[4] Defendant does not dispute that some messages contained this language but challenges the number of times this language was included. *See* DRSOF ¶¶ 74–76.

## II.    PROCEDURAL BACKGROUND

The Court is very familiar with this action. Though filed in 2023, this action really originates in 2021[5] with the filing of a prior, related case. The Court will briefly detour into this history and offer the reader some perspective on the long shadow of litigation that precedes the instant motions.

On October 29, 2021, Monarch Air Group, LLC ("Monarch") and David Gitman filed an action against Chase. *See Monarch Air Group, LLC d/b/a Mercury Jets, et al.  v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD ("*Monarch I*").[6] In *Monarch I*, Monarch and David Gitman asserted claims against Chase for defamation and tortious interference arising from alleged defamatory statements made to Monarch's customers and David Gitman's transferees in connection with cancelled wire transactions to Monarch from or through Chase accounts. *See Monarch I*, [DEs 1, 21, 78].

On May 12, 2023, this Court granted summary judgment in favor of Chase and entered a final judgment. *See Monarch I*, [DE's 205, 206].  As to the defamation claims, this Court held that Chase's statements to its account holders regarding why Chase was unable to execute the transactions were qualifiedly privileged, and the plaintiffs failed to offer any evidence Chase acted with express malice, as required to overcome the privilege. *See Monarch I*, [DE 205] at pp. 5–11. This Court also found that the plaintiffs' tortious interference claim was barred by Florida's "single action rule" because it was based on the same underlying facts and communications as the failed defamation claims. *See Monarch I*, [DE 205] at pp. 11–13. Extensive post-judgment motion

---

[5] State court litigation precedes even this date, with Jacob Gitman and Monarch Air Group, LLC bringing an  action for defamation in Florida against Grant Stern for his involvement with a blog post titled "Under Trump, Witness Protection has been infiltrated by the Russian Mafia." *See Monarch Air Group, LLC and Jacob Gitman v. Grant Stern*, 2020-021551-CA-01 (Fla. 11th Cir. Ct. Oct. 6. 2020).

[6] The Court takes judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al.  v. JPMorgan Chase Bank, N.A.*, Case No. 21-cv-62429-WPD.

practice occurred in that case, and the Court's final judgment and post judgment rulings are now pending on appeal.

On April 26, 2023, Monarch and David Gitman filed a second lawsuit against Chase ("*Monarch II*"). [7] *See Monarch II*, Case No. 23-60770-WPD. [DE 1]. On October 6, 2023, the Court dismissed that lawsuit. *See Monarch II*, [DE 17]. In the October 6, 2023 Order, the Court found that the claims in *Monarch II* were "barred by *res judicata* insofar as [those claims] arise[] from the same cancelled wire transactions forming the basis of *Monarch I*," but found that "whether res judicata applies with respect to Plaintiffs claims that Chase has continued to cancel, reject, and/or dishonor wire and ACH transactions" was a closer issue. *See Monarch II*, [DE 17] at pp. 6–7. Nevertheless, because the Court found that the plaintiffs lacked standing for their claims, the Court found dismissal appropriate. *See Monarch II*, [DE 17] at p. 7.

On November 13, 2023, Plaintiffs Sinai and Jacob Gitman (David's father) filed a *third* action, the instant lawsuit, against Chase, apparently based on the same allegedly defamatory statement that was at issue in *Monarch I*: "We are unable to execute your transaction due to sanctions and/or internal JPMC Policy." *See* [DE 1] at ¶¶ 4, 33. Chase filed its first Motion to Dismiss [DE 19] a month later, based in part on claim preclusion grounds. The Court declined to dismiss the action on issue or claim preclusion grounds, finding the issue of privity between the instant Plaintiffs and the plaintiffs in *Monarch I*—a necessary element to show preclusive effect—was a question of fact that was better determined on a more complete record. *See* [DE 32] p. 8.

---

[7] The Court takes judicial notice of all the pleadings and orders in *Monarch Air Group, LLC d/b/a Mercury Jets, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 23-cv-60770-WPD.

### III.    STANDARD OF REVIEW

Turning to the instant cross motions. Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26–27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the nonmoving party.  *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  The

Court also must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.

## IV.  DISCUSSION

The Court will first address whether this action is barred by res judicata, given the grant of summary judgment in Chase's favor in *Monarch I. See Monarch I* [DEs 205, 206]. Then, the Court will address the merits of the Parties' arguments. Ultimately the Court finds res judicata applies to those statements that were made before the entry of judgment in *Monarch I*, and that in the alternative, Chase is entitled to judgment on the merits as a matter of law.

### A.  Res Judicata

The doctrine of res judicata precludes re-litigation of issues in a later action that were or could have been raised in a previous action in which a final judgment on the merits has been issued. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, n.6 (1982); *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Allen v. McCurry*, 449 U.S. 90 (1980); *Baptiste v. Commission of Internal Revenue*, 29 F.3d 1533, 1539 (11th Cir. 1994). "The general principle behind the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is absolute and puts to rest every justiciable, as well as every actually litigated, issue." *Albrecht v. State*, 444 So. 2d 8, 11–12 (Fla. 1984). Res judicata is intended to release parties from the cost and vexation of multiple lawsuits, prevent inconsistent decisions concerning the same claims, and encourage reliance on previously adjudicated claims. *Allen*, 449 U.S. at 93; *Parkland Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).

"For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation

omitted); *see also CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1337 (11th Cir. 2017) ("[F]ederal common law adopts the state rule of collateral estoppel to determine the preclusive effect of an earlier judgment of a federal court that exercised diversity jurisdiction."). Thus, because this Court exercised diversity jurisdiction in rendering its judgment in *Monarch I*, and exercises diversity jurisdiction again in this action, Florida law applies.

Under Florida law, claim preclusion, or res judicata—which Chase asserts—applies where there is: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made." *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004). All elements are met here.

### i.   Identity of the Thing Sued For

First, Plaintiffs sue for the "same recovery" that was sought in *Monarch I*. In that case, Monarch and David Gitman sought "damages and injunctive relief" in connection with Chase's use of the Cancellation Message. *See Monarch I*, [DE 78] ¶¶ 26–48. Plaintiffs seek the same relief in this case. *See* AC [DE 44] ¶¶ 71–101. And although this case includes a claim for declaratory relief that was absent from *Monarch I*, that addition does not alter the identity of the thing sued for. "Time and again, the courts have expressly rejected the proposition, advanced by [Plaintiffs] here, that a claimant may avoid the res judicata prohibition by changing either the relief requested or the theory under which the claim is made." *Pelphrey-Weigand v. Weigand*, 283 So. 3d 822, 827 (Fla. 2d DCA 2019); *see also Diaz v. Moore*, 861 F. Supp. 1041, 1047 n.18 (N.D. Fla. 1994) (finding the first two elements of res judicata are satisfied "a party's request for additional relief in the second action does not take the first judgment out of the scope of res judicata.") (citation omitted). The first prong is met.

ii.    *Identity of the Cause of Action*

The test for the "identity of the causes of action" prong is whether "the facts or evidence necessary to maintain the suit are the same in both actions." *Wurtzebach v. Flooring Depot FTL, Inc.*, 384 So. 3d 251, 256 (Fla. 4th DCA 2024) (quoting *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005)); *Youngblood v. Taylor*, 89 So. 2d 503, 505 (Fla. 1956) "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *Jaffree v. Wallace*, 837 F.2d 1461, 1469 (11th Cir. 1988) (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986)).  Res judicata "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'" *Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir. 1984).

This prong is partially met here. The facts essential to maintain both actions are mostly the same. Both actions turn on Chase's Cancellation Message: "We are unable to execute your transaction due to sanctions and/or internal JPMC Policy." *Sinai*, AC [DE 44] ¶ 37; *Monarch I*, SAC [DE 78] ¶ 15–16, [DE 205].  And both actions are based upon the same legal theory: that the Cancellation Message was defamatory and falsely stated Plaintiffs were subject to "OFAC sanctions." *See generally, id.*  Likewise, Chase mounts the same defense—that the statements were true, and even if they were not true, they were qualifiedly privileged, and Plaintiffs have not shown express malice. Chase relies on similar materials in support of these defenses. The "substantial overlap" in the "witnesses and proofs" of both actions compel the conclusion that the identity of the action is the same. *Desisto v. City of Delray Beach*, 2014 WL 11444095, at *6 (S.D. Fla. Sept. 10, 2014).

However, Plaintiffs argue that the facts needed to prove Plaintiffs' causes of action are distinct from those in *Monarch I* because the defamatory messages at issue here were not previously at issue as they had not been sent. The Court has reviewed the message log. *See* [DE 191-14]. It appears that only five messages at issue in this case postdate the judgment in *Monarch I*. And those messages are materially the same in terms of content. So at least with respect to those messages that predate the filing of the *Monarch I* case, "both suits 'could have been' initially pursued [] without any variation in the presentation of facts or evidence." *Stockton v. Lansiquot*, 838 F.2d 1545, 1546 (11th Cir. 1988) (quoting *Albrecht v. State*, 444 So.2d 8, 12 (Fla. 1984)). Regarding those messages that postdate the final judgment in the *Monarch I* action, it is true that "defamatory statements made after the filing of *[Monarch I]* can form the basis of a new defamation claim" because "each communication of a defamatory statement is a separate actionable tort." *Stinnett v. Delta Air Lines, Inc*., No. 6:22-CV-431-WWB-RMN, 2023 WL 10409980, at *7 (M.D. Fla. May 9, 2023), *report and recommendation adopted*, No. 6:22-CV-431-WWB-RMN, 2023 WL 10409981 (M.D. Fla. June 22, 2023); *Five for Ent. S.A. v. El Cartel Records, Inc.*, 725 F. App'x 793, 797 (11th Cir. 2018) ("under Florida law, each communication of the same defamatory matter . . . is a separate and distinct publication, for which a separate cause of action arises." (citation and internal quotation marks omitted)). Thus, summary judgment on Plaintiff's defamation claims on *res judicata* grounds is appropriate, but only to the extent the defamation claim is based on statements made before the grant of summary judgment in *Monarch I*.

*iii.    Identity of the Persons and Parties to The Action*

Florida courts "have not strictly adhered to the identity of parties requirement in all cases when invoking the doctrines of res judicata and collateral estoppel." *West v. Kawasaki Motors Mfg. Corp., U.S.A.*, 595 So. 2d 92, 94 (Fla. 3d DCA 1992); *see also Stockton*, 838 F.2d at 1546 (noting that "it is not necessary there be an exact identity of parties"). To be in privity with a party to an earlier lawsuit, "one must have an interest in the action such that she will be bound by the final judgment as if she were a party." *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d DCA 2017); *Stogniew v. McQueen*, 656 So. 2d 917, 920 (Fla. 1995); *Gonzalez v. Fed. Nat'l Mortg. Ass'n*, 860 F. App'x 693, 694 (11th Cir. 2021). "The question whether a party's interests are virtually representative of the interests of a nonparty is one of fact for the [district] court." *Jaffree*, 837 F.2d at 1467 (quoting *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1124 (5th Cir. 1987)).

The undisputed facts show that Plaintiffs here—Jacob Gitman and Sinai—are in privity with the plaintiffs in Monarch I—David Gitman and Monarch. Jacob Gitman is the father of David Gitman, *see* DSOF ¶¶ 4, 5; PRSOF ¶¶ 4, 5, which tends to show privity. *See e.g.*, *Jaffree*, 837 F.2d at 1467 (noting that "familial status" is "an important factor when assessing the preclusive effects of a prior adjudication."). Moreover, Jacob was previously a minority shareholder and managing member of Monarch; Jacob ultimately transferred that managerial role to his son David. *Id.* ¶¶ 68–69, 72. Ownership or control of a corporation also tends to establish privity. *See Zikofsky v. Mktg. 10, Inc.*, 904 So. 2d 520, 525 (Fla. 4th DCA 2005) ("[A] ruling against a corporation in a final judgment is binding in later litigation upon individuals who fully participated in the earlier lawsuit through their control of the corporation"); *McGregor v. Provident Trust Co. of Philadelphia,* 119 Fla. 718, 162 So. 323 (1935); *Cohen v. United States*, 924 F. Supp. 1164, 1169 (S.D. Fla. 1996) (the plaintiff "exercised control over the companies' affairs and was, therefore, in privity with his

11

companies."). Additionally, Monarch and Sinai are registered to the same address, along with twenty-three other corporate entities. DSOF ¶¶ 29–30; PRSOF ¶¶ 29–30. Finally, Plaintiffs use the "same counsel" in both cases—Stok Kon + Braverman—which also tends to show privity by virtue of parties' alignment of interests and strategy. *Schmidt v. Sabow*, 331 So. 3d 781, 786 (Fla. 2d DCA 2021).

Based upon the foregoing and the Court's familiarity with the *Monarch I* and *Monarch II* actions, Court finds that Jacob Gitman, David Gitman, Monarch, and Sinai are all working in very close connection; their interests in this litigation, and in general, are completely aligned. This connection is also reinforced by Plaintiffs' assertions throughout the briefing that the alleged defamation of one entity had the effect of defaming the other, related entities. *See e.g.* Plaintiffs' Mtn. [DE 184/192 (sealed)] ("Chase's OFAC Sanctions Statements were understood by third parties as targeting Gitman and Sinai personally—even in cases where Sinai's subsidiaries were individually named or Gitman was not explicitly mentioned. This perception arose directly from Sinai's corporate structure and Gitman's central role in funding, overseeing, and managing all subsidiaries."); PRSOF ¶ 46 ("the message was sent over 80 times in connection with other entities affiliated with Gitman and Sinai. Given that Sinai was a holding company the slanderous implications of the message were attributed to Plaintiffs."). Moreover, Jacob Gitman and Monarch were co-plaintiffs in a related defamation suits in state court, the statements at issue which, Plaintiffs assert, partially (and improperly) formed the basis of the Chase's decision to interdict Plaintiffs here.[8] Accordingly "there is no reason to think—and none has been supplied" that Plaintiffs' interests "would have diverged in any way" from those Plaintiffs in *Monarch I. Martinez*

---

[8] *See e.g.*, *Monarch Air Group, LLC and Jacob Gitman v. Grant Stern*, 2020-021551-CA-01 (Fla. 11th Cir. Ct. Oct. 6. 2020).

*v. Mkt. Traders Inst., Inc.,* 757 F. App'x 815, 818 (11th Cir. 2018). The privity exception to the mutuality requirement applies here.

<blockquote>iv.   *Identity of the Quality of The Persons for or Against Whom the Claim is Made*</blockquote>

The test for the "quality of the persons" is "whether the parties in the [prior] action had the incentive to adequately litigate the claims in the same character or capacity" as the parties here. *Stockton*, 838 F.2d at 1547. The *Monarch I* plaintiffs vigorously, extensively, and continuously litigate that action against Chase, the same Defendant here. Indeed, they continue to do so on appeal and in post judgment motion practice four years after filing the action and two years after final judgment was issued. *See generally Monarch I.* This prong is met.

<blockquote>v.   *Top Office*</blockquote>

Finally, the Court observes that just prior to issuing this Order, this Court accepted transfer of yet another related case, *Top Off. Pros Bus. Servs., Inc. v. JPMorgan Chase Bank*, N.A., Case No. 25-26414-WPD, filed by attorneys Stok Kon + Braverman in the Southern District of New York on March 27, 2025. Top Office is registered to the same address as Sinai and Monarch, and Jacob Gitman is its president. *Top Office*, [DE 1] ¶ 6; DSOF ¶¶ 29, 30. Top Office's lead claim is that Chase defamed it by stating it could not process the company's wires due to "Sanctions And/Or//Internal JPMC Policy." *See Top Office*, [DE 1] ¶ 22. Although the merits of that case remain to be seen, the Court notes to the extent this newly filed action supports any "apparent tactical maneuvering," this action new also supports the application of res judicata here. *Jaffree*, 837 F.2d at 1467 (citation omitted).

B.  <u>The Merits of Parties' Motions for Summary Judgment</u>

To the extent this action is not barred by res judicata, the claims here fail on the merits. Although this action has produced more discovery in advance of summary judgment than *Monarch I*, this new round of discovery still produces no genuine dispute of material fact; Chase prevails as a matter of law for the same reasons it did in *Monarch I.*

Through its motion, Chase argues it is entitled to judgment on Plaintiffs' defamation claims: Defamation (Libel); Defamation (Slander); Defamation by Implication (Libel); Defamation by Implication (Slander). Chase argues the allegedly defamatory statement contained in the communications made by Chase—"We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy" DSOF ¶ 40—was (1) true; (2) qualifiedly privileged and made without express malice; and (3) Plaintiffs cannot prove damages. Defendant also argues that Plaintiffs slander claims fail as Plaintiffs have not produced any evidence of slander. Beyond disagreeing with Chase's position in their response, Plaintiffs make a handful of separate arguments, which the Court also addresses below.

### i.    *Truth*

Under Florida law, the elements of a cause of action for defamation are: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

Parties dispute whether Chase's statements—that the transactions were cancelled "due to sanctions and/or Internal JPMC Policy"—were false because of the use of the conjunction "and/or."  "A false statement of fact is the *sine qua non* for recovery in a defamation action."

*Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983)) (internal quotation marks omitted). Falsity exists only if "the publication is substantially and materially false, not just if it is technically false." *Smith v. Cuban American Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999). Under Florida law, an alleged false statement does not have to be "perfectly accurate" if the "gist" or "sting" of the statement is true. *See id.* at 706. "The gist of any statement within a publication or broadcast is found only by reference to the entire context." *Levan v. Capital Cities/ABC, Inc.,* 190 F.3d 1230, 1240 (11th Cir. 1999). "Where a communication is ambiguous and reasonably susceptible of a defamatory meaning, it is for the trier of fact to determine whether the communication was understood in the defamatory sense." *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (quoting *Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985)).

It is undisputed that Chase was unable to execute the transactions at issue because Chase placed Plaintiffs on an internal interdiction list in accordance with its policy. DSOF ¶ 35; PRSOF ¶ 35. Therefore, Chase argues the statement "[w]e are unable to execute your transaction due to Sanctions and/or Internal JPMC policy" is true when considered in its totality. Chase argues the phrase "and/or" does not render the statement ambiguous. But, in doing so, Chase admits that a reading of Chase's statements yields three possible interpretations: that Chase was unable to execute the transactions due to "Sanctions" or "Internal JPMC Policy" or both. *See* [DE 186/190 (sealed)] at p. 8. In turn, Plaintiffs argue that two of these three meanings are false as applied to Plaintiffs, because Plaintiffs are not and have never been subject to OFAC sanctions. PSOF ¶¶ 72-80. And either way, Plaintiffs assert that Chase's expression of doubt—that Chase is uncertain

15

whether Plaintiffs are subject to actual OFAC sanctions—was also false, because Chase *did* know that Plaintiffs were not subject to sanctions. *See* [DE 207/216(sealed)] p. 5.

Plaintiffs also argue the statements are defamatory when "construed as the common mind would naturally understand it." *See McCormick v. Miami Herald Pub. Co*., 139 So. 2d 197, 200 (Fla. 2d DCA 1962), and puts forward evidence of third party that interpreted the message to mean that Sinai and Gitman were on the OFAC sanctions list. PSOF ¶ 89. Conversely, Chase puts forward evidence that Chase personnel understood the Cancellation Message to accurately describe the reasons for cancelling the transactions.  DSOF ¶ 58. Parties also vigorously dispute whether the statements were "of and concerning" Plaintiffs. Plaintiffs find at least one statement named Sinai directly. *See* PSOF ¶¶ 76–79, and Chase disputes the meaning of that message.

Nevertheless, the Court need not decide whether the use of "and/or" renders the statements ambiguous and reasonably susceptible to defamatory meaning or whether it concerned Plaintiff. For that matter, the Court also need not decide whether Plaintiffs were defamed by implication, or whether there were "actual damages." This is because even assuming the statements are false and defamatory and concerned Plaintiffs, Chase's communications to Plaintiffs' customers were privileged. *See Demby v. Eng.*, 667 So. 2d 350, 353 (Fla. 1st DCA 1995) ("The publication may be qualifiedly privileged even if it is untrue.") (citation omitted). [9]

*ii.    Qualified Privilege*

Under Florida law, "[a] communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be

---

[9] Plaintiffs argue that truth is only a defense when coupled with good motive. As previously discussed, this "good motive" requirement is an open question of Florida constitutional law. *See* [DE 82] pp. 6–7. The Court will not address this argument as it (once again) declines to decide whether the statement was true and instead finds (below) that the statements were qualifiedly privileged.

actionable." *See Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984); *Boehm v. Am. Bankers Ins. Grp., Inc.*, 557 So. 2d 91, 93 (Fla. 3d DCA 1990) (examining qualified privilege in a tortious interference claim). "Where the circumstances surrounding a defamatory communication are undisputed or are so clear under the evidence as to be unquestionable, then the question of whether the occasion upon which they were spoken was privileged is a question of law to be decided by the court." *Nodar*, 462 So. 2d at 810 (citation omitted). "The essential elements of qualified privilege are: (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner." *Falic v. Legg Mason Wood Walker, Inc*., 347 F. Supp. 2d 1260, 1264 (S.D. Fla. 2004) (citing *Thomas v. Tampa Bay Downs*, Inc., 761 So.2d 401, 404 (Fla. 2d DCA 2000)). "Where it has been established that defamation occurred on a privileged occasion," then the plaintiff must prove that the defamation was made with express malice. *Lewis v. Evans*, 406 So. 2d 489, 492 (Fla. 2d DCA 1981).

Here, as in *Monarch I*, the undisputed evidence establishes that the statements made by Chase to Plaintiffs' customers were qualifiedly privileged. The common law recognizes as privileged "communications made for bona fide commercial purposes where the interest to be protected is the recipient's" and "business matters where both parties have a corresponding interest in the matter." *John Hancock Mutual Life Ins. Co. v. Zalay,* 581 So.2d 178, 179 (Fla. 2d DCA 1991). Chase, as a national bank, has an interest in communicating to its account holders the reason why a transaction cannot be completed, a matter in which its account holders have a corresponding interest. The statements concerned only the transactions Chase was unable to execute, and most messages did not mention either Plaintiff by name. *See* DSOF ¶¶ 40–41. Chase communicated those statements through private messages only to those account holders who were attempting to

transact with Sinai through Chase, and the apparent purpose of the statements was to inform those account holders why Chase was unable to execute the transaction. *See* DSOF ¶¶ 59 ("When a Chase accountholder initiates a transaction impeded by the Interdiction List, the SSU contacts the accountholder at their private message address"); DSOF ¶ 60 ("The SSU then sends the Cancellation Message directly to the accountholder if it cancels the transaction for compliance reasons.").

Plaintiffs argue Chase cannot show good faith, a necessary element of the qualified privilege test. They argue Chase put them on the Interdiction List for unverified and unsupported reasons, which reflects bad faith conduct. Plaintiffs question whether the "red flags" proffered by Chase as their reasons to interdict Plaintiffs were supported by facts. But good faith is presumed when the other elements of qualified privilege are established. *See Nodar*, 462 So. 2d at 810; *Thomas*, 761 So. 2d at 404 ("Once it is determined that [the statement] is qualifiedly privileged, it becomes cloaked with a legal presumption of good faith."). And as a prima facie matter, good faith may be inferred from the fact that the statements were made pursuant to Chase's internal policy. DSOF ¶ 35. Chase's statements were qualifiedly privileged.

### iii.    Express Malice

Because Chase's statements were qualifiedly privileged, Plaintiffs must show that Chase acted with express malice. "Express malice . . . traditionally has been defined as ill will, hostility, and an evil intention to defame and injure." *Lewis*, 406 So. 2d at 492 (citing *Montgomery v. Knox*, 3 So. 211, 217 (Fla. 1887)). "A defendant acts with express malice in making defamatory statements when his 'primary motive in making the statements [is] the intent to injure the reputation of the plaintiff.'" *Lozada v. Hobby Lobby Stores, Inc.*, 702 F. App'x 904, 911 (11th Cir.

2017) (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)). Once the privilege is established, and the burden shifts the Plaintiffs to prove express malice. *Nodar*, 462 So. 2d at 810.

Here, Plaintiffs fail to provide evidence from which a reasonable juror could infer that Chase acted with express malice. In fact, the evidence produced by Chase suggests the opposite: Chase made the statements pursuant to Chase's standard operating processes, and the statements reflected the reasons why Chase was unable to execute the transactions (even if those reasons were partially false). *See* DSOF ¶¶ 35. The "primary motive" for sending these cancellation messages was not to harm Plaintiffs but to cancel transactions that Chase believed posed a risk to its banking operations.

The undisputed facts demonstrate as follows. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████   ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

[10] ████████████████████████████████████████





Plaintiffs argue Chase "abused" its privilege because (1) sanctions language did not "further" the privileged interest and (2) the sanctions language did not further a "social purpose." Plaintiffs point to the Restatement of Torts to support these tests but admittedly cites no Florida case law characterizing the "abuse" requirement in the way they suggest. There appears to be no daylight between "abuse" and "express malice" under Florida law. *See Nodar*, 462 So. 2d at 806 (asking "whether [defendant] abused or lost the privilege due to express malice."); *Zalay*, 581 So. 2d at 180 ("the question . . . is whether the defendant abused or forfeited that privilege. The jury must determine whether the statements were made with express malice."). Thus, where there is no express malice, Chase did not "abuse" its privilege, either.[15]

---

[15] With respect to a prima facie qualified privilege test (not the express malice inquiry), some Florida courts have added a limited "scope" prong *see O'Neal v. Trib. Co.,* 176 So. 2d 535, 542 (Fla. 2d DCA 1965) ("a statement limited in its scope to this purpose") or a "moral or social interest" prong. *See Am. Ideal Mgmt., Inc. v. Dale Vill., Inc.,* 567 So. 2d 497, 500 (Fla. 4th DCA 1990). But the more modern test excludes these prongs. *See supra.* p. 17. To the extent applicable, the Court finds Chase's statements did

Plaintiffs also argue Chase knew the sanctions language was false as applied to Plaintiffs. But Florida common law expressly recognizes that knowledge of falsity does not by itself establish express malice. *See, e.g., Crestview Hosp. Corp. v. Coastal Anesthesia, P.A.*, 203 So. 3d 978, 982 (Fla. 1st DCA 2016) ("The mere fact that a statement is untrue and made with knowledge of falsity, or made recklessly without regard to its truth or falsity is not the test."); *Nodar*, 462 So. 2d at 806 (noting that "express malice," also known as "malice in fact," is different from "actual malice," and providing that express malice is required to defeat a qualified privilege in a defamation case); *Zalay*, 581 So. 2d at 180 (noting that "[e]xpress malice cannot be inferred from the mere fact that the statements were untrue"); *Coogler v. Rhodes*, 21 So. 109, 112 (Fla. 1897) ("malice . . . is not inferable from the mere fact that the statements are untrue.").

Plaintiffs go on to argue Chase acted with express malice because Chase did not comply with its own internal procedures when it decided to interdict them. To make this argument, Plaintiffs squint at the policy language in search of some not-complied-with detail. This is no way to assess malice. Given the collection of information Chase possessed about Plaintiffs when it decided to interdict them, *see supra,* regardless of whether this information was 100% verifiably accurate (and Plaintiffs repeatedly argue it was not)—the evidence indisputably shows that Chase's decision was a reasonable business decision, based in a reasonable risk assessment. It was not based in any express malice. *Zalay,* 581 So.2d at 179. This is true regardless of whether this decision was a *good* or *correct* decision. Plaintiffs' characterization of Chase as a "mindless bureaucracy," and its decision as "perfunctor[y]," reinforces the conclusion that the decision to

---

not exceed their proper scope ███████████████████████████
███████████████████

interdict and the resulting cancellation messages were not motivated by any personal ill will. *See* [DE 184/192 (sealed)] p. 2.

Plaintiffs also rely on a series of cases where the alleged defamer did not confirm the words he spoke were true, leading the court to find a factual issue of express malice. Those cases do not move the needle here. Express malice is proven through "totality of surrounding circumstances." *McCurdy*, 508 So. 2d at 382 (quoting *Southern Bell Telephone & Telegraph Company v. Roper*, 482 So.2d 538, 539 (Fla. 3d DCA 1986)). In Plaintiffs' cited cases, the relationships were personal and there was evidence of animus and motivation to cause harm. *See e,g, McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987) (inferring malice from Exxon's decision to voice safety concerns regarding a subcontractor's employee, which occurred soon after the employee testified against Exxon for severe injuries while working at Exxon's plant, Exxon paid the judgment award, combined with the fact that "no investigation had been conducted by Exxon before announcing its decision."); *compare also Am. Ideal Mgmt., Inc. v. Dale Vill., Inc.,* 567 So. 2d 497, 500 (Fla. 4th DCA 1990); *Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 528 (Fla. 3d. DCA 2017); *Corp. Fin., Inc. v. Principal Life Ins. Co.* 461 F. Supp. 1274, 1294 (S.D. Fla. 2006). But here, the totality of the circumstances paints an entirely different picture—that Chase acted as "reasonable [entity] pursuing a lawful objective." *Arko*, 230 So. 3d at 528. Chase sent automated—not personalized— messages, cancelling the transactions that passed through its own bank after conducting its own risk assessment. Chase's Global Financial Intelligence Unit ("GFIU") investigator testimony, *see supra*, supplies the "reasonableness" factor to rebut the assertion of express malice.

Finally, Plaintiffs argue for express malice because the language used was "so extreme as to demonstrate express malice" *Nodar,* 462 So. 2d at 812, because the language lumps Plaintiffs together with "terrorists, human traffickers, drug smugglers, and proliferators of weapons of mass

destruction." PSOF ¶¶ 5–6. Still, Plaintiffs acknowledge that the language is Chase's standard form language that is automatically sent whenever a transaction is or will be cancelled—it is not drafted to specifically target Plaintiffs. Plaintiffs have not shown Chase acted with any "ill will, hostility, and an evil intention to defame and injure" Plaintiffs, specifically. *Lewis*, 406 So. 2d at 492.

Based upon the foregoing, Chase's statements were qualifiedly privileged. Plaintiffs have failed to meet their burden to show express malice, and the Court enters summary judgment in favor of Chase on Plaintiffs' defamation claims.

*iv.    Slander*

In their motion, Plaintiffs do not make any independent argument on its slander argument, despite moving for summary judgment on those counts (II and IV). Nor do Plaintiffs make allegations of slander in its Amended Complaint outside of its defamation allegations. *See* AC [DE 44]. But when Chase argues in its motion that Plaintiffs have failed to put forward any evidence of slander, Plaintiffs respond with these asserted facts: "Soon after Chase interdicted Plaintiffs, Jacob Gitman visited TD Bank in Sunny Isles, FL to inquire about a transaction that was cancelled by Chase." And that "while waiting in an open space, Jacob Gitman overheard the Bank tellers talking and heard them say that 'this guy,' referring to himself, was on the OFAC sanctions list." PRSOF ¶¶ 101, 102 (cleaned up). Plaintiffs cite to Jacob Gitman's deposition transcript, which states:

> I went to TD Bank office in Sunny Isles and I had account with them and -- I sent some wires and money didn't reach the destination and I started like inquiring, what is going on. And, you know, it's open space, but there is seating there. And two Ukrainian girls, they are talking, carrying on between themselves, and I understand it. And one of them says, this guy, he's in OFAC list. They shocked me. I thought she's joking. So it's first time I found out there is something going on there.
>
> Q: Do you know the names of the two people that were speaking Ukrainian?

A. No. They were like bankers sitting there and I don't know them. Maybe they still work there.

Q. Did you speak to them at all on that occasion or you just overheard their communication?

A. I just heard them.

Q. You didn't get either of their names?

A. No. I didn't pay attention. I thought that they mistaken me with somebody. I didn't know about that.

J. Gitman Depo Tr. 178:2-13 [DE 192]. Assuming this testimony would be admissible at trial, it is not slanderous. Slander involves "defamatory spoken words, whereas libel pertains to defamatory written statements." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 n.11 (S.D. Fla. 2006). Under Florida law, the elements of a cause of action for slander are the same as defamation generally: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

Taking as true that both women were bankers, the statement fails the very first element: publication. "A defamatory statement does not become actionable . . . until it is published or communicated to a third person; statements made to the person alleging the defamation do not qualify." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007). Internal corporate communications are generally not considered defamatory in Florida because "the essential element of publication to a third party is lacking." *Advantage Personnel Agency, Inc. v. Hicks & Grayson, Inc.,* 447 So. 2d 330, 331 (Fla. 3d DCA 1984)); *see e.g.*, *Hoch v. Loren*, 273 So. 3d 56, 58 (Fla. 4th DCA 2019) ("Florida courts have found no publication where a corporation is sued for defamation and the defamatory statement was made by one managerial employee of the corporation to

25

another."); *see also Geddes*, 960 So. 2d at 833; *Astro Tel, Inc. v. Verizon Florida, LLC*, 979 F. Supp. 2d 1284, 1301 (M.D. Fla. 2013).

Moreover, Plaintiffs have not put forward any evidence that these women were acting within the scope of their employment when making the statement—a required step for holding Chase liable. *Tillett v. BJ's Wholesale Club, Inc.*, No. 3:09-CV-1095-J-34MCR, 2010 WL 11507322, at *6 (M.D. Fla. July 30, 2010) (defamation claimed failed as to employer where there was no allegation that the employee was acting within the scope of their employment when the statement was made); *Dieas v. Assocs. Loan Co.*, 99 So. 2d 279, 281 (Fla. 1957) (articulating Florida's vicarious liability standard). For at least these reasons, Plaintiffs have not put forward sufficient evidence to demonstrate their slander claims (Counts II and IV). They fail.

### v.   The Single Action Rule Precludes Plaintiffs' Tortious Interference Claim

In Count V, Plaintiffs assert a claim for tortious interference based on the allegedly defamatory communications to Monarch's customers. Chase argues it is entitled to summary judgment on Plaintiffs' tortious interference claim because that claim is barred by the "single action rule," which prohibits "multiple actions when they arise from the *same* publication." *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002)[16]; *see also Fridovich v. Fridovich*, 598 So. 2d 65, 69–70 (Fla. 1992); *Orlando Sports Stadium, Inc. v. Sentinel Star, Co.*, 316 So.2d 607, 609 (Fla. 4th DCA 1975). Under this rule, "[w]hen claims are based on analogous underlying facts and the causes of action are intended to compensate for the

---

[16] Although, as above, each publication generates a separate cause of action for defamation. *See supra* p. 10.

same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event." *Klayman v. Judicial Watch, Inc*., 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 13 (Fla. 1st DCA 2006) (internal quotation marks and citation omitted). Because the tortious interference claim is based upon the same facts giving rise to Plaintiffs' failed defamation claims, the tortious interference claim must be dismissed.

As the Amended Complaint makes clear, Plaintiffs' tortious interference claim is based on the same underlying facts and communications as their failed defamation claims. Not only do the same communications serve as the basis for both types of claims, the thrust of both types of claims is that the communications were injurious to Plaintiffs' reputation, thereby causing Sinai's customers to breach, terminate, and/or discontinue their business relationships with Plaintiffs. *See* AC ¶ 100. Because Count V revolves around the allegedly defamatory communications, and whether those statements impermissibly interfered with Plaintiffs' business relationships, the single action rule applies.

Plaintiffs do not dispute that their tortious interference claim relies on the same underlying facts and seeks the same damages as their defamation claims, acknowledging that "Plaintiffs have no adequate remedy at law, however, because Florida's single-action rule bars Plaintiffs' recovery for Chase's tortious interference" AC ¶ 101. Instead, they add this Count to request injunctive relief. But where the single action rule forecloses this cause of action, no injunctive relief is available, either.

vi.    *Plaintiffs' Declaratory Judgment Count is Not Actionable*

Chase moves for judgment of Plaintiffs' Declaratory Judgment Count (Count VI). Under this count, Plaintiffs seek a declaration that Chase's statements are "defamatory," that Chase lacks "qualified privilege," and that Chase's conduct "tortiously interferes" with their business. AC ¶ 106. Having found Chase's statements are qualifiedly privileged, Plaintiffs' "derivative" declaratory judgment claim thus fails as a matter of law. *Eaton v. Principal Life Ins. Co*., 2022 WL 972452, at \*4, \*9 (M.D. Fla. Mar. 31, 2022) (granting summary judgment on a "derivative" declaratory judgment claim).

vii.    *Plaintiffs are not entitled to Summary Judgment on the Chase's Bank Secrecy Act Defense*

Finally, Plaintiffs move for summary judgment regarding Chase's affirmative defense under the Bank Secrecy Act or the USA PATRIOT Act. Chase pleaded that defense to guard against any attempt to seek discovery or damages regarding conduct that is protected under those statutes. See Am. Answer ¶¶ 135–45, [DE 86]. As the Court recently noted in *Monarch I*, "Plaintiffs have been unsuccessfully attempting to seek such [privileged] material for over three years." *Monarch I* [DE 332] p. 6. No new argument is presented here that would alter the Court's and the Magistrate Judges' many previous conclusions on the issue. *See e.g.* [DEs 150, 176], *Monarch I*, [DEs 67, 256, 276]). Not only are Plaintiffs not entitled to summary judgment on this issue, but the Court agrees with Chase that the Magistrate correctly decided the discovery issues that Plaintiffs now appeal in part based on this argument.

## V.    CONCLUSION[17]

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment [DE 186/190 (sealed)] is **GRANTED**.

2.  Plaintiffs Jacob Gitman and Sinai Holding LLC's Motion for Partial Summary Judgment [DE 184/192 (sealed)] is **DENIED**.

3.  Plaintiffs' Appeal of the Magistrate Judge's Discovery Order [DE 180] is **DENIED.** The Court agrees with the Judge Hunts opinions in [DE 176] and [DE 150] and incorporates the findings of fact and conclusions of law therein into this Order.

4.  Chase's Motion to Exclude the Opinions of Plaintiffs' Expert Philip Shechter [DE 206] is **DENIED AS MOOT**.

5.  Likewise, Plaintiffs' Motion to Seal its Response to Chase's Motion [DE 233] is **DENIED AS MOOT.**

6.  The Joint Motion to Continue Trial [DE 234] is **DENIED AS MOOT.**

7.  The Court will enter a separate final judgment pursuant to Rule 58.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 29th day of October, 2025.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies: Counsel of record

---

[17] Because the Court finds Chase proved its qualified privilege defense, the Court declines to address whether Plaintiffs are entitled to judgment on Chase's duty to mitigate damages defense.